UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE TELEKOM AG, et al.,<br><br>Defendants. | No. 22 C 03189<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed this suit under the federal antitrust statutes challenging the 2020 merger between T-Mobile and Sprint. Defendant T-Mobile US, Inc. (the only defendant that has been served thus far) has moved to transfer the case to the Southern District of New York ("SDNY").[1] For the reasons stated below, T-Mobile's motion is denied.

**Background**

On April 29, 2018, wireless service providers T-Mobile and Sprint announced their intention to merge. Fourteen states and the District of Columbia sued to block the merger. The case proceeded to trial in December 2019 before the Honorable Judge

---

[1] The Court may resolve this motion even though not all parties have been served yet. *See Rivers v. Union Pac. R.R.*, 2017 WL 379447, at *3 (M.D. La. Jan. 26, 2017) ("A federal court may consider a transfer motion before all of the parties are joined.").

1

Victor Marrero of SDNY. During the two-week bench trial, the parties presented extensive evidence and testimony regarding the potential pro- or anti-competitive effects of the merger. *See New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 187-88 (S.D.N.Y. 2020) ("Together, counsel and experts amass documentary and testimonial records for trial that can occupy entire storage rooms to capacity."). Judge Marrero ultimately ruled against the complaining States, saying he was "not persuaded" by their prediction that the new company formed by the merger would pursue anticompetitive behavior. *Id.* at 189. He also disagreed with the States' contention "that Sprint, absent the merger, would continue operating as a strong competitor in the nationwide market for wireless services." *Id.* Finally, he rejected the States' argument that DISH Network Corp. was unlikely to enter the wireless services market as a viable competitor post-merger. *Id.*

After Judge Marrero issued his decision, T-Mobile and Sprint settled with twelve of the State Attorneys General. The settlement included commitments by the merged company to provide low-cost plans to residents of those states and nationwide broadband access for educational purposes to qualifying households. In exchange, the States agreed to forgo an appeal of Judge Marrero's decision and to refrain from publicly opposing the merger. The settlement agreement remains in force through April of 2025, and all disputes arising out of the agreement are to be heard in the Southern District of New York.

The merger closed on April 1, 2020. In T-Mobile's characterization, the results have been emphatically pro-consumer. T-Mobile points to its roll out of wireless plans

2

targeted at low-income and prepaid customers and an expanded network that competes with home internet providers. T-Mobile also lauds DISH as a rising competitor in the wireless service market, emphasizing DISH's achievement of FCC-imposed milestones for building out its own 5G network.

Plaintiffs, naturally, espouse a dimmer view. They claim that post-merger, the downward trend in wireless service plan prices has reversed, with the big three wireless carriers (T-Mobile, Verizon, and AT&T) instead raising rates, on top of customers facing higher taxes, fees, and surcharges. Plaintiffs also allege that T-Mobile has exploited the post-merger reduction in competition by enrolling its customers in a program that sells their data to advertisers. And contrary to T-Mobile's rosy description of DISH's place in the market, Plaintiffs bemoan the would-be competitor's performance, noting that DISH remains primarily a "virtual" network that resells access to the networks of other carriers.

Against the backdrop of these competing pictures of the commercial wireless service environment, Plaintiffs bring antitrust claims under Section 7 of the Clayton Act (15 U.S.C. § 18) and Section 1 of the Sherman Act (15 U.S.C. § 1). Purporting to represent a nationwide class of AT&T and Verizon wireless customers, Plaintiffs allege that the reduction in competition has caused the class members to pay billions of dollars more than they otherwise would have absent the merger. In this action, they seek to unwind the T-Mobile-Sprint merger, create a viable fourth competitor in the marketplace, and recover damages for the overcharges they sustained.

Delving into the merits of Plaintiffs' claims is a task for a later date, however. In the transfer motion presently before the Court, the question is simply *where* those issues should be litigated. The named Plaintiffs claim they chose the Northern District of Illinois ("NDIL") because it is the most convenient for them, and that the case should remain here. Of the seven, one resides in this District, three others reside in Illinois, and the remaining three reside in Indiana. T-Mobile contends the case belongs back in SDNY because it has the closest connection to the material events and is more convenient in other relevant regards.

## Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] 28 U.S.C. § 1404(a). Section 1404(a) "'permits a flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986). The task of weighing the relevant factors "is committed to the sound discretion of the trial judge." *Id.* at 219.

---

[2] Plaintiffs do not dispute that jurisdiction and venue would be proper in SDNY.

4

A district court considering a transfer motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013). Relevant private interest factors include the plaintiff's choice of forum, the situs of the material events, the convenience of the parties and witnesses, and the relative ease of access to evidence. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). The public interest analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Id.* at 961 (quoting *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989). Considerations include "the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale." *Id.* at 962.

I. **Private Interest Factors**

    a. <u>Plaintiffs' choice of forum</u>

A plaintiff's choice of forum ordinarily is entitled to "substantial deference," particularly when the chosen forum is the plaintiff's home forum. *AL & PO Corp. v. Am. Healthcare Capital, Inc.*, 2015 WL 738694, at *2 (N.D. Ill. Feb. 19, 2015); *see also Atl. Marine*, 571 U.S. at 63 (noting that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous"). Several additional, related considerations come into play in this case. First, some courts have suggested that a plaintiff's choice of forum is entitled to even greater respect in antitrust cases. *See, e.g., L.A. Mem'l Coliseum Comm'n v. NFL*, 89 F.R.D. 497, 500 (C.D. Cal. 1981); *Star*

5

*Lines, Ltd. v. P.R. Mar. Shipping Auth.*, 442 F. Supp. 1201, 1208 (S.D.N.Y. 1978). Along this line, Plaintiffs point to Congress's "intent to liberalize the restrictive venue provision in Section 7 of the Sherman Act by enacting Section 12 of the Clayton Act." *Tiger Trash v. Browning-Ferris Indus., Inc.*, 560 F.2d 818, 824 (7th Cir. 1977). But the discussion in *Tiger Trash* indicates that the jurisdictional expansion of Section 12 was primarily aimed at remedying situations where a defendant corporation could avoid suit outside the district where its headquarters were located. *See id.* ("A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 808 (1948))). Although Section 12 means plaintiffs are less likely to face the burden of litigating their claims in distant forums as a matter of *necessity*, that does not necessarily equate to a strong Congressional preference in favor of a plaintiff's *choice* of forum. To that end, the Court has not located a case from this district echoing the notion that an antitrust plaintiff's choice of forum is entitled to special deference in a § 1404(a) analysis. Indeed, the Seventh Circuit has noted that when Congress enacts a broad venue provision allowing plaintiffs to sue closer to home, "defendants' legitimate interests are protected by 28 U.S.C. § 1404(a)." *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) (discussing venue under ERISA).

Second, courts typically give less deference to a plaintiff's choice to sue in its home forum when a case is brought as a class action, as here. *See, e.g., Georgouses v.*

*NaTex Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("Moreover, because plaintiff alleges a class action, plaintiff's home forum is irrelevant."); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (noting that the weight given to the plaintiff's choice of forum is "greatly discounted" in class actions). *But see AL & PO Corp.*, 2015 WL 738694, at *3 (noting widespread adoption of this position but declining to follow it because "unnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel").

Finally, "a plaintiff's choice of forum is afforded less deference when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events.'" *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). As discussed below, this District's connection to the case is tenuous, but SDNY's connection is not appreciably stronger.

Given all these layered nuances, the Court concludes that Plaintiffs' choice of forum carries the "substantial" weight ordinarily afforded to a plaintiff's choice to litigate in its home forum, but is not entitled to any additional deference. Although only one named Plaintiff resides in this District, the rest live nearby. The nationwide class they seek to represent is of course scattered throughout the country, but presumably benefits from any lessened burden imposed on their representatives. Though the Court does not necessarily agree that antitrust plaintiffs' forum selections are entitled to special deference, Congress's choice to enact a broad venue statute reflects a willingness to permit suits far from a defendant's home forum.

