**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DEUTSCHE TELEKOM AG, T-MOBILE US, INC., and SOFTBANK GROUP CORP.,<br><br>　　　　　Defendants. | Case No. 1:22-cv-3189<br><br>Hon. Thomas M. Durkin |

**DEFENDANT SOFTBANK GROUP CORP.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND IMPROPER VENUE**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 2

    A.    SBG's Business ................................................................................. 2

    B.    SBG and T-Mobile .......................................................................... 2

ARGUMENT .................................................................................................... 3

I.    Plaintiffs Cannot Establish Personal Jurisdiction over SBG Under Rule 4(k)(1)(A). ..................................................................................................... 4

    A.    This Court Lacks General Personal Jurisdiction over SBG. .................... 4

    B.    This Court Lacks Specific Personal Jurisdiction over SBG. .................. 5

        1.    SBG Has No Contacts with Illinois. ................................................. 5

        2.    T-Mobile's Contacts with Illinois Cannot Be Imputed to SBG. ........ 7

    C.    Plaintiffs Cannot Establish Personal Jurisdiction Under Rule 4(k)(2). ............ 8

II.    Venue Is Improper Under Section 12 of the Clayton Act. ............................ 8

    A.    SBG Does Not Inhabit and Cannot Be Found in this District. .............. 9

    B.    SBG Does Not Transact Business in this District. .................................. 9

        1.    SBG Did Not Transact Business in this District Through T-Mobile. ........ 11

        2.    Business Transacted in this District by SBG's Other Investment Holdings and Subsidiaries Does Not Support Venue Against SBG. ........ 14

III.    This Court Should Dismiss SBG. .............................................................. 15

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelez v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) ...................................................................8

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...................................................................5

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,
    80 F. Supp. 3d 870 (N.D. Ill. 2015) .........................................................3

*Ariel Invs., LLC v. Ariel Capital Advisors LLC*,
    881 F.3d 520 (7th Cir. 2018) ...................................................................5

*Blond & Braun Haarwarenerzeugungs U. Handelsges M.B.H. v. Arroyo*,
    2003 WL 22078321 (N.D. Ill. Sept. 8, 2003) .........................................15

*Calder v. Jones*,
    465 U.S. 783 (1984).................................................................................5

*Caribe Trailer Sys., Inc. v. P.R. Maritime Shipping Auth.*,
    475 F. Supp. 711 (D.D.C. 1979) ............................................................13

*Carteret Sav. Bank, F.A. v. Shushan*,
    919 F.2d 225 (3d Cir. 1990)...................................................................15

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Co.*,
    230 F.3d 934 (7th Cir. 2000) ...................................................................7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................5

*Deb v. SIRVA, Inc.*,
    832 F.3d 800 (7th Cir. 2016) ...................................................................4

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018).....................................................11

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003) ...........................................................14

*In re Eli Lilly & Co.*,
    37 F.4th 160 (4th Cir. 2022) ....................................................................9

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) ................................................................5

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
  141 S. Ct. 1017 (2021) ........................................................................4

*Garshman v. Univ. Res. Holding, Inc.*,
  641 F. Supp. 1359 (D.N.J. 1986) ........................................................13

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*,
  565 F.3d 1018 (7th Cir. 2009) ..............................................................4

*Green Light Nat'l, LLC v. Kent*,
  2018 WL 4384298 (N.D. Ill. Sept. 14, 2018) .......................................6

*Howeth v. Aramark Corp.*,
  2010 WL 11668451 (N.D. Ill. Jan. 15, 2010) ......................................3

*Industrial Models, Inc. v. SNF, Inc.*,
  2015 WL 2399089 (N.D. Ill. May 18, 2015) ........................................9

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) ................................................................8

*King v. Johnson Wax Assocs., Inc.*,
  565 F. Supp. 711 (D. Md. 1983) ........................................................13

*Kipp v. Ski Enter. Corp. of Wisc.*,
  783 F.3d 695 (7th Cir. 2015) ......................................................3, 5, 15

*KM Enters. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ..................................................... *passim*

*Kraft Chem. Co. v. Salicylates & Chems. Priv. Ltd.*,
  2014 WL 11127924 (N.D. Ill. Oct. 28, 2014).......................................7

*Medline Indus., Inc. v. Strategic Com. Sols., Inc.*,
  553 F. Supp. 2d 979 (N.D. Ill. 2008) ...................................................8

