IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEUTSCHE TELEKOM AG, T-MOBILE US, INC., and SOFTBANK GROUP CORP.,<br><br>*Defendants.* | Case No. 1:22-cv-03189<br><br>Hon. Thomas M. Durkin<br><br>Hon. Jeffrey Cole |

**PLAINTIFFS' OPPOSITION TO T-MOBILE, US INC. AND SOFTBANK GROUP CORP.'S REQUESTS FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO <u>DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................................. 1
II. LEGAL STANDARDS .................................................................................................... 1
    A.  Judicial Notice Under Rule 201(b)(2) Requires Indisputable Accuracy. .............. 2
    B.  Incorporation by Reference Is a Narrow Exception to the General Rule. ............. 2
III. ARGUMENT ..................................................................................................................... 3
    A.  The Court Cannot Take Judicial Notice of Exhibits 1-20 in Their Entirety. .......... 3
        1.  Rule 201 Does Not Authorize Blanket Judicial Notice. ............................ 4
        2.  Citation of Documents in the Complaint Does Not Incorporate
            Them. ........................................................................................................... 5
    B.  Defendants' Rule 12 Motion Cites Disputed Facts, Not Indisputable Ones. ......... 6
        1.  Exhibit 1:  Pre-Merger Factual Findings and Commitments by the
            FCC .............................................................................................................. 7
        2.  Exhibits 4–6:  Self-Interested Opinions Expressed in News Articles ........ 9
        3.  Exhibit 7:  T-Mobile's Website Statement About New Fees ................... 11
        4.  Exhibit 8:  Statements from DISH's Q4 2021 Earnings Call .................. 11
        5.  Exhibit 9:  Defendants' Reading of the BLS Website ............................. 12
        6.  Exhibit 10:  DISH's 10-K Filing ............................................................... 13
        7.  Exhibit 13:  The DOJ's Brief in Support of the Consent Decree ............. 14
        8.  Exhibit 15:  DISH's Spectrum Forfeiture Penalty ................................... 14
        9.  Exhibits 17 and 18:  Factual Findings in *Bradt v. T-Mobile US, Inc.* ....... 15
        10. Exhibits 19 and 20: T-Mobile's and DISH's Reports to the FCC ........... 15
IV. CONCLUSION ............................................................................................................... 15

**I.      INTRODUCTION**

"Judicial notice is a powerful tool that must be used with caution."[1] It allows a court to conclusively establish dispositive facts on a motion to dismiss without adhering to any of the adversarial evidentiary procedures typically required to guarantee due process.[2] Defendants invite the Court to throw caution to the wind and take "judicial notice" of (or incorporate by reference) twenty documents in their entirety, which altogether span hundreds of pages in length.[3] Defendants also seek to conclusively establish the truth of over fifty specific "facts" in their motion to dismiss, half of which are inaccurate as stated or based on unreliable sources.[4]

Plaintiffs first discuss why this court should decline to judicially notice these twenty documents in their entirety. Defendants have failed to establish a specific basis for admission of each document, let alone the untold number of "factual" assertions therein. Plaintiffs next explain that this Court may not take judicial of facts for which defendants have failed to establish indisputability, reliability, or admissibility.[5]

**II.     LEGAL STANDARDS**

On a Rule 12(b)(6) motion, courts must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor."[6] As a general rule, if a defendant relies on materials outside of the allegations in the complaint, the motion to dismiss "must be converted to one for summary judgment under Rule 56."[7] There are limited exceptions to this rule, including judicial notice

---

[1] *Tobey v. Chibucos*, 890 F.3d 634, 647–49 (7th Cir. 2018) (citation omitted).
[2] *See* Fed. R. Evid. 201(b), advisory committee notes to 1972 proposed rules ("[T]he appropriate fashion for meeting disputed adjudicative facts includes rebuttal evidence, cross-examination, . . . and argument.").
[3] Defs.' Request for Judicial Notice ("JN Br."), ECF No. 79-1; ECF Nos. 79-3–79-22 (Exhibits 1–20).
[4] Attachment A (listing judicially noticed facts in brief and identifying if they are objectionable).
[5] JN Br.
[6] *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (citation omitted).
[7] *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

under Federal Rule of Evidence 201 and the related doctrine of incorporation by reference.

