IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>DEUTSCHE TELEKOM AG, T-MOBILE US, INC., and SOFTBANK GROUP CORP.,<br><br>                Defendants. | Case No. 1:22-cv-3189<br><br>Hon. Thomas M. Durkin |

**DEFENDANT SOFTBANK GROUP CORP.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND IMPROPER VENUE**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     Plaintiffs' Opposition Confirms that Venue Is Improper Under the Clayton Act. ............. 2

II.    Plaintiffs' Opposition Fails to Establish Specific Jurisdiction over SBG Under Rule 4(k)(1)(A). ............................................................................................................... 4

      A.    SBG Did Not Purposefully Direct Conduct at Illinois Through T-Mobile or the Merger Agreement. ................................................................................ 5

      B.    SBG Did Not Otherwise Purposefully Avail Itself of Illinois. .............................. 7

      C.    T-Mobile's Activities Cannot Be Attributed to SBG under a Conspiracy Theory of Personal Jurisdiction. ............................................................................ 8

III.   Plaintiffs' Request for Jurisdictional Discovery Should Be Denied................................ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ....................................................................................... 4, 6, 7

*Am. Medicorp, Inc. v. Humana, Inc.*,
  445 F. Supp. 573 (E.D. Pa. 1977) ....................................................................................... 4

*Ariel Invs., LLC v. Ariel Capital Advisors LLC*,
  881 F.3d 520 (7th Cir. 2018) ....................................................................................... 4, 6, 7

*Buckner v. Atl. Plant Maint., Inc.*,
  182 Ill. 2d 12 (1998) ........................................................................................................... 8

*Budget Blinds, Inc. v. White*,
  536 F.3d 244 (3d Cir. 2008) ............................................................................................... 8

*Caddo Sys., Inc. v. Siemens AG*,
  2022 WL 704779 (N.D. Ill. Mar. 9, 2022) ....................................................................... 10

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................................................ 4

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
  2003 WL 21542491 (N.D. Ill. July 3, 2003) ....................................................................... 5

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Co.*,
  230 F.3d 934 (7th Cir. 2000) ...................................................................................... 5, 7, 10

*Daniel v. Am. Bd. of Emergency Med.*,
  988 F. Supp. 127 (W.D.N.Y. 1997) .................................................................................... 3

*FTC v. BINT Operations LLC*,
  595 F. Supp. 3d 740 (E.D. Ark. 2022) ................................................................................ 4

*Green v. Advance Ross Electronics Corp.*,
  86 Ill. 2d 431 (1981) ....................................................................................................... 8, 9

*Hyatt Int'l Corp. v. Coco*,
  302 F.3d 707 (7th Cir. 2002) .............................................................................................. 8

*Insolia v. Philip Morris Inc.*,
  31 F. Supp. 2d 660 (W.D. Wis. 1998) ................................................................................ 6

*KM Enters. v. Glob. Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) ..................................................................................................3

*Lexington Ins. Co. v. Hotai Ins. Co.*,
    938 F.3d 874 (7th Cir. 2019) ..................................................................................................6

*Monco v. Zoltek Corp.*,
    342 F. Supp. 3d 829 (N.D. Ill. 2018) ..................................................................................6, 7

*In re Packaged Seafood Prods. Antitrust Litig.*,
    2022 WL 3161673 (S.D. Cal. Aug. 8, 2022) ..........................................................................9

*Ploense v. Electrolux Home Prods., Inc.*,
    377 Ill. App. 1091 (2007) .............................................................................................6, 8, 10

*Prewett Enters. v. Grand Trunk W. R.R. Co.*,
    2019 WL 6310495 (N.D. Ill. Nov. 25, 2019) .........................................................................5

*Sensory Techs., LLC v. Sensory Tech. Consultants, Inc.*,
    2013 WL 5230700 (S.D. Ind. Sept. 17, 2013) ........................................................................6