7

Congress certainly knows how to use venue statutes in a contrary fashion. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (recognizing that statutory venue limitations are typically intended to protect defendants "against the risk that a plaintiff will select an unfair or inconvenient place of trial"). Although Plaintiffs' choice of forum does not carry conclusive weight under the circumstances of this case, "less deference does not mean no deference." *Qurio Holdings, Inc. v. DISH Network Corp.*, 2015 WL 536002, at *2 (N.D. Ill. Feb. 9, 2015). This factor therefore weighs against transfer.

  b. <u>Situs of the material events</u>

The parties somewhat dispute what "events" are relevant to this factor. According to Plaintiffs, "T-Mobile's focus on the negotiation of the merger is yet another red herring" because the merger cannot be said to have occurred exclusively in SDNY, and because this case really concerns its effects, which were felt nationwide. "However, the material events inquiry focuses on the location of actions creating the injury, not the location of the injury itself." *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *3 (N.D. Ill. July 14, 2021). "[T]he situs of material events factor becomes more important when it differs from the plaintiff's choice of forum." *Waters v. Leidos, Inc.*, 2022 WL 657055, at *2 (N.D. Ill. Mar. 4, 2022).

Plaintiffs are no doubt correct that claiming the merger occurred exclusively or predominantly in SDNY is a fiction. T-Mobile has identified several key events that took place there, including a substantial portion of the business negotiations, but Plaintiffs point to other relevant events that occurred far from SDNY.

8

More importantly, the Court agrees with Plaintiffs that the focus should not be on the merger itself, or the prior litigation surrounding it, because this suit really arises from the alleged anticompetitive conduct that took place afterward. Determining where that post-merger conduct "occurred" may be a fool's errand, because the allegations concern nationwide patterns of conduct. Perhaps an argument could be made that the conduct occurred in Washington, where T-Mobile's headquarters are located. But even that would be a stretch, and would not account for the other players identified in Plaintiffs' complaint. Clearly this case is not the sort of "'localized controversy' that would warrant transfer to the local district court." *Forest Cty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 118 (D.D.C. 2016) (quoting *Stand Up for Cal. v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 64 (D.D.C. 2013)).

At the same, if Plaintiffs contend that NDIL's connection to this case derives from the fact that the alleged negative effects of the merger were felt here, such a "broad assertion" really demonstrates that this District has "no meaningful connection to this action." *FTC v. Graco Inc.*, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012). One of Plaintiffs' attorneys conceded as much during a status call. R. 62, at 5:22-24 ("Well, Your Honor, there's no special connection between the facts of the case and Chicago."). Thus, while the Court does not agree that the material events of this case occurred primarily in New York, they certainly did not occur in Chicago. This factor is therefore neutral.

      c. <u>Convenience of the parties and witnesses</u>

"The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). Within this category, "[t]he convenience of non-party witnesses is afforded greater weight than the convenience of parties." *Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 778 (N.D. Ill. 2019).

T-Mobile lists several non-party witnesses whom it expects will provide evidence in this case, including several executives from Verizon who work or reside in SDNY or neighboring districts, and comparable personnel from New York-based Altice USA, Inc., which was a figure in the original trial before Judge Marrero. In response, Plaintiffs argue this "small number of witnesses" is inadequate to carry T-Mobile's burden. R. 59, at 8. They also point to the many other third-party witnesses located far from New York who occupy comparable roles at other companies, and thus would seem equally likely to be called to testify.

Certainly, a party must do more than "allude[ ] to potential third party witnesses" for concerns about inconvenience to those witnesses to have any weight. *See U.S. ex rel. Heathcote Holdings Corp. v. L'Oreal USA, Inc.*, 2011 WL 3511064, at *3 (N.D. Ill. Aug. 9, 2011). But given the magnitude of this case and its early posture, T-Mobile cannot be expected to identify every witness who might be called to testify. The identifications and descriptions T-Mobile has provided at least allow the Court to gauge the likely role of those third parties (and others for whom they are

10

representative) in the case. Moreover, the Court agrees with T-Mobile that given Plaintiffs' claims, which allege that AT&T and Verizon have raised prices on their customers post-merger, those witnesses are reasonably likely to testify as well.