*Monco v. Zoltek Corp.*,
  342 F. Supp. 3d 829 (N.D. Ill. 2018) .............................................5, 6, 7

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2015) ..............................................................10

*Noboa v. Barcelo Corporacion Empresarial, SA*,
  812 F.3d 571 (7th Cir. 2016) ................................................................6

iv

*O.S.C. Corp. v. Toshiba Am., Inc.*,
    491 F.2d 1064 (9th Cir. 1974) ............................................................10

*Redmond v. Atl. Coast Football League*,
    359 F. Supp. 666 (S.D. Ind. 1973) .......................................................9

*Reynolds Metals Co. v. Columbia Gas Sys., Inc.*,
    669 F. Supp. 744 (E.D. Va. 1987) .....................................................13

*Riverdale Plating & Heat Treating, LLC v. Andre Corp.*,
    2015 WL 5921896 (N.D. Ill. Oct. 9, 2015)...........................................7

*Sportmart, Inc. v. Frisch*,
    537 F. Supp. 1254 (N.D. Ill. 1982) ...................................9, 11, 13, 15

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .......................................................4, 5, 6

*Tiger Trash v. Browning-Ferris Indus.*,
    560 F.2d 818 (7th Cir. 1977) .....................................................11, 12, 15

*United States v. Scophony Corp. of Am.*,
    333 U.S. 795 (1948)..............................................................................9

*United States v. Smithfield Foods, Inc.*,
    332 F. Supp. 2d 55 (D.D.C. 2004) ....................................................14

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................5, 6

*Webeq Int'l Inc. v. RFD Publ'ns, LLC*,
    2003 WL 22455516 (N.D. Ill. Oct. 29, 2003).........................................3

**Statutes**

15 U.S.C. § 22.............................................................................*passim*

28 U.S.C. § 1391.......................................................................................4

28 U.S.C. § 1406(a) .............................................................................15

**Other Authorities**

Fed. R. Civ. P. 4(k) ...........................................................................4, 8, 15

## PRELIMINARY STATEMENT

Defendant SoftBank Group Corp. ("SBG") should be dismissed for lack of personal jurisdiction and improper venue. Plaintiffs had a strategic choice to make when filing this action. One option was to file this lawsuit in their first-choice forum—the Northern District of Illinois—at the price of losing personal jurisdiction and venue over SBG. SBG is a stranger to this District: it is a Japanese corporation with its principal place of business in Tokyo; it has no presence in this District; and it has never done business here. Plaintiffs' other option was to file in the forum where SBG negotiated the merger—the Southern District of New York.

Plaintiffs weighed their options and decided to file in this District rather than the forum with a greater connection to the material events of the merger. That choice made good sense—at least as to Plaintiffs. First, as Plaintiffs made clear in their opposition to the motion to transfer, they were reluctant to sue in the Southern District of New York because a court in that District conducted a full-blown trial on the merits and roundly rejected their claim that the T-Mobile/Sprint merger was anticompetitive. Second, SBG is superfluous as a Defendant in this action: it was not one of the merging parties; it had no role in the T-Mobile conduct that allegedly resulted in higher prices for AT&T and Verizon customers; and its presence or absence in this lawsuit will make no difference as to whether Plaintiffs can obtain all of the relief they seek in the Complaint.

Having chosen for their own strategic reasons to file in a district that has no connection at all to SBG and only a "tenuous" connection to this action (Dkt. 63 at 7), Plaintiffs have lost jurisdiction and venue over SBG. The sole connection between SBG and this action is that SBG signed the T-Mobile/Sprint merger agreement in its role as a large shareholder in Sprint. As shown below, that is not enough to subject SBG to either general or specific personal jurisdiction, or venue under the Clayton Act, in this District.

## BACKGROUND

### A.    SBG's Business

SBG is a Japanese corporation with its principal place of business in Tokyo.  (Decl. ¶ 3.[1]) SBG is organized as a holding company whose business is limited to making investments in a range of industries.  (*Id.* ¶ 22.)  SBG also has direct and indirect subsidiaries that engage in investment and financing activities, but those subsidiaries are separately incorporated and maintain their own books and records.  (*Id.* ¶¶ 22-25.)