### A. Judicial Notice Under Rule 201(b)(2) Requires Indisputable Accuracy.

Under Rule 201(b)(2), a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Put differently, "[i]n order for a fact to be judicially noticed, ***indisputability*** is a prerequisite."[8] "[C]ourts should [also] strictly adhere to the criteria by the Federal Rules of Evidence before taking judicial notice of pertinent facts.'"[9] The hearsay rule is one such rule that is often a useful yardstick for assessing the indisputability of a source.[10] And even then, "[i]t takes more than an exception to the hearsay rule . . . to justify judicial notice."[11]

### B. Incorporation by Reference Is a Narrow Exception to the General Rule.

Incorporation by reference "is a narrow exception to the general rule" prohibiting consideration of materials outside of the complaint on a 12(b)(6) motion.[12] Courts deem documents incorporated into the complaint "if they are *referred to in the plaintiff's complaint* and are *central to his claim*."[13] This doctrine is based on Rule 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." But "written instrument" does not mean every writing under the sun; it refers to "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate."[14] Incorporation by reference is therefore "aimed at cases

---

[8] *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) (emphasis added) (citation omitted).
[9] *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008).
[10] *See* Facts Judicially Noticeable; Indisputability—"Ascertainable Facts"—"Accuracy Cannot Be Questioned," 21B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5106.2 (2d ed. updated Apr. 2022) ("[W]hen determining whether a source has the requisite accuracy, the court can use hearsay in determining the propriety of noticing the fact.").
[11] *Doss*, 551 F.3d at 640.
[12] *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted).
[13] *Id*. (emphasis added).
[14] *Instrument*, Black's Law Dictionary (11th ed. 2019).

interpreting, for example, a contract."[15]  "Blanket adoption" of an entire document in such cases "makes sense . . . because the contract represents an agreement between two or more parties to which the law binds them."[16]  But when the document "is not the subject of the claim" the exception "does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact."[17]  Moreover, the exception "that allows consideration of attached documents does not necessarily mean that those documents may be relied upon for the truth of the matters asserted in them."[18]  "[I]t is necessary to consider *why* a plaintiff attached the documents, *who* authored the documents, and the *reliability* of the documents."[19]

## III.  ARGUMENT

### A.  The Court Cannot Take Judicial Notice of Exhibits 1-20 in Their Entirety.

Defendants improperly seek judicial notice of twenty whole documents, encompassing hundreds of pages of information.[20]  Defendants offer three rationales for taking judicial notice of their proffered exhibits: (1) citation to the document in plaintiffs' complaint incorporates it by reference and prevents plaintiffs from contesting its accuracy or validity;[21] (2) the document's filing in judicial or administrative proceedings allows its accuracy to be readily determined from unquestionable sources or not subject to reasonable dispute;[22] and (3) the document's filing with the Federal Communications Commission ("FCC") makes it a public record not subject to

---

[15] *188 LLC*, 300 F.3d at 735 (citations omitted).
[16] *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend* ("*NIGOS*"), 163 F.3d 449, 455 (7th Cir. 1998).
[17] *Id.*
[18] *Evans v. Gasca*, No. 14-CV-10518, 2016 WL 1407695, at *6 (N.D. Ill. Apr. 11, 2016).
[19] *NIGOS*, 163 F.3d at 455 (emphasis added).
[20] JN Br.; Exs. 1–20.
[21] *Id*. at 1–5 (discussing ECF Nos. 79-3–13 (Exs. 1–11)).
[22] *Id*. at 5–6 (discussing ECF Nos. 79-3–4, 79-14–20 (Exs. 1-2, 12–18)).

reasonable dispute.[23]  None of these apply.

### 1. Rule 201 Does Not Authorize Blanket Judicial Notice.[24]

Defendants claim that Rule 201 permits judicial notice of Exhibits 1, 2, and 12–20 as public records.[25] But Rule 201 refers to notice of *facts*, not *documents*. Although a court may generally take judicial notice of the *existence* of public records, "under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."[26] Thus, party filings from an earlier adjudication are "not subject to judicial notice because [they are] not evidence of an adjudicative fact."[27] Similarly, "because of the indisputability requirement, the notice of a court order is limited to the purpose of recognizing the judicial act or litigation filing."[28] Defendants only identify about fifty facts[29] within the hundreds of pages of court and administrative filings proffered as exhibits. It would therefore be practically impossible for this Court to determine whether the plethora of assertions within Exhibits 1, 2, and 12–20 are offered for a proper purpose, are indisputably true, and conform with the Federal Rules of Evidence.[30]

---

[23] JN Br. at 6-7 (discussing ECF Nos. 79-21–22 (Exs. 19-20)).
[24] Defendants' brief is structured into three sections based on a particular means of establishing judicial notice of a fact—Rule 201 or incorporation by reference. *See* JN Br. Plaintiffs will only address the arguments for judicial notice that defendants have actually raised in their brief, *i.e,*. incorporation by reference arguments for Exhibits 1–11 and Rule 201 for Exhibits 12–20. *See id*. Defendants explicitly argue that "the grounds for notice for public records discussed below in Section B apply to" Exhibits 1 and 2, which they have not done for any other exhibits, so plaintiffs will address both forms of judicial notice as to those two exhibits. *See id*. at 2.
[25] JN Br. at 1–2, 5–6 (Exs. 1–2, 12–18).
[26] *Tobey*, 890 F.3d at 647–49; *see also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012) (court "may not take judicial notice of underlying facts that may be subject to reasonable dispute").
[27] *In re Lisse*, 905 F.3d 495, 496–97 (7th Cir. 2018).
[28] *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, No. 04 C 3123, 2007 WL 845046, at *9 (N.D. Ill. Mar. 16, 2007).
[29] *See* Attachment A.
[30] *See* Fed. R. Evid. 201(b), advisory committee notes to 1972 proposed rules ("The reason we require a determination on the record is that we think fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet in the appropriate fashion the facts that come to the tribunal's attention.").