*Smith v. Jefferson Cnty. Bd. of Educ.*,
    378 F. App'x 582 (7th Cir. 2010) ...........................................................................................9

*Sportmart, Inc. v. Frisch*,
    537 F. Supp. 1254 (N.D. Ill. 1982) .........................................................................................3

*In re SSA Bonds Antitrust Litig.*,
    420 F. Supp. 3d 219 (S.D.N.Y. 2019).....................................................................................4

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...............................................................................................4, 5

*Textor v. Board of Regents*,
    711 F.2d 1387 (7th Cir. 1983) ................................................................................................9

*Tiger Trash v. Browning-Ferris Indus.*,
    560 F.2d 818 (7th Cir. 1977) ..................................................................................................3

*Toma v. Motley Crue, Inc.*,
    2012 WL 4793508 (N.D. Ill. Oct. 9, 2012).............................................................................8

*United States v. Maruyasu Indus. Co.*,
    229 F. Supp. 3d 659 (S.D. Ohio. 2017) ..................................................................................9

*United States v. Smithfield Foods, Inc.*,
    332 F. Supp. 2d 55 (D.D.C. 2004) ..........................................................................................2

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) ..................................................................................10

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................4, 6

**Other Authorities**

*Earnings Results for the 9-Month Period Ended December 31, 2020*, SoftBank
   Group (Feb. 8, 2021), https://group.softbank/system/files/pdf/ir/presentations/
   2020/earnings-presentation_q3fy2020_01_en.pdf ........................................................2

Ellen Glover, *Nature's Fynd Raises $350M to Bring Its Meatless, Dairy-Free
   Food to Market*, Built in Chicago (July 19, 2021),
   https://www.builtinchicago.org/2021/07/19/natures-fynd-raises-350m-series-c ........2

Nona Tepper, *Delivery Darling ShipBob Just Raised $68M in Funding, Led by
   SoftBank*, Built in Chicago (Sept. 29, 2020),
   https://www.builtinchicago.org/2020/09/28/shipbob-raises-65m-series-d ..................2

Yogita Khatri, *SoftBank Leads $70 Million Round for DeFi Infrastructure Firm
   BloXroute*, The Block (Apr. 12, 2022), https://www.theblock.co/post/141590/
   bloxroute-raises-funding-softbank-defi-infrastructure ................................................2

**PRELIMINARY STATEMENT**

Plaintiffs' opposition relies on a boundless and unprecedented theory of personal jurisdiction against Defendant SoftBank Group Corp. ("SBG"). SBG is a Japanese corporation that has never set foot in Illinois. Its sole connection to this lawsuit is that it signed the T-Mobile-Sprint merger agreement in its role as a former shareholder in Sprint. Plaintiffs nevertheless claim that SBG can be sued in Illinois based on a multi-step chain of events: (1) SBG allegedly foresaw that the merger would allow T-Mobile to raise prices following the merger, (2) T-Mobile allegedly *did* raise prices following the merger, (3) AT&T and Verizon allegedly followed suit by raising *their* prices to *their* customers, and (4) certain Plaintiffs are AT&T and Verizon customers who allegedly paid higher prices for wireless services in Illinois. If that indirect and speculative connection between SBG and Illinois were deemed sufficient to establish personal jurisdiction, then virtually any party to a merger transaction could be subject to suit in any jurisdiction in which trickle-down competitive effects of the transaction might be felt.

That is not enough under either the Clayton Act or Rule 4(k)(1). To establish proper venue and personal jurisdiction over SBG, Plaintiffs must identify purposeful contacts that SBG—not T-Mobile or anyone else—had with this forum. Plaintiffs do not identify a single action by SBG in their Complaint or opposition that targeted Illinois. Instead, Plaintiffs cite a grab-bag of post-merger actions by T-Mobile and investments in Chicago-based companies by non-SBG entities that have no connection to this action. Under the law of this Circuit, however, Plaintiffs cannot impute the conduct of those other entities to SBG unless they establish that SBG *controlled* those entities, a showing they have not made. Their claims against SBG should be dismissed for improper venue and lack of personal jurisdiction.