It appears that few third-party witnesses (if any) are located in the greater Chicago area, whereas at least some of the witnesses T-Mobile has identified would be best served by transfer to New York. But evaluating this transfer motion by reference to those witnesses alone is arbitrary. An equivalent argument might be made in favor of transfer to the Northern District of Texas, where AT&T is headquartered, or the District of Colorado, where DISH is headquartered. In truth, the third-party witnesses are dispersed throughout the country (and indeed, the world), such that no district can possibly be convenient for all. *See Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 967 (W.D. Wis. 2017) ("Moreover, defendants *witnesses* will be inconvenienced regardless of the forum because they are located in various parts of the country."). Plaintiffs contend that Chicago's central location best accommodates the dispersed witness pool, but this is not a particularly weighty consideration. *Compare id.* (crediting the relative ease of travel in and out of Chicago by air), *with Hirst*, 405 F. Supp. 3d at 778-79 (discounting significance of flight time differences for witnesses). It may be that the trouble of accounting for dispersed witnesses and evidence is simply not worth the payoff. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other

11

witnesses and documents in places outside both forums."). The Court concludes that the witness convenience factor slightly favors transfer.

As for the convenience of the parties themselves, T-Mobile cannot claim a great benefit from moving these proceedings farther from its West Coast headquarters. Plaintiffs, meanwhile, would undoubtedly prefer to litigate this case close to home. As a purported nationwide class, this preference carries less weight—replacements are likely available in any locale should the burdens of representation prove unbearable for any named Plaintiff. *See Simonoff v. Kaplan, Inc.*, 2010 WL 1195855, at \*2 (N.D. Ill. Mar. 17, 2020) ("Should litigating this case in the Southern District of New York prove too inconvenient for the named Plaintiff, then another named plaintiff can be substituted for her."). Nonetheless, because transfer to SDNY would impose a greater burden on Plaintiffs without conferring any obvious benefit on T-Mobile, the party convenience factor cuts against transfer.

    d. <u>Ease of access to evidence</u>

Modern litigation practices of sophisticated entities, by which the vast majority of documentary evidence can be produced electronically and transmitted anywhere, have greatly diminished the importance of this factor. *See Elite Erectors*, 212 F.3d at 1037; *Tavistock Rest. Grp. LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at \*6 (N.D. Ill. Apr. 26, 2021). Understandably, neither party addressed this factor in detail, and the Court finds that it is neutral in the transfer calculus.

12

**II.   Public Interest Factors**

   a. Time to resolution

"To evaluate the speed at which a case will proceed, courts look to two statistics: (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 711 (N.D. Ill. 2017) (quoting *AL & PO Corp.*, 2015 WL 738694, at *5). According to the data cited by the parties,[3] for the 12-month period ending June 30, 2022, the median time to disposition of civil cases was 5.7 months in SDNY and 7.2 months in NDIL. The median time to trial was 44.4 months in SDNY and 48.9 months in NDIL. By both measures, cases tend to move slightly quicker in SDNY, so this factor slightly favors transfer.

   b. Familiarity with law and facts

This case arises under federal antitrust law, and all district courts are presumed to be equally capable of interpreting and applying federal law. *See Lewis v. Grote Indus. Inc.*, 841 F. Supp. 2d 1049, 1055 & n.2 (N.D. Ill. 2012). Familiarity with the law therefore cuts in neither direction. However, courts have also considered the relative familiarity of transferor/transferee courts with the "facts and circumstances surrounding the controversy." *Jaramillo*, 664 F. Supp. 2d at 915-16. This consideration often arises when a proposed transferee court is currently presiding over, or has recently handled, a similar case. *See id.*; *Preston v. Am. Honda*

---

[3] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf

13

*Motor Co.*, 2017 WL 5001447, at *7 (N.D. Ill. Nov. 2, 2017); *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1065 (N.D. Ill. 2015) (explaining that although cases arose under federal law, "it would be inefficient for two Courts to invest the time learning the facts common to both [cases] and then applying" the law to those facts). That is not the scenario presented here: the SDNY merger dispute concluded in 2020, and Plaintiffs correctly note that this case differs from the earlier controversy in material respects. Nonetheless, a transferee court's familiarity with a dispute may still be relevant "even when the transferred case may not be consolidated for trial" with other pending cases. *General Elec. Co. v. R Squared Scan Sys., Inc.*, 1990 WL 7186, at *3 (N.D. Ill. Jan. 12, 1990).