All of SBG's business activities are done far away from Illinois:  SBG is not registered with the Illinois Secretary of State to conduct business in Illinois, has never had a registered agent in Illinois, and does not engage in any business in Illinois.  (*Id.* ¶¶ 4-8.)  It does not maintain and has never maintained an office, facility, mailing address, telephone number, or real or personal property in Illinois, and has no officers or employees in this state.  (*Id.* ¶ 5.)  And, since at least April 2020, SBG has not contracted to supply goods or services in Illinois, provided or obtained goods or services in Illinois, or received income or filed tax returns in Illinois.  (*Id.* ¶ 8.)

### B.    SBG and T-Mobile

Notwithstanding SBG's lack of connection to Illinois, Plaintiffs chose to name SBG as a Defendant in this action seeking to challenge the 2020 merger between T-Mobile and Sprint.  As the Complaint makes clear, however, SBG is a mere afterthought to Plaintiffs' claims.  The Complaint contains only three sparse allegations about SBG specifically:  a paragraph correctly acknowledging SBG's foreign citizenship and asserting that SBG previously owned 80% of Sprint and owned 3.2% of T-Mobile as of April 2022 (Compl. ¶ 21); a paragraph discussing SBG's pre-merger ownership of Sprint (*id.* ¶ 62); and a footnote suggesting that SBG considered servicing

---

[1]  In support of its motion, SBG submits the Declaration of Mamoru Fujimura ("Decl.").

2

Sprint's corporate debt pre-merger (*id.* ¶ 77 n.117). Plaintiffs say nothing else about SBG, let alone any role that SBG had in T-Mobile's post-merger activities that allegedly resulted in higher prices to Verizon and AT&T customers.

The only apparent connection SBG has to this suit is the fact that Sprint was one of SBG's investment holdings from 2013 until the merger closed on April 1, 2020. (Decl. ¶ 9; Compl. ¶ 21.) Following the closing of the merger, SBG indirectly owned 24.7% of T-Mobile through its subsidiary SoftBank Group Capital Limited for a two-month period. (Decl. ¶¶ 12-13.) SBG's share of T-Mobile has since fallen precipitously to 3.2%, which was its stake when this action was filed. (*Id.* ¶¶ 14-15.)

At all times since the merger, SBG has had no involvement in T-Mobile's day-to-day operations, competitive strategy, or pricing for mobile wireless services. (*Id.* ¶ 16.) To the contrary, the relationship between T-Mobile and SBG is set out in an extensive stockholders' agreement between those two companies and Deutsche Telekom AG. (*Id.* ¶¶ 19-20.) SBG was entitled to limited corporate governance rights under the first version of that agreement effective after the merger, but it lost those rights in June 2020—only two months after the merger closed. (*Id.* ¶¶ 19-20.) Moreover, SBG is a separate entity from T-Mobile and keeps separate books and records from T-Mobile's. (*Id.* ¶ 17.)

## ARGUMENT

Plaintiffs bear the burden of establishing both personal jurisdiction and venue against each defendant. *See Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 697 (7th Cir. 2015) (personal jurisdiction); *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015) (venue). The Court generally "takes all the allegations in the complaint as true," but not where they are "contradicted by an affidavit." *Howeth v. Aramark Corp.*, 2010 WL 11668451, at *2 (N.D. Ill. Jan. 15, 2010) (venue); *see Webeq Int'l Inc. v. RFD Publ'ns, LLC*, 2003 WL 22455516

(N.D. Ill. Oct. 29, 2003) (personal jurisdiction). Rather, the Court "accepts as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Plaintiffs must make at least a *prima facie* showing of personal jurisdiction and venue to withstand a motion to dismiss. *See id.* at 1026 (personal jurisdiction); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (venue).

An antitrust plaintiff has two alternative ways to establish both personal jurisdiction and venue: (1) "the rules that govern in the general case"—Rule 4(k) for personal jurisdiction and 28 U.S.C. § 1391 for venue; or (2) Section 12 of the Clayton Act, 15 U.S.C. § 22, for both. *KM Enters. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). Plaintiffs cannot "mix-and-match" these alternatives, *id.* at 730, and as shown below, neither path is viable for Plaintiffs.

## I. Plaintiffs Cannot Establish Personal Jurisdiction over SBG Under Rule 4(k)(1)(A).

Rule 4(k)(1)(A) allows this court to exercise personal jurisdiction over a defendant that is subject to the personal jurisdiction of the courts of Illinois. "A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution," and in Illinois, "the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Plaintiffs must therefore establish either (1) "general jurisdiction" by showing that the defendant has continuous and systematic contacts with the forum state and is "at home" there, or (2) "specific jurisdiction" by showing that the defendant purposefully availed itself of the forum state and that Plaintiffs' claims arise out of those contacts. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-25 (2021). Plaintiffs cannot establish either form of jurisdiction over SBG.