### 2. Citation of Documents in the Complaint Does Not Incorporate Them.

Defendants argue that because the Complaint "directly referenced and/or cited" the documents presented as Exhibits 1-11, they are "incorporated by reference" and may be judicially noticed in their entirety.[31] The fundamental flaw in defendants' argument is that the documents in Exhibits 1-11 are not the legal instruments, such as contracts, subject to incorporation by reference.[32] Instead, they include FCC and court filings, news articles, investor presentations, annual financial reports, and customer terms and conditions disclosures, none of which "defines rights, duties, entitlements, or liabilities" of the parties.[33] Defendants also ask for judicial notice of entire webpages in Exhibits 4–7 and 9.[34] However, "[i]t is particularly crucial to apply the incorporation-by-reference doctrine cautiously when dealing with webpages."[35]

But even if the documents in Exhibits 1-11 were the type suitable for incorporation by reference, they are not incorporated by reference here because they are not central to plaintiffs' claims.[36] Plaintiffs did not attach those documents to their complaint and cited them only sparsely. The fact that they relate to the same merger challenged in this action does not show "direct relation to matters at issue" such that the exhibits may be incorporated by reference.[37] The authorities

---

[31] JN Br. at 1–5 (Exs. 1–11).
[32] *See 188 LLC*, 300 F.3d at 735.
[33] *Instrument*, Black's Law Dictionary (11th ed. 2019); *see* JN Br. at 1-5 (Exs. 1-11).
[34] *See* Def.'s Mem. Supp. of Mot. to Dismiss ("Mot.") at 28, ECF No. 79 (quoting Ex. 9, ECF No. 79-11). Plaintiffs' limited references to the BLS webpage proffered as Exhibit 9 are insufficient to trigger incorporation by reference. *See In re Broiler Chicken Antitrust Litig.* (*"Broilers"*), 290 F. Supp. 3d 772, 794 (N.D. Ill. 2017) (Durkin, J.) ("Although Plaintiffs cite some data from the Department of Agriculture in their complaint, this is not license for the Court to consider all data from the Department of Agriculture as incorporated into the complaint on this motion.").
[35] *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 806 (N.D. Ill. 2022).
[36] *See 188 LLC*, 300 F.3d at 735. Particularly egregious is the arbitration agreement in Exhibit 11. Plaintiffs—who are not T-Mobile customers—are not bound by the terms of T-Mobile's arbitration agreement. Therefore, the arbitration agreement cannot be not central to their claims. *See Patterson*, 593 F. Supp. 3d at 806 (rejecting incorporation of terms and privacy policy that plaintiffs' quoted and cited by website address because the claims did "not rely significantly" on the terms).
[37] *See* JN Br. at 6.

defendants cite do not hold otherwise; they simply express the idea that judicial notice is appropriate where the fact of a filing's occurrence, rather than the truth of its contents, is highly relevant to a dispositive issue.[38] The filing or publication of the documents in Exhibits 1–11 is not central to plaintiffs' claims, and plaintiffs are not required to accept all the contents as true.[39]

Defendants misread *Twombly* to say that plaintiffs may *never* "reasonably contest" the "validity or accuracy" of any of the cited documents or assertions therein.[40] There, the Supreme Court merely noted that it was "entitled to take notice of the full contents of published articles referenced in the complaint" where the plaintiffs used "truncated quotations" from those articles that were contradicted by the full quotations in context.[41] This dovetails with the Seventh Circuit's approach, which allows incorporation by reference of an exhibit "whenever the allegations of the complaint are *materially inconsistent* with those exhibits."[42] Defendants have not shown material inconsistency between portions of Exhibits 1–11 and the allegations in plaintiffs' Complaint.[43]

### B. Defendants' Rule 12 Motion Cites Disputed Facts, Not Indisputable Ones.

Because defendants do not (1) identify the individual "facts" that they want this Court to judicially notice, (2) establish that those facts are indisputably true or reliable, and (3) show that the fact is proffered for a proper purpose, they fail to carry their burden. This Court thus has ample