**ARGUMENT**

**I.     Plaintiffs' Opposition Confirms that Venue Is Improper Under the Clayton Act.**

Plaintiffs assert that the Clayton Act supports venue in this District because SBG "transact[ed] business" here by investing in Chicago-based companies, such as ShipBob, M1 Finance, Nature's Fynd, and BloXroute. (Dkt. 86 ("Opp.") at 4–5.) That is wrong: as Plaintiffs' own sources make clear, a wholly different entity is responsible for those investments—SoftBank Vision Fund II-2 L.P. ("Vision Fund II").[1]  Vision Fund II and SBG are separate and distinct legal entities, and SBG has no direct role in managing or directing the investments of Vision Fund II. (Second Decl. ¶¶ 2–3.)[2]  Plaintiffs thus fail to show that SBG transacts business in this District.

Nor can Plaintiffs impute the activities of Vision Fund II to SBG. First, under the Clayton Act's venue provision, courts "examine the activities of only the subsidiaries involved in the [alleged] anti-competitive conduct in the district, *not uninvolved affiliates*." *United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 62 (D.D.C. 2004) (emphasis added); *see* Dkt. 77 ("Mot.") at 14. Vision Fund II is an "uninvolved affiliate": Plaintiffs do not allege that Vision Fund II had any involvement in the merger agreement or is otherwise connected to T-Mobile, so

---

[1] *See, e.g.*, Nona Tepper, *Delivery Darling ShipBob Just Raised $68M in Funding, Led by SoftBank*, Built in Chicago (Sept. 29, 2020), https://www.builtinchicago.org/2020/09/28/shipbob-raises-65m-series-d (cited at Opp. 4 n.24 and identifying investment by "SoftBank Vision Fund"); Ellen Glover, *Nature's Fynd Raises $350M to Bring Its Meatless, Dairy-Free Food to Market*, Built in Chicago (July 19, 2021), https://www.builtinchicago.org/2021/07/19/natures-fynd-raises-350m-series-c (cited at Opp. 4 n.27 and identifying investment by "Softbank's Vision Fund 2"); Yogita Khatri, *SoftBank Leads $70 Million Round for DeFi Infrastructure Firm BloXroute*, The Block (Apr. 12, 2022), https://www.theblock.co/post/141590/bloxroute-raises-funding-softbank-defi-infrastructure (cited at Opp. 4 n.28 and identifying investment by "SoftBank Vision Fund 2"); *Earnings Results for the 9-Month Period Ended December 31, 2020* at 2, SoftBank Group (Feb. 8, 2021), https://group.softbank/system/files/pdf/ir/presentations/2020/earnings-presentation_q3fy2020_01_en.pdf (cited at Opp. 2 n.3 and distinguishing SBG from Vision Fund II).

[2] In further support of its motion, SBG submits the Second Declaration of Mamoru Fujimura ("Second Decl."). SBG also relies on the Declaration of Mamoru Fujimura submitted on December 5, 2022, Dkt. 77-1 ("Decl.").

its contacts with Chicago are irrelevant. Second, even if Vision Fund II were connected to the merger, that *still* would be insufficient because a parent must "exercise[] extensive control over a subsidiary" for the parent to inherit the subsidiary's venue contacts. *KM Enters. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 731 (7th Cir. 2013). Because SBG has no direct control over Vision Fund II, any contacts that Vision Fund II had with this District cannot support venue as to SBG. *See Tiger Trash v. Browning-Ferris Indus.*, 560 F.2d 818, 822–23 (7th Cir. 1977) (requiring extensive overlap in operations to impute a subsidiary's activities to parent for venue under the Clayton Act); *Sportmart, Inc. v. Frisch*, 537 F. Supp. 1254, 1258 (N.D. Ill. 1982) (establishing "alter ego" standard to impute subsidiary's contacts to parent for venue under the Clayton Act); *see also* Mot. at 13–14 (citing additional cases).[3]