It is certainly plausible that there will be some overlap between this case and the prior merger dispute—at minimum, familiarity with the complicated telecommunications industry will be helpful. However, "it is not [SDNY] as a whole that is familiar with the earlier matter, but rather one particular judge there." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013). This Court has no ability to dictate which judge in a transferee court should handle a case, and the nature of this case does not suggest it would automatically be assigned to Judge Marrero as a continuation or related case to the merger challenge.

Plaintiffs also characterize T-Mobile's efficiency argument as a veiled attempt to transfer the case to a specific judge who has already ruled in their favor once. Indeed, a request to transfer a case to a particular judge may be "suspect," *see Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 130 (D.D.C. 2001), and can

14

implicate the "systemic integrity" of the federal courts, *see Oceana*, 962 F. Supp. 2d at 78 (quoting *Stewart Org.*, 487 U.S. at 30). Even a "plausible possibility" that a defendant is using a § 1404 transfer motion as a means of forum shopping can weigh against granting the motion. *Greater Yellowstone*, 180 F. Supp. 2d at 130.

Conversely, T-Mobile accuses Plaintiffs of forum-shopping for a District they perceive as conferring a legal advantage on a threshold merits issue. The propriety of such a tactical decision, at least as it factors into a transfer motion, is debatable. On the one hand, courts typically view "forum shopping" by plaintiffs with less suspicion than comparable practices by defendants. *See Atl. Marine*, 571 U.S. at 63 (noting that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations)"); *see also United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999) (suggesting that a plaintiff's ability to "shop for law or location encourages them to use the judicial system for their disputes"). On the other hand, "[Section] 1404's transfer provisions were intended to prevent forum-shopping, and plaintiffs should not be able 'to select one district exclusively or primarily to obtain or avoid specific precedents.'" *Packman v. Prudential Ins. Co. of Am.*, 2020 WL 4700642, at *2 (W.D. Wis. Aug. 13, 2020) (quoting *Schmid Laboratories, Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986)).

Discouraging forum-shopping is undoubtedly a concern when weighing a transfer motion. *See Caterpillar, Inc. v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1036 (C.D. Ill. 2012) ("Courts are always concerned about the prevention of pernicious forum-

15

shopping, and must be cognizant of this issue when dealing with a motion to transfer."). It is hard to deny that T-Mobile's request to transfer this case to SDNY at least creates the appearance of forum shopping, given that any purported efficiency gain in that district is speculative and it is not T-Mobile's home district. The Supreme Court has explained that § 1404(a) should not be used "to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964). Here, Plaintiffs' chosen forum is not obviously inconvenient, making the transfer motion more suspect. Given all these considerations, the Court cannot say that SDNY's potential familiarity with the subject matter of this case favors transfer, and this factor overall counsels against granting T-Mobile's motion. *See Greater Yellowstone*, 180 F. Supp. 2d at 130.

    c. <u>Relationship to the community and desirability of resolving controversies in their locale</u>

"[T]he interest of justice is better served when a forum contains a community that has a strong desire to resolve a particular dispute and that has an invested stake in the matter such that the venue is 'closer to the action.'" *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 963-64 (N.D. Ill. 2013) (quoting *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998)). As discussed above, the allegations in this case carry nationwide implications and defy categorization as a localized controversy. While Plaintiffs' counsel conceded that Chicago has no special connection to the facts of the case, SDNY has no stronger interest. This factor is neutral.

16

### III. Balancing the Factors

On balance, the Court finds that T-Mobile has not met its burden of showing SDNY is clearly a more convenient forum for this case than NDIL. Several factors are neutral, and no factor strongly favors transfer. On the other side of the scale, some convenience factors favor keeping the case here, as does the usual preference of respecting a plaintiff's choice of forum. "[U]nless the balance of the factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

## Conclusion

For the foregoing reasons, T-Mobile's motion to transfer this case to the Southern District of New York [42] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 7, 2022

17