### A. This Court Lacks General Personal Jurisdiction over SBG.

General jurisdiction "exists only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State."

*Kipp*, 783 F.3d at 697-98 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)) (alteration in original).  "[T]he [Supreme] Court has identified only two places where that condition will be met:  the state of the corporation's principal place of business and the state of its incorporation." *Id.* (citing *Daimler*, 571 U.S. at 136-37).  Neither condition is satisfied here.  SBG is incorporated in Japan and, as Plaintiffs acknowledge, its principal place of business is in Tokyo.  (Decl. ¶ 3; Compl. ¶ 21.)  SBG thus is not subject to general personal jurisdiction in Illinois.

### B.  This Court Lacks Specific Personal Jurisdiction over SBG.

Specific jurisdiction is based on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  "[A] state may assert specific jurisdiction . . . only if the defendant has 'a substantial connection with the forum State,'" and that "connection must be of the defendant's creation, not of the plaintiff's." *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (quoting *Walden*, 571 U.S. at 284).  "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement," *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), and "[n]ot just any contacts will do—the relevant contacts must be suit-related," *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 833 (N.D. Ill. 2018) (Durkin, J.) (quoting *Advanced Tactical*, 751 F.3d at 801).  Plaintiffs cannot satisfy these standards as to SBG because SBG itself has no connection with Illinois and T-Mobile's contacts cannot be imputed to SBG.

### 1.  SBG Has No Contacts with Illinois.

"The nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).  For antitrust claims, the specific jurisdiction inquiry requires "(1) intentional conduct . . . ; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703 (analyzing *Calder v.*

*Jones*, 465 U.S. 783, 789-90 (1984)); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013) (applying the same *Calder*-derived test to antitrust claims). "[T]o satisfy this test, the defendant's own . . . conduct must be directly connected to the forum state itself, and not just to the plaintiff who resides there." *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 833 (N.D. Ill. 2018) (Durkin, J.) (citing *Walden*, 571 U.S. at 287-88).

SBG has no contacts with Illinois at all, let alone contacts "expressly aimed at" Illinois with SBG's "knowledge that the effects would be felt" in Illinois. *Tamburo*, 601 F.3d at 703. SBG maintains no physical presence in Illinois, is not registered to conduct business in Illinois, does not have a registered agent in Illinois, and has never conducted business in Illinois. (Decl. ¶¶ 4-8). Where, as here, the "[plaintiff] does not allege that [defendant] took any action at all in Illinois" and identifies no facts about "[defendant's] relationship with the state of Illinois," the Court lacks personal jurisdiction. *Green Light Nat'l, LLC v. Kent*, 2018 WL 4384298, at *4 (N.D. Ill. Sept. 14, 2018).

It makes no difference that Plaintiffs allegedly paid higher prices for AT&T and Verizon retail mobile wireless services in Illinois. By Plaintiffs' telling, SBG signed the merger agreement, which facilitated the T-Mobile/Sprint merger, which allegedly caused T-Mobile to change its pricing, which allegedly led AT&T and Verizon to raise its prices for wireless services, which some Plaintiffs paid in Illinois. (*See* Compl. ¶¶ 1, 15-18, 102-108.) That long and speculative "causal chain" cannot support jurisdiction because "[o]nly intentional contacts by *the defendant* with the forum jurisdiction can support specific jurisdiction." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016) (emphasis added); *see also Walden*, 571 U.S. at 285 ("[The] plaintiff cannot be the only link between the defendant and the forum."). Moreover, even if Plaintiffs could somehow show that it was foreseeable that AT&T and Verizon would raise

their prices in Illinois following the merger, "mere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient post-*Walden*." *Monco*, 342 F. Supp. 3d at 834; *see also Kraft Chem. Co. v. Salicylates & Chems. Priv. Ltd.*, 2014 WL 11127924, at *3 (N.D. Ill. Oct. 28, 2014) ("[T]he alleged intentional infliction of injury upon a known Illinois resident also does not suffice to establish personal jurisdiction in this case because it does not evince any contact with the forum state.").