---

[38] *See Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 365–69 (7th Cir. 1983) (fact of plaintiff's vexatious filing history bore on an injunction limiting the litigant's filing of new cases); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286 (7th Cir. 1994) (fact that a civil judgment was recorded against the plaintiff excused a creditor and credit reporting agency from liability under the Fair Credit Reporting Act); *see also, e.g.*, *United States v. Hope*, 906 F.2d 254, 260 n.1 (7th Cir. 1990) (fact of prior certified conviction statement an essential element of felony firearm enhancement); *Black v. Old Country Buffet*, No. 15 C 6422, 2020 WL 889112, at *2 (N.D. Ill. Feb. 24, 2020) (fact of bankruptcy proceedings precluded claim).
[39] *NIGOS*, 163 F.3d at 456.
[40] JN Br. at 5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007)).
[41] *Twombly*, 550 U.S. at 568 n.13.
[42] *Perkins v. Silverstein*, 939 F.2d 463, 469 n.4 (7th Cir. 1991) (emphasis added).
[43] *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" (citation omitted)).

reason to deny defendants' request for judicial notice outright.[44] However, if this Court examines each reference to Exhibits 1-20 in the Rule 12(b)(6) motion, it will see that most of defendants' "facts" cannot be judicially noticed under Rule 201 or incorporated by reference.[45]

### 1. Exhibit 1: Pre-Merger Factual Findings and Commitments by the FCC

Defendants seek judicial notice of several of the FCC's pre-merger factual findings to argue that the putative merger had procompetitive benefits, that DISH could plausibly replace Sprint Corporation as a competitor, and that the merged entity could build "a high-quality 5G service on a faster schedule and with more extensive coverage than either company could have delivered alone."[46] Defendants also seek judicial notice of an inaccurate description of FCC sanctions.[47] None of these "facts" meet the requirements for judicial notice under Rule 201(b)(2).

"[I]f a court could take judicial notice of a fact simply because it was found to be true in a previous action, the doctrine of collateral estoppel would be superfluous."[48] And "[d]ue process prohibits the use of collateral estoppel in these instances because the plaintiff has never been afforded the opportunity to present its evidence and arguments on the claim."[49] These factual findings are not subject to incorporation by reference either. Plaintiffs do not cite to or otherwise

---

[44] *See Daniel*, 833 F.3d at 742; *NIGOS*, 163 F.3d at 455.
[45] Plaintiffs do not currently object to the facts defendants cite to from Exhibit 2 (*i.e.*, the U.S. Department of Justice's ("DOJ") Complaint in *United States v. Deutsche Telekom AG*, No. 1:19-02232 (D.D.C. July 26, 2019) and Exhibit 3 (*i.e.*, the Settlement Agreement in *New York v. Deutsche Telekom AG*, No. 1:19-cv-05434-VM-RWL (S.D.N.Y. Mar. 10, 2020)). These facts are largely co-extensive with the allegations in the Complaint, even if they sometimes omit key information. Plaintiffs reserve their right to object to further use of those documents. Plaintiffs also do not challenge judicial notice of the facts drawn from Exhibits 12, 14, and 16 in defendants' brief, but oppose notice of those documents in their entirety.
[46] Mot. at 4.
[47] *Id*.
[48] *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997).
[49] *Id*.

refer to these pre-merger factual findings in the Complaint.[50] Nor are these findings central to plaintiffs' claims; the FCC merely *predicted* how the merger *might* affect competition post-merger, which cannot be *inconsistent* with Plaintiffs' allegations of post-merger anticompetitive effects.[51]

The Court also may not take judicial notice of the pre-merger factual findings in the FCC Order under Rule 201(b)(2), because, like the factual findings of any adjudicative body, they were inherently disputed.[52] Indeed, two out of five of the FCC Commissioners *dissented* from the factual findings in question.[53] The dissenters concluded that "the benefits of this merger, if any, simply do not outweigh the harms."[54] Subsequent events have fallen in line with the predictions of the dissent.[55]

Defendants also inaccurately describe DISH's penalties under the FCC Order.[56] The "$2.2 billion in fines, forfeiture of DISH's very valuable spectrum licenses, and contempt orders" are not mandatory.[57] Rather, $2.2 billion is the *maximum* amount of potential contributions, which would be "calculated separately for each commitment that is not met."[58] Additionally, DISH is only subject to "*potential* [spectrum] license forfeitures,"[59] which are (1) "at the United States'