Plaintiffs fare no better with their vague references to "SoftBank's promotional and recruiting efforts in Illinois." (Opp. at 5.) The only "promotional" activity identified by Plaintiffs is a conference attended by an individual named Jonathan Duckles at the University of Chicago (*id.* at 6 n.38), but Mr. Duckles is not and has never been an employee of SBG (Second Decl. ¶ 4). Plaintiffs also refer to recruiting affiliations that "SoftBank China Venture Capital" has with the University of Chicago (Opp. at 6 n.39), but that entity has had no affiliation at all with SBG since at least 2016 (Second Decl. ¶ 5). In any event, even if SBG had carried out promotional and recruiting activities in Chicago, Plaintiffs' own authority confirms that "recruitment visits . . . and attendance at industry meetings are clearly de minim[i]s contacts" that "lack merit as a basis for establishing venue." *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 258 (W.D.N.Y. 1997) (citing *Am. Medicorp, Inc. v. Humana, Inc.*, 445 F. Supp. 573, 579 n.2 (E.D. Pa. 1977)),

---

[3] Plaintiffs have not even shown that Vision Fund II "transacts business" in this District by investing in Chicago-based companies. There are no allegations that Vision Fund II's investments took place in this District, and the activities of the Chicago-based companies cannot be imputed to Vision Fund II absent a showing of "extensive control." *KM Enters.*, 725 F.3d at 731.

3

*disapproved on other grounds in later appeal*, 428 F.3d 408 (2d Cir. 2005). Plaintiffs cite the out-of-circuit *FTC v. BINT Operations LLC*, 595 F. Supp. 3d 740 (E.D. Ark. 2022), for a contrary conclusion (Opp. at 6 n.40), but that case is readily distinguishable. There, the defendant invested "vast sums of money," "set up online seminars," "engaged in interactive chats," "sent email messages," and "recruited . . . in any attempt to expand [the defendant's] footprint in the Eastern District of Arkansas." *Id.* at 755–56. No comparable allegations exist here. *See also In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 231 (S.D.N.Y. 2019) ("Attending one . . . conference in New York is not evidence of 'carrying on business of any substantial character.'").

## II. Plaintiffs' Opposition Fails to Establish Specific Jurisdiction over SBG Under Rule 4(k)(1)(A).

Unable to establish personal jurisdiction over SBG under the Clayton Act, Plaintiffs attempt to satisfy the more restrictive test for specific jurisdiction under Rule 4(k)(1)(A). Under that test, jurisdiction is appropriate here only if the defendant engaged in "(1) intentional conduct . . . ; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). Exercising jurisdiction is appropriate "only if the defendant has 'a substantial connection with the forum state,'" which "must be of the defendant's creation." *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

Here, Plaintiffs argue that SBG created a "substantial connection" with Illinois by (1) signing the merger agreement, which allegedly affected mobile wireless prices in Illinois charged

4

by AT&T and Verizon, (2) investing in Chicago-based companies, and (3) conspiring with T-Mobile to raise mobile wireless prices. (Opp. at 6–13.) None of those allegations is sufficient to support jurisdiction over SBG in this forum.

### A. SBG Did Not Purposefully Direct Conduct at Illinois Through T-Mobile or the Merger Agreement.

Plaintiffs argue that this Court can exercise jurisdiction over SBG because *T-Mobile* closed former Sprint retail stores in Illinois and because *T-Mobile* allegedly raised mobile wireless prices in Illinois. (Opp. at 8–9.) Plaintiffs' opposition admits, however, that T-Mobile's activities cannot be attributed to SBG unless SBG exercises an "unusually high" or "abnormal" degree of control over T-Mobile. *See* Mot. at 7–8; *see also Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Co.*, 230 F.3d 934, 943 (7th Cir. 2000). Plaintiffs' opposition also concedes that SBG has no involvement in T-Mobile's day-to-day operations, competitive strategy, or pricing for mobile wireless services, and that SBG's stake in T-Mobile was a mere 3.2% at the time this suit was filed. (Opp. at 8–9; Decl. ¶¶ 15–16.) Plaintiffs thus cannot rely on *T-Mobile*'s actions in Illinois to support personal jurisdiction over SBG.[4]