### 2. T-Mobile's Contacts with Illinois Cannot Be Imputed to SBG.

Unable to establish that SBG has engaged in suit-related conduct in Illinois, Plaintiffs attempt to impute T-Mobile's contacts with Illinois to SBG. *See, e.g.*, Compl. ¶ 20. But it is well settled that "shareholders do not inherit a corporation's contacts with a State." *Riverdale Plating & Heat Treating, LLC v. Andre Corp.*, 2015 WL 5921896, at *4 (N.D. Ill. Oct. 9, 2015); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Co.*, 230 F.3d 934, 943 (7th Cir. 2000) ("[S]tock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact."). Indeed, even a wholly-owned subsidiary's jurisdictional contacts cannot be imputed to a parent unless (1) the parent "exercise[s] an unusually high degree of control" or (2) "corporate formalities" are not "substantially observed." *Reimer*, 230 F.3d at 943.

SBG's small and indirect ownership of T-Mobile's shares is plainly insufficient to impute T-Mobile's contacts with Illinois to SBG. At the time of the filing of this suit, SBG's stake in T-Mobile was a mere 3.2%. (Decl. ¶ 15.) Even in the short two months following the merger, SBG indirectly owned less than 25% of the outstanding shares of T-Mobile, and the volume of shares were sharply reduced before any of the allegedly anticompetitive conduct occurred. (*Id.* ¶¶ 12-15.) Finally, even in situations where a parent owns 100% of the shares of a subsidiary, that still would be insufficient to impute contacts of the subsidiary absent "unusually high" or "abnormal" degree of control by the parent. *See Reimer*, 230 F.3d at 943; *see also Riverdale Plating*, 2015

WL 5921896, at *4 (requiring a shareholder's "abnormal" level of control before imputing wholly-owned company's jurisdictional contacts). That situation is far afield from SBG's indirect ownership of a mere 3.2% of the shares of T-Mobile.

### C. Plaintiffs Cannot Establish Personal Jurisdiction Under Rule 4(k)(2).

Plaintiffs also cannot rely on the nationwide-contacts provision of Rule 4(k)(2) to obtain personal jurisdiction over SBG. Under certain conditions, "Rule 4(k)(2) permits the aggregation of contacts nationwide" to support a court's personal jurisdiction over federal claims against a foreign defendant, *Abelez v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012), but the Rule by its own terms applies only where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). The Seventh Circuit has held that a defendant "has only to name some other state in which the suit could proceed" in order to "preclude use of Rule 4(k)(2)." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). Here, the Southern District of New York is a location where this suit could proceed against SBG because SBG participated in the negotiation of the merger agreement in New York, and representatives of SBG that participated in the merger discussions worked from the office of SBG's wholly-owned subsidiary in New York. (Decl. ¶ 11.) In any event, to remove any doubt about whether New York is an appropriate forum, SBG agrees that it would be "subject to jurisdiction in New [York]" for this lawsuit, "so Rule 4(k)(2) does not apply." *Medline Indus., Inc. v. Strategic Com. Sols., Inc.*, 553 F. Supp. 2d 979, 985 (N.D. Ill. 2008).

## II. Venue Is Improper Under Section 12 of the Clayton Act.

Alternatively, if Plaintiffs seek to invoke the Clayton Act as a basis for personal jurisdiction, the statute limits venue to the judicial districts where the defendant "is an inhabitant," "may be found," or "transacts business." 15 U.S.C. § 22; *see KM Enters.*, 725 F.3d at 724. The venue analysis under the Clayton Act is conducted "contemporaneously with the time of

service"—as of September 2022—"because the antitrust venue statutes are phrased in the present tense," though courts may also consider "the time the cause of action arose." *Redmond v. Atl. Coast Football League*, 359 F. Supp. 666, 669 (S.D. Ind. 1973); *see also Sportmart, Inc. v. Frisch*, 537 F. Supp. 1254, 1258 (N.D. Ill. 1982) ("Temporally, a corporation must have transacted business in the district at least at the time the cause of action accrued, if not when the complaint was filed."). Regardless of timing, none of the Clayton Act's provisions supports venue over SBG in this District.