---

[50] Plaintiffs cite to the FCC Order to allege two facts: (1) that T-Mobile committed to not raise prices on its legacy plans for three years and (2) that T-Mobile's pricing commitments to the FCC contained numerous loopholes that allowed it to raise prices anyways. Class Action Compl. ("Compl.") ¶ 102 n.157 & 159 (June 17, 2022), ECF No. 1.
[51] *Perkins*, 939 F.2d at 469.
[52] "Ascertainable Facts"—Court Records, Wright & Miller, *supra* note 10, § 5106.4 ("While judicial findings of fact may be more reliable than other facts found in the file, this does not make them indisputable; they were disputed at trial and if the case is overturned on appeal, they will be disputed again.").
[53] *See generally* ECF No. 79-3 at 279–309 (dissenting statements by commissioners).
[54] *Id*. at 294.
[55] They also disputed whether the merged entity would be able to deploy 5G faster than the pre-merger status quo, arguing, "[t]he FCC's decision makes it less likely that carriers will invest in 5G—especially in rural areas—because it takes away the fuel that fires competition and powers greater deployment." *Id*. at 286. The Commission has had to "extend T-Mobile's 5G buildout timeline." Compl. ¶ 99.
[56] Mot. at 31.
[57] *Id*.
[58] ECF No. 79-3 at 256; *see also id.* at 167–68 (describing contributions and how they will be assessed).
[59] *Id*. at 256 (emphasis added).

sole discretion" and (2) only apply to licenses "that are not being used to provide retail mobile wireless services."[60] Because forfeiture depends on conditions that may not occur, defendants' characterization of forfeiture as mandatory is not even accurate, let alone indisputable. Defendants cannot show incorporation by reference either, where the Complaint itself contradicts, citing authority, the supposedly "indisputable" fact.[61] Nor is this "fact" central to plaintiffs' claims because, as alleged in the Complaint, these sanctions do not meaningfully protect competition.[62]

### 2. Exhibits 4–6: Self-Interested Opinions Expressed in News Articles

The news articles found at Exhibits 4-6 "are not the type of documentary evidence or 'written instrument[s]' which [Rule] 10(c) intended to be incorporated into, and made a part of, the complaint."[63] Judicial notice of any "facts" from these articles, which in any event do not contradict the allegations of the complaint, should be denied on that basis alone.[64] This foundational requirement aside, the "facts" defendants seek judicial notice of may not be incorporated by reference because they are unreliable and are not central to plaintiffs' claims.

Defendants cite Exhibit 4, an article by *The Verge*, to support their contention that "Verizon's and AT&T's prices point to obvious alternative explanations for those price

---

[60] ECF No. 79-17 at 12; *see also* ECF No. 79-3 at 256–57 (describing license forfeitures as "potential").
[61] *See* Compl. ¶ 93 ("The fine of $2.2 billion and *possible* license forfeitures if DISH fails to build a national network that provides 5G broadband service to at least 70 percent of the U.S. population by June 2023, do not change this conclusion." (emphasis added) (citing Nicholas Economides et al., *Assessing DOJ's Proposed Remedy in Sprint/T-Mobile: Can Ex Ante Competitive Conditions in Wireless Markets Be Restored?* ¶ 22 (NET Instit., Working Paper No. 19-14, 2019), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3467663 ("It bears noting that the $2.2 billion fine is the maximum, which implies that it could be lower, as Dish could challenge the fine in court as, for example, inappropriate due to unforeseen obstacles to the build-out.")).
[62] Compl. ¶¶ 93, 95–105.
[63] *See, e.g.*, *Perkins*, 939 F.2d at 467 n.2; *Simpson v. City of Milwaukee*, No. 12-C-500, 2013 WL 4523184, at *2 (E.D. Wis. Aug. 27, 2013); *Mart v. Forest River, Inc.*, No. 3:10 CV 118, 2011 WL 924289, at *3 (N.D. Ind. Mar. 14, 2011) ("[T]he Seventh Circuit has found that newspaper articles are not 'written instruments' that are considered to be part of the pleadings.").
[64] As discussed in Section III.A.2, Defendants have not identified any contradiction between representations in the article and what is alleged in the Complaint, so their out-of-context citation to *Twombly* is inapposite.

increases—inflation and increasing cost pressures."[65] However, plaintiffs never referred to these "obvious alternative explanations" in their Complaint;[66] defendants refer to quotes from a Verizon Communications, Inc. ("Verizon") spokesperson, who defends these price increases in vague terms.[67] Company spokespersons are paid to paint the company's behavior in a positive light, so it is likely that they would blame price hikes on external forces, whether true or not. This article's subtitle itself underscores this: "File this one under 'ambiguous fee increases.'"[68]

Similarly, defendants cite to Exhibit 5 to show that "T-Mobile has been holding firm and offering a range of price plans to attract customers from rivals."[69] Plaintiffs cited to this article to show price hikes by Verizon and AT&T Inc. ("AT&T"); they never mentioned this statement, or what the article says about T-Mobile US, Incorporated ("T-Mobile").[70] And, the article in fact confirms that T-Mobile raised its prices surreptitiously using fees and taxes, which *confirms* the allegations of the complaint.[71]