Plaintiffs alternatively argue that SBG directed its *own* conduct at Illinois by signing a merger agreement that supposedly "reduce[d] competition and raise[d] prices across the nation." (Opp. at 8.) To support specific jurisdiction, however, a defendant's conduct must be "*specifically* directed at the forum, making the forum the *focal point* of the [alleged activity]." *Tamburo*, 601

---

[4] Plaintiffs note that certain SBG officers held positions within Sprint (Opp. at 2–3), but they never argue that Sprint's historical contacts with Illinois prior to the merger have any bearing on personal jurisdictional over SBG. Even if Sprint's contacts with Illinois were somehow relevant, "shared board members" are insufficient to impute Sprint's jurisdictional contacts to SBG because they "are consistent with the normal relationship between a parent company and its subsidiary." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 WL 21542491, at *6 (N.D. Ill. July 3, 2003); *see also Prewett Enters. v. Grand Trunk W. R.R. Co.*, 2019 WL 6310495, at *5 (N.D. Ill. Nov. 25, 2019) (collecting cases).

5

F.3d at 706 (emphasis added). Here, Plaintiffs cannot identify any part of the merger agreement that was specifically directed at Illinois or show that Illinois was the "focal point" of the merger. Nor can Plaintiffs identify any aspect of the merger agreement that speaks to the pricing of mobile wireless services in Illinois. Plaintiffs are thus reduced to contending that the merger facilitated *post-merger* pricing conduct in Illinois by entities other than SBG—T-Mobile, AT&T, and Verizon—but those decisions are irrelevant as to SBG because "the relation between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum.'" *Advanced Tactical*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284); *see also Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 833 (N.D. Ill. 2018) (Durkin, J.) ("[T]he defendant's own . . . conduct must be directly connected to the forum state itself.").

Plaintiffs nonetheless insist that SBG directed its activities at Illinois because SBG allegedly "knew that the merger would have . . . nationwide effect[s]" (Opp. at 8), but those allegations fall well short of establishing that SBG purposefully directed its conduct at a particular state. *See, e.g.*, *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 881 (7th Cir. 2019) ("[T]he Supreme Court has squarely rejected the proposition that . . . collateral financial benefits are purposeful contacts."); *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 673 (W.D. Wis. 1998) ("[T]he geographic focal point of [defendant's] participation was not Wisconsin, but all of North America. [Defendant]'s 'focus,' or lack thereof, is simply too diffuse to say that it could have anticipated being haled into court in Wisconsin.").[5] Indeed, even if SBG knew and intended that

---

[5] *See also Ariel Invs.*, 881 F.3d at 522 (rejecting argument that "a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions'" because "[t]hat contention is incompatible with *Walden*"); *Sensory Techs., LLC v. Sensory Tech. Consultants, Inc.*, 2013 WL 5230700, at *5 (S.D. Ind. Sept. 17, 2013) ("The first allegation, that [defendant] conducts business nationwide, does not support any inference that it expressly aimed its activities at Indiana."); *Ploense v. Electrolux Home Prods., Inc.*, 377 Ill. App. 1091, 1107 (2007) ("Plaintiff does not allege . . . that the [defendant] intended Illinois to be a particular target" and thus "does not allege any activity that the [defendant] purposefully directed at Illinois.").

the merger could result in higher prices to AT&T and Verizon customers in Illinois—a claim Plaintiffs do not make—that *still* would be insufficient because "mere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient post-*Walden*." *Monco*, 342 F. Supp. 3d at 834; *see also Ariel Invs.*, 881 F.3d at 522 ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law.").