### A. SBG Does Not Inhabit and Cannot Be Found in this District.

SBG neither inhabits nor can be found in this District. *First*, "[a] corporation inhabits the district in which it is incorporated." *KM Enters.*, 725 F.3d at 725. SBG does not inhabit this District because it is incorporated in Japan and has been since before April 2020. (Decl. ¶ 3.) *Second*, a corporation "is found in districts where it is present *and* carries on continuous local activities." *Industrial Models, Inc. v. SNF, Inc.*, 2015 WL 2399089 (N.D. Ill. May 18, 2015) (emphasis added) (collecting cases). Being "found" in a district "require[s] a form of a corporation's physical presence." *In re Eli Lilly & Co.*, 37 F.4th 160, 164 (4th Cir. 2022). SBG cannot be found in this District because (1) it maintains no offices, facilities, physical property, or real property in Illinois and has never done so, and (2) it does not carry on any "continuous local activities" in Illinois. (Decl. ¶¶ 5, 8.)

### B. SBG Does Not Transact Business in this District.

Plaintiffs must therefore show that SBG "transacts business" in this District for venue to be proper. The term "transacts business" refers to "the practical, everyday business or commercial concept of doing business or carrying on business," but that business must be of a "substantial character." *KM Enters.*, 725 F.3d at 731 (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)). The Seventh Circuit has identified several criteria for when a corporation

can be deemed to "transact[] business" in a district: (1) "when it promoted its goods through product demonstrations, solicited orders through salespersons located in the district, and shipped its products to the district," (2) when it "maintained offices and provided customer assistance in the district," (3) "when it made substantial purchases in the district," or (4) "when it exercised extensive control over a subsidiary or distributor that transacted business in the district." *Id.* (citations omitted). Not one of these criteria applies to SBG.

The first three criteria are plainly inapplicable here. SBG is a holding company whose business activities "*are limited to* making investments and holding its subsidiaries." (Decl. ¶ 22 (emphasis added).) SBG itself does not conduct business in Illinois: it has not registered to transact business in Illinois, it has not purchased or supplied goods or services in Illinois, it has not contracted to purchase or supply goods or services in Illinois, and it has not maintained an office in Illinois. (*Id.* ¶¶ 4-8.) SBG carries on no business in Illinois, and certainly no business of a "substantial character." *KM Enters.*, 725 F.3d at 731.

Plaintiffs' only remaining option is to show that SBG transacts business in this District through its subsidiaries. But "corporate formalities should be respected unless one of the recognized justifications for piercing the veil, or otherwise deeming a parent and a subsidiary one, is present." *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2015). A subsidiary's transacting business in a district is thus attributed to its parent only where the parent "exercised *extensive control* over [the] subsidiary." *KM Enters.*, 725 F.3d at 731 (emphasis added); *see also O.S.C. Corp. v. Toshiba Am., Inc.*, 491 F.2d 1064, 1066 (9th Cir. 1974) ("[T]he mere fact that a wholly-owned subsidiary did business within the state and had some common officers with the parent was insufficient to establish venue in the absence of a showing that the foreign corporation in fact controlled and managed the subsidiary.").

10

A parent exercises extensive control when its operations are enmeshed with the subsidiary's operations, *see Tiger Trash v. Browning-Ferris Indus.*, 560 F.2d 818, 822-23 (7th Cir. 1977), or where "the relationship between the [parent and subsidiary] corporations [is] such that one is merely the alter ego of the other," *Sportmart*, 537 F. Supp. at 1258. Conversely, "a parent-subsidiary relationship consisting of mere investment holding by the parent would not be sufficient." *Tiger Trash*, 560 F.2d at 823; *see also Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018) (a corporation that "is not an operating company and merely holds investments in subsidiaries" did not "transact business" in the judicial district). SBG's holdings in T-Mobile and its other subsidiaries do not meet this high standard for "extensive" control.

### 1. SBG Did Not Transact Business in this District Through T-Mobile.

Plaintiffs plead only that SBG holds a 3.2% share of T-Mobile (Compl. ¶ 21), which SBG holds indirectly through a subsidiary (Decl. ¶¶ 12, 15). T-Mobile is not a subsidiary of SBG at all—let alone a wholly-owned one—and SBG's fractional investment holding is significantly less than the 34% ownership share deemed insufficient by this Court. *See Sportmart*, 537 F. Supp. at 1258. Plaintiffs in any event must do more than offer sparse allegations that SBG owns a small share of T-Mobile that has rapidly declined since the merger. *See Dennis*, 343 F. Supp. 3d at 199 ("Allegations that . . . defendants are parent companies of subsidiaries that transact business in [a district] do not suffice to show that the parent companies transact business in [that district].").