Defendants also advance T-Mobile CEO John Legere's statement, quoted in Exhibit 6, that T-Mobile has offered its "lowest-priced option ever" post-merger.[72] Plaintiffs never alleged this fact; they only alleged that T-Mobile *represented* these plans as "low-cost."[73] Nor is this fact

---

[65] Mot. at 25–26 (citing ECF No. 79-6).
[66] Compl. ¶ 108 & n.171.
[67] ECF No. 79-6 (justifying price hikes based on "administrative and telco expenses," "complying with regulatory requirements," and "current economic conditions").
[68] *Id*. The body of the article also states the author's opinion that the spokesperson "didn't cite a specific reason for the price increase on consumer accounts" and sardonically remarks that the explanation "[r]eally clears things up!" *Id.*
[69] Mot. at 26 (quoting ECF No. 79-7).
[70] Compl. ¶ 108 & n.169; *Patterson*, 593 F. Supp. 3d at 806 (rejecting incorporation by reference of website that was cited to support an unrelated allegation).
[71] ECF No. 79-7 ("But even T-Mobile isn't exactly a hero on the price front. The company used to boast that its unlimited plans included all fees and taxes in the advertised price. Today, only the two upper-tier Magenta plans include the extra charges in the posted price, while such items are added on top of the lower-tier plans."); *see also* Compl. ¶¶ 102–05.
[72] Mot. at 27 & n.4 (citing ECF No. 79-8).
[73] Compl. ¶ 104.

central to plaintiffs' claims, or even inconsistent with them; the Complaint alleges that T-Mobile increased the prices of plans by charging separately for taxes and fees.[74] T-Mobile may not "hide behind [the] untested, self-serving assertions" of its own CEO.[75]

### 3. Exhibit 7: T-Mobile's Website Statement About New Fees

T-Mobile cites its own "Regulatory Programs & Telco Recovery Fee" webpage for the proposition that: "the fee ***reflects third-party charges*** over which T-Mobile has ***no control***."[76] The Complaint references this web page as an example of how T-Mobile has exploited fee loopholes to circumvent restrictions on price increases; the Complaint never refers to, let alone adopts, T-Mobile's unsupported, self-serving, and unreliable justifications.[77] Like the self-interested opinions from news articles discussed above, T-Mobile benefits from blaming increased fees on third-parties, true or not.[78] Finally, the webpage does not even say that T-Mobile has "no control" over "third-party charges."[79] Rather, it says that these fees "help defray costs" that T-Mobile must incur to do its business, such as the costs of its own network and regulatory compliance.[80] T-Mobile's self-serving justifications for price hikes may not be judicially noticed.

### 4. Exhibit 8: Statements from DISH's Q4 2021 Earnings Call

Defendants cite to DISH's Q4 2021 Earnings Call Transcript for two "facts": (1) that "DISH has a new deal with T-Mobile that further 'improved the economics' for DISH and enhanced integration and a 'good spirit of cooperation between the teams'" and (2) "that DISH

---

[74] *Id*. ¶¶ 104–105.
[75] *NIGOS*, 163 F.3d at 456.
[76] Mot. at 27 (emphasis added) (citing ECF No. 79-9).
[77] Compl. ¶ 103; *NIGOS*, 163 F.3d at 455.
[78] *NIGOS*, 163 F.3d at 455.
[79] ECF No. 79-9 (absence).
[80] *Id*. at 3 (stating that fees are directed towards "complying with government mandates" and "certain network facilities (*e.g.*, leases), operations, and services we obtain to provide you with service").

has already constructed a substantial portion of its 5G network, with its standalone 5G services already available in Las Vegas and broader expansion expected in June 2022."[81] Plaintiffs cite this transcript a single time to allege that "DISH still claims it will build a greenfield 5G network that covers seventy percent of the country using untried technology by 2023 with only $10 billion in capital."[82] But the allegations immediately surrounding this single reference make clear this claim cannot be trusted.[83] For example, the Complaint alleges that "DISH is now heavily incentivized not to undercut either company because it exists at the mercy of AT&T and T-Mobile, who could easily crush DISH because they have lower operating costs and provide the sole infrastructure by which DISH can have customers at all."[84] It also alleges DISH cannot afford the promised buildout and will more likely sell its spectrum.[85] And, "there are still basic features missing which make it clear [DISH's] service *isn't for the general public*."[86] Additionally, DISH's statements were made by company spokespersons during an earnings call infecting them with self-interest.[87] Plaintiffs did not refer to these self-serving and unreliable statements in their Complaint. They may not be judicially noticed.