### B. SBG Did Not Otherwise Purposefully Avail Itself of Illinois.

As SBG showed in its opening brief, SBG maintains no presence in Illinois, is not registered to conduct business in Illinois, and has never done business in Illinois. (Mot. at 6; Decl. ¶¶ 4–7.) Plaintiffs nevertheless assert that SBG "purposefully availed" itself of the privilege of conducting business in Illinois by investing in "golden egg" companies based in Chicago. (Opp. at 11.) As explained above, however, the cited investments were made by Vision Fund II and not SBG. *See supra* at 2; *see also Reimer*, 230 F.3d at 943 (requiring "unusually high" degree of control to impute in-state activities of subsidiary to parent). And even if SBG itself had made the investments at issue, they still would be insufficient to support specific jurisdiction because those investments have nothing to do with this lawsuit. *See Advanced Tactical*, 751 F.3d at 801 (holding that contacts must be "suit-related" for specific jurisdiction).

Plaintiffs next attempt to assert jurisdiction by claiming that SBG "entered into a post-trial settlement agreement with the State of Illinois, which shows that SoftBank purposefully availed itself of the benefits of Illinois law." (Opp. at 11–12.) That is incorrect for three reasons. First, SBG is not a party or a signatory to the settlement agreement; rather, the settlement was signed only by T-Mobile, Sprint, and certain state attorneys general. Second, the settlement *disclaims* Illinois law and *forecloses* litigation in Illinois, providing instead that "[t]he terms, interpretation, and enforcement of this Agreement shall be governed by the laws of the State of New York" and

7

"[t]he *exclusive* forum for any dispute arising out of or in connection with this Agreement shall be" New York.[6] These provisions refute any suggestion that the settlement made litigating in Illinois "foreseeable to the defendant." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002); *cf. Toma v. Motley Crue, Inc.*, 2012 WL 4793508, at *4 (N.D. Ill. Oct. 9, 2012) (even an *Illinois* choice-of-law clause was merely "a factor supporting personal jurisdiction in Illinois" and "not dispositive"). Third, the settlement agreement resulted from litigation initiated by state attorneys general in New York and resolved through a trial on the merits there. Accordingly, "[t]his is not a case where [SBG] deliberately sought out a business relationship with an Illinois resident," but rather a case where the defendants were "compelled by law to respond to a lawsuit that [the Illinois Attorney General] chose to file." *Toma*, 2012 WL 4793508, at *4; *see also Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (similar).

### C. T-Mobile's Activities Cannot Be Attributed to SBG under a Conspiracy Theory of Personal Jurisdiction.

Plaintiffs' last resort is to argue that T-Mobile's acts in Illinois can be imputed to SBG under a purported "co-conspirator doctrine" of personal jurisdiction (Opp. at 13), but Illinois has never adopted such a doctrine. Although Plaintiffs cite *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431 (1981), for the contrary view, *Green* held that "[i]t is *not* true that if one conspirator is subject to Illinois jurisdiction so are all the others," *id.* at 440 (emphasis added), and the Illinois Supreme Court has since "effectively scuttl[ed]" any remaining suggestion that jurisdiction can be based on a co-conspirator's contacts, *Ploense*, 377 Ill. App. 3d at 1105 (citing *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 23–24 (1998)). The Seventh Circuit thus recognizes that a conspiracy theory of personal jurisdiction "may not be valid in Illinois" based on this intervening authority.

---

[6] Settlement Agreement § 9 (emphasis added).