Plaintiffs cannot establish the "extensive control" necessary to impute T-Mobile's activities in Illinois to SBG for purposes of the Clayton Act. *KM Enters.*, 725 F.3d at 731. SBG's investment holding in T-Mobile is passive: SBG does not provide input or exercise control over T-Mobile's operations, nor does it have any role in developing T-Mobile's competitive strategy or setting T-Mobile's prices for the mobile wireless services at issue here. (Decl. ¶ 16.) While SBG previously held certain *rights* to consult with T-Mobile management and approve three types of

11

major corporate actions, those rights did not confer "extensive control" over T-Mobile or its operations, and in all events SBG did not exercise those rights and lost them in June 2020. (*Id.* ¶¶ 19-20.) Put simply, SBG does not and has never controlled T-Mobile's business at all. (*Id.* ¶ 17.)

The Seventh Circuit's *Tiger Trash* decision is instructive. *Tiger Trash* concluded that venue was proper against a parent corporation based on its subsidiary's business in a judicial district because (1) the two corporations filed "[c]onsolidated financial statements and tax returns"; (2) "[t]he parent initiate[d] management training and development programs for its subsidiaries"; (3) the two corporations did not "notify the public that they are separate entities" but rather "conduct[ed] their advertising and promotional activities" in a way that "g[a]ve the appearance of one company operating nationwide"; (4) the parent provided "additional services, such as the lending of money for capital improvements"; (5) the parent's officers "assist[ed] the subsidiary through national marketing programs, signing up customers, making basic market development decisions and assisting in supervising the subsidiary by allocating financial resources, providing finances, systems accounting, management supervision and examination and setting standards for return on capital investment from the subsidiary"; and (6) the parent "impose[d] corrective action" if the "subsidiary's rate of return d[id] not meet [the parent's] standards." 560 F.2d at 823.

Not a single one of these facts is present here. First, SBG has always maintained corporate and financial records separate from T-Mobile's and prepared separate financial statements and tax returns. (Decl. ¶ 17.) Second, SBG has not conducted training or development programs for T-Mobile's employees. (*Id.* ¶ 18.) Third, SBG has maintained separate corporate branding from T-Mobile and has never used its marketing efforts to promote T-Mobile services. (*Id.* ¶ 17.) Fourth, SBG has never lent money to T-Mobile or held itself as liable for T-Mobile's debts. (*Id.*) Fifth,

SBG has no input on T-Mobile's competitive strategy or pricing decisions. (*Id.* ¶ 16.) And finally, while SBG would like a high return from its T-Mobile holdings (as all shareholders rationally do), it lacks the capacity to direct T-Mobile's competitive strategy at all, let alone impose "corrective action." (*Id.*) Moreover, T-Mobile does not report to SBG or its employees, and SBG has no involvement in the employment, compensation, or benefits of T-Mobile employees. (*Id.* ¶ 18.)

The court's decision in *Sportmart*, 537 F. Supp. 1254, is equally instructive. There, the court rejected the plaintiffs' contention that the foreign parent extensively controlled the subsidiary, even though the parent (1) "has a 34 percent minority interest"; (2) two of five members on the subsidiary's board of directors were also members of the parent's five-member board of directors; and (3) the subsidiary served as the parent's exclusive distributor. *Id.* at 1258. Here, the facts are far weaker: (1) SBG holds only a 3.2% minority interest in T-Mobile (Decl. ¶ 15); (2) SBG currently has no overlapping board members, has had only one overlapping board member in the past, and has no right to nominate directors for election to the T-Mobile board (*id.* ¶¶ 20-21); and (3) SBG does not sell products to T-Mobile in the United States (*id.* ¶ 17). And, as in *Sportmart*, "[t]he books and records of the two companies were always separately maintained." 537 F. Supp. at 1258; *see* Decl. ¶ 17. SBG thus lacks the extensive control over T-Mobile needed to impute T-Mobile's contacts to SBG. *See Sportmart*, 537 F. Supp. at 1259; *see also Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744, 749-50 (E.D. Va. 1987) (venue improper as to parent notwithstanding wholly-owned subsidiary's contacts); *Garshman v. Univ. Res. Holding, Inc.*, 641 F. Supp. 1359, 1365-66 (D.N.J. 1986) (venue improper based on subsidiary's contacts where parent had "at most . . . some general input into [subsidiary's] decision-making"); *King v. Johnson Wax Assocs., Inc.*, 565 F. Supp. 711, 718 (D. Md. 1983) (rejecting 100% stock ownership and overlapping boards as evidence of sufficient control); *Caribe Trailer Sys., Inc. v.*

*P.R. Maritime Shipping Auth.*, 475 F. Supp. 711, 717 (D.D.C. 1979) ("Generally when the subsidiary maintains a separate legal identity, its presence in the district will not be sufficient to bring the foreign parent corporation within the ambit of section 12.").