### 5. Exhibit 9: Defendants' Reading of the BLS Website

Plaintiffs quoted Exhibit 9 solely to clarify what the Bureau of Labor Statistics ("BLS") includes in "personal wireless/cellular telephone service."[88] Defendants, however, point to a single

---

[81] Mot. at 32 (citing and quoting ECF No. 79-10).
[82] Compl. ¶ 92.
[83] *Id*. ¶¶ 90–94 (alleging that "DISH has struggled to hold onto its subscribers" and that "DISH's future as a mobile wireless provider does not look any better").
[84] *Id*. ¶ 97.
[85] *See id*. ¶¶ 90–94.
[86] Mitchell Clark, *After Three Months, Dish's 5G Service Still Feels Like a Beta*, The Verge (Sept. 27, 2022) (emphasis added), https://www.theverge.com/2022/9/27/23373064/dish-project-genesis-5g-accounts-service.
[87] JN Br. at 5 ("In the event DISH fails to launch its 5G service as promised, it faces a maximum penalty of $2.2 billion and forfeiture of its spectrum licenses.").
[88] Compl. ¶ 79 & n.118.

line from that webpage to argue that its explanation of the BLS statistics "directly contradicts [p]laintiffs' assertion that quality-adjusted prices went up" and thereafter claim that any increase in Consumer Pricing Index ("CPI") data "can be entirely explained by increases in quality from the 5G services introduced in 2020."[89]

Defendants mischaracterize the website, which simply says that the BLS does not adjust quality when the name of a plan changes from 4G to 5G. Right after defendants' selective quotation, the website states that "the CPI continues to observe the changes in customer access of 5G networks to determine *if quality differences can be quantified*."[90] Rather than "directly contradicting plaintiffs' assertion," this statement shows that BLS cannot presently quantify *any* net quality improvement from 5G. As this Court explained in *Broilers*, "[s]tatistics such as these (*i.e.*, statistics about a nationwide industry) are inherently a product of various calculation and collection methods, which can be reasonably questioned"[91]—and, therefore, cannot be the subject of judicial notice. "Both sides should also have the opportunity to argue to the Court why these statistics may not be what they seem, which necessarily cannot take place at the pleading stage."[92]

### 6. Exhibit 10: DISH's 10-K Filing

Defendants cite to DISH's 10-K form for the following "fact": "DISH has already constructed a substantial portion of its 5G network, with its standalone 5G services already available in Las Vegas and broader expansion expected in June 2022."[93] Plaintiffs' lone citation

---

[89] Mot. at 28 (emphasis and alterations in brief) (quoting ECF No. 79-11 at 2).
[90] ECF No. 79-11 at 2 (emphasis added).
[91] *See Broilers*, 290 F. Supp. 3d at 794 ("Although Plaintiffs cite some data from the Department of Agriculture in their complaint, this is not license for the Court to consider all data from the Department of Agriculture as incorporated into the complaint on this motion.").
[92] *Id.*; *cf. Kozyrkov v. Aculocity, LLC*, No. 16 C 6961, 2017 WL 528385, at *6 (N.D. Ill. Feb. 9, 2017) ("Indeed, reading the Agreement as an objective third party, the Court finds [plaintiff's] interpretation to be a plausible one. . . . That is sufficient to survive a motion to dismiss.").
[93] Mot. at 32 (citing ECF No. 79-12).

to DISH's 10-K to allege that DISH lost over 1.3 million subscribers in 2020 and 2021 does not mean plaintiffs have adopted every statement in DISH's nearly 200-page filing.[94] Additionally, DISH has an interest in overstating its progress to regulators,[95] making its self-interested reports unreliable. This "fact" is not judicially noticeable via incorporation by reference.

### 7. Exhibit 13: The DOJ's Brief in Support of the Consent Decree

The DOJ filed a brief defending its proposed final judgment in *United States v. Deutsche Telekom AG*, No. 1:19-02232 (D.D.C), in response to public comments.[96] Defendants seek judicial notice under Rule 201 of several predictions by the DOJ about the procompetitive benefits of the merger.[97] But party filings—such as briefs by advocates—are not subject to judicial notice where offered for their truth, as they are here.[98] The DOJ's factual contentions were also disputed when made, as illustrated by public comments discussed in the brief that criticized the DOJ's exceedingly optimistic view of potential procompetitive benefits, not to mention the trial itself.[99]

### 8. Exhibit 15: DISH's Spectrum Forfeiture Penalty

Defendants rely on the final judgment in *New York v. Deutsche Telekom AG*, No. 19-5434 (S.D.N.Y.), to assert that "DISH ***must forfeit its licenses*** if it fails to build out its 5G network."[100] But the judgment actually orders that forfeitures are "at the United States' sole discretion" and that they may only be for licenses "that are not being used to provide retail mobile wireless services."[101] Because forfeiture depends on two events not certain to occur, defendants' inaccurate