*Smith v. Jefferson Cnty. Bd. of Educ.*, 378 F. App'x 582, 585–86 (7th Cir. 2010).[7]

Even if Illinois courts recognized conspiracy jurisdiction, it would be inapplicable here. *First*, the cases cited by Plaintiffs in which courts exercised conspiracy jurisdiction all involved price-fixing conspiracies, and Plaintiffs do not plead a conspiracy here. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 3161673, at *2 (S.D. Cal. Aug. 8, 2022); *United States v. Maruyasu Indus. Co.*, 229 F. Supp. 3d 659, 673 (S.D. Ohio. 2017). Although Plaintiffs seek to analogize a merger agreement to a conspiracy (Opp. at 14–15), they cite no authority applying conspiracy jurisdiction over parties to contractual agreements—let alone a seller in an antitrust challenge to a merger that was tried on the merits and permitted to proceed. And there are obvious reasons not to extend the rule to the merger context: conspiracy jurisdiction over a seller premised on the merged entity's conduct *following the merger* would boundlessly permit jurisdiction over sellers anywhere the merged entity did business, regardless of what contacts the seller had with the forum state.

*Second*, even if Illinois recognized conspiracy jurisdiction for mergers, it would not extend to SBG in this case. Plaintiffs identify T-Mobile's closure of Sprint stores as an overt act in furtherance of the alleged "conspiracy," but they never allege that those post-merger closures have any connection to the merger agreement or explain how they relate to the AT&T and Verizon price increases that supposedly injured them. Moreover, even if the closure of Sprint stores could be connected to the merger agreement, that still would be insufficient because SBG lacks its own contacts with Illinois. "[The Illinois] supreme court was concerned that the conspiracy theory of jurisdiction would allow the exercise of personal jurisdiction over a nonresident defendant who

---

[7] Plaintiffs cite (Opp. at 14) *Textor v. Board of Regents*, 711 F.2d 1387, 1392–93 (7th Cir. 1983), but *Textor* relies solely on *Green*, which has been effectively overruled. *See Smith*, 378 F. App'x at 585–86 (noting that *Textor* may no longer be good law).

had no minimum contacts with the forum state." *Ploense*, 377 Ill. App. 3d at 1106. Illinois courts thus cannot exercise personal jurisdiction where only "[o]ther coconspirators"—but not the defendant challenging jurisdiction—"purposefully directed their activities at Illinois." *Id.* at 1107. That is precisely the case here. *See supra* at 5–7.

### III. Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.

Plaintiffs request leave to seek jurisdictional discovery as an alternative to dismissal, but that request should be denied. (Opp. at 15.) First, "the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted," and "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer*, 230 F.3d at 946; *see also Caddo Sys., Inc. v. Siemens AG*, 2022 WL 704779, at *7 (N.D. Ill. Mar. 9, 2022) (Durkin, J.) (denying jurisdictional discovery). Plaintiffs have not established a prima facie case for personal jurisdiction over SBG for all the reasons discussed above. The purported factual ambiguities that Plaintiffs identify either proceed from an incorrect premise (as to Vision Fund II's investments in Chicago-based companies, *see supra* at 2), or are legally insufficient (as to SBG's purported role in the nationwide merger of T-Mobile and Sprint, *see supra* at 5–7).

Plaintiffs' request is also untimely. Plaintiffs should have sought any jurisdictional discovery it deemed necessary before opposing SBG's motion to dismiss and not "buried such requests in its briefs as a proposed alternative to dismissing [SBG] on the state of the current record." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (affirming dismissal without jurisdictional discovery). Plaintiffs' delay provides an independent basis to deny their request for jurisdictional discovery.

### CONCLUSION

The Court should dismiss SBG for lack of personal jurisdiction and improper venue.

| | |
|---|---|
| Dated: March 10, 2023 | Respectfully submitted, |
| | */s/ Rachel S. Morse*   |
| | Rachel S. Morse<br>MASSEY & GAIL LLP<br>50 East Washington Street, Suite 400<br>Chicago, IL 60602<br>Tel: (312) 283-1590<br>rmorse@masseygail.com<br><br>Robert D. Wick<br>Henry B. Liu (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-6000<br>rwick@cov.com<br>hliu@cov.com<br><br>Michael B. Miller (*pro hac vice*)<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY 10119<br>Tel: (212) 468-8000<br>MBMiller@mofo.com<br><br>*Counsel for Defendant SoftBank Group Corp.* |