>    **2.    Business Transacted in this District by SBG's Other Investment Holdings and Subsidiaries Cannot Support Venue Against SBG.**

Beyond T-Mobile, Plaintiffs identify nothing about the business activities of SBG's subsidiaries and investment holdings supporting venue in this District. Even if they had, these activities have no bearing on whether SBG itself transacts business here.

These activities are irrelevant at the threshold. In applying Section 12 of the Clayton Act, the Court "examine[s] the activities of only the subsidiaries involved in the anti-competitive conduct in the district, not uninvolved affiliates." *United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 62 (D.D.C. 2004). "[L]ooking to the contacts of subsidiaries not involved in the [alleged conduct] [does] not serve the purpose of Section 12 of the Clayton Act," which was enacted to "hold offending corporations accountable in the areas where their offensive conduct took place." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 12 (D.D.C. 2003). Plaintiffs do not allege that SBG's other subsidiaries and investment holdings participated in the merger or the setting of T-Mobile's post-merger competitive strategy and prices, and those subsidiaries and investment holdings in fact had no such role. Their business activities within this District thus cannot support venue against SBG in this District. *See Smithfield Foods*, 332 F. Supp. 2d at 62-63 (disregarding, in analyzing venue as to a parent corporation, business transacted in the district by "merely uninvolved affiliates" that were not "connected with any [alleged] violation" of the antitrust laws); *Diamond Chem.*, 268 F. Supp. 2d at 12-13 (similar).

Even if those activities were relevant, they could not be attributed to SBG for venue purposes. Just as with T-Mobile, SBG adheres to corporate formalities with these subsidiaries and

investment holdings by being a separate legal entity, keeping separate corporate records, and separately accounting for its assets. (Decl. ¶¶ 23-25.) That preservation of corporate separateness deprives any in-district business transacted by SBG's other subsidiaries and investment holdings of any weight in assessing venue. *See, e.g.*, *Tiger Trash*, 560 F.2d at 823-24; *Sportmart*, 537 F. Supp. at 1258. Indeed, any business activities of investment holdings made by SBG's subsidiaries are doubly remote and would require two degrees of imputation, and Plaintiffs cannot even show SBG's extensive control over its immediate subsidiaries and investment holdings.

## III. This Court Should Dismiss SBG.

Plaintiffs' claims fail against SBG because the Court lacks personal jurisdiction if Plaintiffs proceed under Rule 4(k) and this District is an improper venue if Plaintiffs proceed under Section 12 of the Clayton Act. If the former, dismissal is warranted. *See, e.g.*, *Kipp*, 783 F.3d at 699-700 (affirming dismissal). And if the latter, the Court "shall dismiss" unless transfer is "in the interest of justice." 28 U.S.C. § 1406(a). Justice does not support transfer here: Plaintiffs picked a forum where "the material events of this case . . . certainly did not occur," Dkt. 63 at 9, and then lodged a "strenuous objection to a transfer." *Blond & Braun Haarwarenerzeugungs U. Handelsges M.B.H. v. Arroyo*, 2003 WL 22078321, at *3 (N.D. Ill. Sept. 8, 2003) (dismissing case for improper venue). Accordingly, "'the interest of justice'" does not "require[] [Plaintiffs] to accept a remedy [they] did not want." *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 232 (3d Cir. 1990).

## CONCLUSION

The Court should dismiss SBG for lack of personal jurisdiction and improper venue.

Dated:  December 5, 2022                Respectfully submitted,

/s/ *Rachel S. Morse*

Rachel S. Morse
MASSEY & GAIL LLP
50 East Washington Street, Suite 400
Chicago, IL 60602
Tel:  (312) 283-1590
rmorse@masseygail.com

Robert D. Wick
Henry B. Liu (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
Tel:  (202) 662-6000
rwick@cov.com
hliu@cov.com

Michael B. Miller (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10119
Tel:  (212) 468-8000
MBMiller@mofo.com

*Counsel for Defendant SoftBank Group Corp.*

16