---

[94] *See NIGOS*, 163 F.3d at 455; Compl. ¶ 91.
[95] *See* Mot. at 31 (noting fines and penalties for failure to comply).
[96] ECF No. 79-15.
[97] Mot. at 6 (both quoting ECF No. 79-15 at 2).
[98] *In re Lisse*, 905 F.3d at 496–97.
[99] *See, e.g.*, ECF No. 79-15 at 18 ("[T]here is no explanation of how a purported increase in capacity reduces the merged firm's marginal cost of serving the next customer or the next neighborhood."); ECF No. 79-15 at 25-26 ("DISH has powerful incentives to create something less than a fully competitive 5G network.").
[100] Mot. at 31 (citing ECF No. 79-17 at 12) (emphasis added).
[101] ECF No. 79-17 at 12; *see also id.* at 256–57 (describing license forfeitures as "potential").

characterization cannot be judicially noticed under Rule 201.

### 9. Exhibits 17 and 18: Factual Findings in *Bradt v. T-Mobile US, Inc.*

Defendants seek judicial notice under Rule 201 of three filings in *Bradt*, a consumer class action where the court denied a pre-merger temporary restraining order.[102] Judicial notice against a non-party of factual findings by another court for their truth amounts to improper collateral estoppel, as described in Section III.B.1. This finding by the *Bradt* court is also hearsay offered for its truth: that pre-merger regulatory commitments would reduce anticompetitive effects by ensuring that DISH could become a viable fourth competitor.[103] Further, these findings are not indisputably true; they were based on pre-merger predictions and not the post-merger evidence alleged in the Complaint.[104] The Court may not judicially notice factual findings in *Bradt*.

### 10. Exhibits 19 and 20: T-Mobile's and DISH's Reports to the FCC

The underlying facts from Exhibits 19 and 20 cited in defendants' brief are inadmissible hearsay because they were made outside of this litigation and are offered for their truth.[105] Moreover, these representations are multiple hearsay; DISH's report is in turn based on reports from its subsidiaries[106] and T-Mobile's report cites to its own website numerous times.[107] Defendants have provided no foundation for these underlying sources, nor have they asserted which hearsay exceptions apply. Judicial notice under Rule 201 is, therefore, inappropriate.

## IV. CONCLUSION

For the foregoing reasons, this Court should reject defendants' requests for judicial notice.

---

[102] ECF Nos. 79-19 (complaint), 79-20 (voluntary dismissal); *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752-BLF, 2020 WL 1809716, at *3 (N.D. Cal. Feb. 28, 2020).
[103] Mot. at 8, 31, 33.
[104] *Cf.* ECF No. 63 at 9 ("[T]he focus should not be on the merger itself, or the prior litigation surrounding it, because this suit really arises from the alleged anticompetitive conduct that took place afterward.").
[105] ECF Nos. 79-21 & 22; Mot. at 8, 32, 37 (citing reports for truth of buildout statistics and that DISH and T-Mobile have met their buildout commitments).
[106] ECF No. 79-21 at 1.
[107] ECF No. 79-22.

Dated: February 3, 2023      */s/    Brendan P. Glackin*

Brendan P. Glackin (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Nicholas W. Lee (*pro hac vice*)
Sarah D. Zandi (*pro hac vice*)
Jules A. Ross (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
bglackin@lchb.com
lchan@lchb.com
nlee@lchb.com
szandi@lchb.com
jross@lchb.com

Eric L. Cramer (*pro hac vice*)
Najah A. Jacobs (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (415) 215-0962
Phone: (215) 715-3256
ecramer@bm.net
njacobs@bm.net

Robert Litan (*pro hac vice*)
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006
Phone: (202) 559-9745
rlitan@bm.net

Joshua P. Davis (*pro hac vice* forthcoming)
BERGER MONTAGUE PC
59A Montford Avenue
Mill Valley, CA 94941
Phone: (415) 215-0962
jdavis@bm.net

Gary I. Smith Jr. (*pro hac vice*)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (267)-702-2318
gsmith@hausfeld.com

Hill Brakefield (*pro hac vice* forthcoming)
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, D.C. 20006
Phone: (202) 540-7200
hbrakefield@hausfeld.com

Joel Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
ARDC No. 830399
LAW OFFICES OF KENNETH N. FLAXMAN P.C.
200 S Michigan Ave., Suite 201
Chicago, IL 60604
Phone: (312) 427-3200
jaf@kenlaw.com
knf@kenlaw.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Brendan P. Glackin, an attorney, hereby certify that this **Plaintiffs' Opposition to T-Mobile US, Inc. and SoftBank Group Corp.'s Requests for Judicial Notice in Support of Their Motion to Dismiss the Complaint** was electronically filed on February 3, 2023 and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

Respectfully submitted,

*/s/ Brendan P. Glackin*
Brendan P. Glackin (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
bglackin@lchb.com

*Counsel for Plaintiffs and the Proposed Class*