# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROW-MAN, ANN LAMBERT, ROBERT ANDER-SON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated, | Case No. 22-cv-3189 |
| | Judge Thomas M. Durkin |
| | Magistrate Judge Jeffrey Cole |
| *Plaintiffs*, | |
| v. | |
| DEUTSCHE TELEKOM AG et al., | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT T-MOBILE US, INC.'S
MOTION TO CERTIFY THE COURT'S NOVEMBER 2 ORDER
<u>FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)</u>**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 3

        A.      Whether Plaintiffs Have Plausibly Alleged Antitrust Standing Is A Controlling
                Question Of Law ..................................................................................... 4

        B.      There Is Substantial Ground For Difference Of Opinion About Whether Plaintiffs
                Have Plausibly Alleged Antitrust Standing. ........................................... 6

        C.      An Immediate Appeal Could Materially Advance The Litigation. ..................... 15

III.    CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
 219 F.3d 674 (7th Cir. 2000) ...................................................................................3, 6

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
 19 F.4th 127 (2d Cir. 2021) ................................................................................8, 10, 15

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
 116 F. Supp. 2d 1159 (C.D. Cal. 2000) .........................................................10, 11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2008) ...................................................................................................2, 12

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
 459 U.S. 519 (1983) ......................................................................................1, 2, 4, 6, 7

*Atl. Richfield Co. v. USA Petroleum Co.*,
 495 U.S. 328 (1990) ...................................................................................................8, 9

*Austin v. Blue Cross & Blue Shield of Ala.*,
 903 F.2d 1385 (11th Cir. 1990) ..............................................................................10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................1, 2, 3, 12, 13

*Boone v. Ill. Dep't Corr.*,
 71 F.4th 622 (7th Cir. 2023) ......................................................................................5

*BT Bourbonnais Care, LLC v. Norwood*,
 866 F.3d 815 (7th Cir. 2017) ....................................................................................5

*In re Cardizem CD Antitrust Litig.*,
 332 F.3d 896 (6th Cir. 2003) ....................................................................................4

*Cargill, Inc. v. Monfort of Colo., Inc.*,
 479 U.S. 104 (1986) ..............................................................................................9, 14

*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013) ................................................................................13

*City of Pittsburgh v. West Penn Power Co.*,
 147 F.3d 256 (3d Cir. 1998) ......................................................................................4

*Dahlstrom v. Sun-Times Media, LLC*,
 777 F.3d 937 (7th Cir. 2015) ....................................................................................5

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) .............................................................................................7, 13

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*FTC v. Wyndham Worldwide Corp.*,
    10 F. Supp. 3d 602 (D.N.J. 2014) .......................................................................15

*Herrera v. Cleveland*,
    8 F.4th 493 (7th Cir. 2021) ...................................................................................5

*Holmes v. SIPC*,
    503 U.S. 258 (1992) ..............................................................................................7

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
    451 U.S. 557 (1981) ..............................................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..............................................................................................7

*In re Lion Air JT 610 Crash*,
    2023 WL 3653217 (N.D. Ill. May 25, 2023) ........................................................3

*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) ..............................................................................11

*Merican, Inc. v. Caterpillar Tractor Co.*,
    713 F.2d 958 (3d Cir. 1983) .................................................................................4

*Minn-Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012) ...............................................................................6

*Motorola Mobility LLC v. AU Optronics Corp.*,
    775 F.3d 816 (7th Cir. 2015) ............................................................................4, 6

*New York v. Deutsche Telekom AG*,
    439 F. Supp. 3d 179 (S.D.N.Y. 2020)..........................................................9, 13, 14

*Novell, Inc. v. Microsoft Corp.*,
    505 F.3d 302 (4th Cir. 2007) ...............................................................................4

*S. Pac. Co. v. Darnell-Taezner*,
    245 U.S. 531 (1918) ..............................................................................................8

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
    859 F.2d 1007 (1st Cir. 1988) ..............................................................................6

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ....................................................................2, 10, 15

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)..............................................................................................5

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
    86 F.3d 656 (7th Cir. 1996) ...................................................................................4

*Sterk v. RedBox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ..................................................................................5

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ...........................................................................5, 14

*U.S. Gypsum Co. v. Ind. Gas Co.*,
    350 F.3d 623 (7th Cir. 2003) ................................................................................11

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ..................................................................................15

*Woodman's Food Market, Inc. v. Clorox Co.*,
    833 F.3d 743 (7th Cir. 2016) ..................................................................................6

*Zakrzewska v. The New School*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009)...................................................................15

## I.    INTRODUCTION

Interlocutory review under 28 U.S.C. § 1292(b) is designed to address consequential, un-settled questions of law that can meaningfully change the trajectory of important, resource-intensive cases.  This Court's order denying T-Mobile's motion to dismiss Plaintiffs' Complaint presents just such a question:  whether customers of AT&T and Verizon have antitrust standing to challenge the merger of T-Mobile and Sprint.

That is a pure and potentially case-dispositive question of law:  If the Seventh Circuit agrees with T-Mobile, that would end the case, eliminating the need for discovery and trial—both certain to be burdensome for the Court and parties alike in a case where Plaintiffs are seeking billions of dollars in damages on behalf of all Verizon and AT&T wireless subscribers, who account for the majority of the country's adult population.

Whether Plaintiffs have standing to challenge the T-Mobile-Sprint merger is also a question on which courts could reasonably disagree—and on which the Seventh Circuit, unlike other courts of appeals, has yet to provide clear guidance under the more stringent pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Plaintiffs' expansive conception of antitrust standing is unprecedented.  No court has ever ruled that plaintiffs may challenge a defendant's merger as anticompetitive based on alleged injuries attributable to the decisions of the defendant's *competitors* to increase their own prices after the merger.  Such an attenuated theory of antitrust standing runs headlong into the Supreme Court's decisions holding that "tenuous and speculative" connections "between the alleged antitrust violation and the [plaintiff's] alleged injury" are insufficient to satisfy the proximate-cause requirement of antitrust standing.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983).  Plaintiffs must instead show that their injuries resulted "*direct[ly]*" from the alleged anticompetitive conduct.  *Id.*

1

at 541 (emphasis added).  Applying this proximate-cause standard, lower courts have consistently rejected—including on the pleadings—attempts to establish antitrust standing based on injuries flowing from third parties' conduct, because "[s]uch independent decisions snap the chain of causation linking [p]laintiffs' injury to the [d]efendants' misconduct." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021).

Plaintiffs' multi-step theory of antitrust standing is also impossible to reconcile with the Supreme Court's case law requiring plaintiffs to allege *plausible*—not merely possible—claims to survive a motion to dismiss and "unlock the doors to discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008); *see also Twombly*, 550 U.S. at 553.  Plaintiffs allege that they should be permitted to recover from T-Mobile because "AT&T and Verizon have charged higher prices for nationwide wireless plans" "[a]s a result" of the T-Mobile-Sprint merger (Compl. ¶ 122)—even though that merger was approved after extensive scrutiny by federal and state regulators and a federal district court in New York and subject to multiple years of ongoing court-appointed monitoring, and even though there are many other possible explanations for the price increases, including inflation and massive investment in network improvements.  Plaintiffs' theory calls for a return to the bygone era of notice pleading, when speculative allegations of a supposed causal link between the defendant's conduct and the plaintiff's claimed harm may have been enough to state a claim.  Worse still, that theory would permit challenges to any completed merger on the basis of competitors' post-merger price increases; the antitrust laws should not be interpreted in a way that *encourages* price hikes by companies seeking to foment challenges to a competitor's merger.

The Seventh Circuit has yet to squarely address such a boundless theory of antitrust standing and, since *Twombly* was decided, has had no chance to apply the proximate-causation require-

ment to assess the sufficiency of standing allegations by plaintiffs who do no business with a defendant; this case presents an ideal opportunity for it to do so. Without certification, however, T-Mobile and third parties will be compelled to incur the "potentially enormous expense of discovery" associated with major antitrust class actions, *Twombly*, 550 U.S. at 559, and this Court will doubtless be asked to resolve time-consuming discovery disputes that an interlocutory appeal may render unnecessary. Section 1292(b) was designed to ensure the availability of appellate review in just this type of case—one presenting a significant, highly debatable, and potentially dispositive legal question that, if decided in the defendant's favor, would end the case. The Court should grant certification to ensure Plaintiffs' novel antitrust-standing theory is tested in the crucible of appellate review before the point where that review may become practically unavailable.

## II.    ARGUMENT

Under 28 U.S.C. § 1292(b), a district court can certify an issue for interlocutory appeal if the movant shows that "(1) there is a question of law; (2) the question is controlling; (3) the question is 'contestable,' that is, there is substantial grounds for differences of opinion; and (4) immediate appeal would speed up the ultimate termination of the litigation." *In re Lion Air JT 610 Crash*, 2023 WL 3653217, at *2 (N.D. Ill. May 25, 2023) (citing *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000)).

All of those elements are met here. This Court's order denying T-Mobile's motion to dismiss decided (1) a legal question of antitrust standing that (2) is potentially outcome-determinative in this litigation; (3) that question is contestable because Plaintiffs' attempt to hold T-Mobile liable for AT&T's and Verizon's price increases conflicts with decisions from the Supreme Court and other courts requiring antitrust plaintiffs to plausibly allege a direct causal connection between the

defendant's conduct and their injuries, and because no court has ever held that a plaintiff has anti-trust standing to sue a defendant whose merger supposedly led to competitors' price increases; and (4) an interlocutory appeal may obviate burdensome discovery and a lengthy class trial. In short, this is precisely the sort of case where interlocutory review is likely to conserve court and party resources and enhance judicial decision-making.

A.    **Whether Plaintiffs Have Plausibly Alleged Antitrust Standing Is A Controlling Question Of Law.**

A question is "'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). The antitrust-standing question here satisfies that standard. To plead antitrust standing, Plaintiffs must plausibly allege that their injuries—the higher prices they are allegedly paying to AT&T and Verizon—were proximately caused by T-Mobile's supposedly anticompetitive conduct in merging with Sprint. *Associated Gen. Contractors*, 459 U.S. at 535–37. If Plaintiffs have failed to allege a "direct link" between the merger and the higher prices AT&T and Verizon have decided to charge them, their Complaint must be dismissed for lack of antitrust standing. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998).

For that reason, courts regularly determine that questions of antitrust standing are controlling and worthy of Section 1292(b) review. *E.g.*, *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 817, 820–21 (7th Cir. 2015); *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307–08 (4th Cir. 2007); *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 905 (6th Cir. 2003); *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 960 (3d Cir. 1983).

Courts also regularly conclude that the question whether a plaintiff has alleged sufficient facts to satisfy an element of a claim is a controlling question of law warranting Section 1292(b)

review. *E.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 765 (2023). The Seventh Circuit has emphasized, in the Section 1292(b) setting, the importance of correctly applying *Twombly*'s plausibility standard. In an antitrust case alleging a conspiracy to fix the price of text messages, the court explained that an interlocutory appeal from an order denying a motion to dismiss was appropriate because the question whether a complaint "states a claim under the standard for pleading set forth in *Twombly* . . . is a *controlling* question"; "if the . . . complaint does not state a claim, the case is likely . . . to be over." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624 (7th Cir. 2010). The same is true here: If the Seventh Circuit holds that customers of AT&T and Verizon lack antitrust standing to challenge T-Mobile's merger, then Plaintiffs' claims would fail as a matter of law, and the case would come to an end.

*In re Text Messaging* is not an outlier. The Seventh Circuit has accepted a long list of Section 1292(b) appeals from denials of motions to dismiss. Just a few months ago, for example, the court decided an interlocutory appeal presenting the question whether state workers were entitled to relief from a vaccination mandate. *Boone v. Ill. Dep't Corr.*, 71 F.4th 622, 625–26 (7th Cir. 2023). The Seventh Circuit also recently decided an issue certified by this Court: whether claims against correctional officers were time-barred because the plaintiff added them to the lawsuit outside the limitations period. *Herrera v. Cleveland*, 8 F.4th 493, 495 (7th Cir. 2021). Those are just two of many cases in which the Seventh Circuit has decided pleadings challenges on interlocutory review. *See also, e.g.*, *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 816, 819 (7th Cir. 2017); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 939–40 (7th Cir. 2015); *Sterk v. RedBox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012).

Nor is *In re Text Messaging* the only antitrust case in which the Seventh Circuit has granted interlocutory review. It did so in *Motorola Mobility*, for example, to decide whether overcharges

paid by an American company's foreign subsidiaries gave that company antitrust standing. 775 F.3d at 817–21. In *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc), the court accepted an interlocutory appeal to decide whether American potash buyers could sue foreign suppliers under a federal antitrust statute. *Id.* at 848. And in *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743 (7th Cir. 2016), the court granted Section 1292(b) review to decide whether a grocery store could sue Clorox under the Robinson-Patman Act for offering certain products only to discount warehouses. *Id.* at 745.

This case, too, presents a controlling question of law worthy of immediate review.

**B.      There Is Substantial Ground For Difference Of Opinion About Whether Plaintiffs Have Plausibly Alleged Antitrust Standing.**

To be eligible for Section 1292(b) review, a question "must be *contestable*." *Ahrenholz*, 219 F.3d at 675. In other words, the proposed appeal should present "'one or more difficult and pivotal questions of law not settled by controlling authority.'" *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988). This case presents just such a question: whether Plaintiffs have plausibly alleged antitrust standing.

**1.** Plaintiffs' theory of antitrust standing—that they can sue T-Mobile because AT&T and Verizon supposedly raised their prices "as a result" of the T-Mobile-Sprint merger, Compl. ¶ 122—is inconsistent with Supreme Court decisions circumscribing the scope of antitrust standing. The Court has held that antitrust plaintiffs must plead that the defendant engaged in anticompetitive conduct and that the conduct *directly* harmed them. *See Associated Gen. Contractors*, 459 U.S. at 535–37. In other words, antitrust claims are limited by a strict application of proximate causation; only injuries suffered at the "first step" in the causal chain create antitrust standing. *Id.* at 534. And reasonable minds could disagree about whether the higher prices Verizon and AT&T customers supposedly paid were directly caused by the merger of T-Mobile and Sprint.

6

In *Associated General Contractors*—the Supreme Court's seminal antitrust-standing deci-sion—the Court held that labor unions lacked antitrust standing to sue an organization of building contractors for supposedly coercing landowners into "divert[ing] business from certain union con-tractors to nonunion contractors," which, in turn, injured the union. 459 U.S. at 540–41. Empha-sizing that "'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation,'" *id.* at 534, the Court held that the chain of causation posited by the plaintiffs was too attenuated to support an antitrust claim. *Id.* at 532–33, 542–45. Because the "general tendency of the law, in regard to damages at least, is not to go beyond the first step," a plaintiff lacks antitrust standing to recover for "'indirect, remote, and consequential'" harms and must instead establish a "direct[]" link between the plaintiff's in-jury and the defendant's anticompetitive conduct. *Id.* at 534, 541.

The Supreme Court has repeatedly reaffirmed this proximate-cause framework in both the antitrust setting and beyond. *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 268 (1992) (antitrust plain-tiff's "right to sue . . . require[s] a showing that the defendant's violation not only was a 'but for' cause of his injury but was the proximate cause as well"). In securities cases, the Court looks to "the common-law roots of the securities fraud action (and the common-law requirement that a plaintiff show actual damages)" to support "the need to prove proximate causation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344–46 (2005). And under the Lanham Act, a plaintiff's injury must be "surely attributable to . . . the defendant's conduct," not "purely derivative" of con-duct by (or harm to) a third party. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 140 (2014). The proximate-cause requirement, the Court has made clear, is no less exacting in antitrust cases than in cases brought under various other federal statutes. *Id.* at 126.

Plaintiffs' standing theory is incompatible with these Supreme Court decisions. Plaintiffs

7

do not allege they suffered harms that are directly and surely attributable to the T-Mobile-Sprint merger; they are instead seeking to recover for higher prices that T-Mobile's competitors, AT&T and Verizon, allegedly decided to charge after the merger closed—alleged injuries that are purely derivative of third parties' pricing decisions.  Indeed, price increases from rival firms do not follow inexorably from a merger; to the contrary, it is also possible that a merger will generate greater price competition as non-merging incumbents seek to capture customers from the company absorbed by the merged entity.  Here, tens of millions of subscribers had chosen Sprint even though T-Mobile service was available; the merger carried the risk that Sprint customers would defect to AT&T or Verizon.  If anything, then, the merger should have encouraged AT&T and Verizon not to inflate their prices, but to compete on price and offerings (e.g., bundles with phones and streaming services).  To be sure, price increases by rivals may *sometimes* follow a merger, but that does not make the merger the proximate cause of every price increase; in other words, alleging a defendant created an *opportunity* for conduct that might have harmed the plaintiff is not the same thing as alleging that it proximately caused the plaintiff's harm.  *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 139 n.7 (2d Cir. 2021) ("the law 'does not attribute remote consequences to a defendant,' even if those consequences are foreseeable" (quoting *S. Pac. Co. v. Darnell-Taezner*, 245 U.S. 531, 533 (1918))).  At a minimum, reasonable minds could disagree about whether Plaintiffs' claimed injuries happened at "the first step"—as would be the case, for example, if they were T-Mobile customers and T-Mobile had raised prices immediately after the merger—or multiple steps removed from the merger.

Nor is it sufficient for Plaintiffs to rely on the merger's alleged marketwide effects to establish antitrust standing.  In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990), the Supreme Court rejected the court of appeals' theory that "[t]he removal of some elements of

price competition distorts the markets, and harms all the participants." *Id.* at 339 n.8; *accord, e.g.*, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109–10 (1986); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561–63 (1981) (rejecting theory of "automatic damages" in Robinson-Patman Act cases). The allegation that the plaintiff is a customer in a market with diminished price competition supposedly attributable to the defendant's merger is insufficient, by itself, to establish a direct causal link to the merger and open the courthouse doors to an antitrust suit. The court that approved the T-Mobile-Sprint merger explained as much: "Anticompetitive results such as higher prices . . . produced by coordinated or unilateral effects of a merger do not just 'happen'; they are not self-executing outcomes spontaneously set in motion upon the creation of a presumed level of market concentration of fewer competitors, or the large market shares amassed by particular participants." *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 245 (S.D.N.Y. 2020). Instead, "if such consequences do occur after a merger, they necessarily embody the actions taken, directly or indirectly, by decisionmakers in the relevant market." *Id.* Here, the decision-maker for Plaintiffs' prices was not T-Mobile, but nonparties AT&T and Verizon.

**2.** Plaintiffs' sweeping conception of antitrust standing also conflicts with decisions of lower courts holding that plaintiffs lack antitrust standing to sue defendants for the consequences of decisions made by third parties over which the defendants had no control. Plaintiffs themselves acknowledged this conflict in opposing T-Mobile's motion to transfer this case to the Southern District of New York, acknowledging that courts there "routinely dismiss antitrust claims that arise from transactions with non-defendants, such as those brought by plaintiffs here." Dkt. 59 at 7–8.

That assessment was correct. In *Schwab*, for example, the Second Circuit affirmed the dismissal of a complaint against banks that were involved in setting LIBOR—but that did no business with the plaintiffs—because "third parties who independently chose to reference LIBOR in

their bonds before selling those bonds to Plaintiffs broke the causal chain linking Plaintiffs' harm to Defendants' misconduct." 22 F.4th at 109. The court reasoned that "Plaintiffs who purchased LIBOR-based bonds from third parties did not suffer an antitrust injury *that was proximately caused* by Defendants' alleged conspiracy" and that "umbrella standing of the sort urged by [Plaintiffs] would yield liability that is far too sweeping." *Id.* at 114, 117.

The Second Circuit reached much the same conclusion in *In re American Express Anti-Steering Rules Antitrust Litigation*, which affirmed dismissal of a suit for lack of antitrust standing where merchants that did not accept Amex cards sought to hold American Express liable for policies that supposedly allowed its competitors to charge higher fees. 19 F.4th at 136, 140–41. The court held that the plaintiffs' injuries "were not proximately caused by Amex" and that "the alleged antitrust violation was instead a 'remote' cause of the injuries" because, "at the first step, Amex restrained trade to raise its prices" and "only later did its competitors follow suit." *Id.* at 135, 141.

The Eleventh Circuit rejected a similar theory in *Austin v. Blue Cross & Blue Shield of Alabama*, 903 F.2d 1385 (11th Cir. 1990). There, hospital patients sued an insurer for extracting price concessions from hospitals that then charged higher prices to other insurers and their policyholders. *Id.* at 1392. The court deemed these claims—which sought to hold the insurer responsible for the hospitals' pricing decisions—too "indirect" to proceed because the "determination of antitrust damages would require the construction of complex and highly speculative economic models" accounting for the pricing decisions of businesses not before the court. *Id.* at 1392–93.

District courts have also rejected as a matter of law antitrust-standing theories indistinguishable from those advanced by Plaintiffs here. In *Antoine L. Garabet, M.D., Inc. v. Autonomous Technologies Corp.*, 116 F. Supp. 2d 1159 (C.D. Cal. 2000), for example, the plaintiffs, much like Plaintiffs here, argued that after the defendants' merger they "suffered from having to pay higher

prices to . . . a non-conspirator, non-defendant, which allegedly *benefited* from a tighter market-place as a result of the merger." *Id.* at 1167. The court there rejected that theory as "simply too attenuated" to support antitrust standing. *Id.* at 1168–69. To be sure, as this Court noted, *Garabet* was decided on summary judgment, Dkt. 114 at 30, but no motion to dismiss was filed in that case, and the court's decision turned on its rejection of "umbrella standing" *as a matter of law*—legal reasoning that applies with equal force in the motion-to-dismiss setting. 116 F. Supp. 2d at 1166–70. And *Garabet* is no outlier. No court—including the Seventh Circuit—has ever held that cus-tomers of a defendant's competitor have antitrust standing to challenge a merger based on the *competitor's* supposedly merger-induced price increases.

*U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003)—where the Seventh Circuit vacated the dismissal of an antitrust claim brought by a non-customer of the defendants—is not to the contrary for three reasons. First, it did not generally endorse sweeping theories of antitrust standing at odds with Supreme Court precedent. The language from *Gypsum* quoted by this Court (Dkt. 114 at 24) was dicta because the Seventh Circuit declined to resolve the "poten-tially difficult" antitrust-standing questions it had left open in *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002). *Gypsum*, 350 F.3d at 627. Second, as this Court acknowl-edged, Dkt. 114 at 25, *Gypsum* addressed a cartel, not a merger. Although the very purpose of a cartel is to raise prices across the entire market (both those charged by the cartel members and by those firms not in the cartel), that is not the case with every merger or even most mergers. Here, T-Mobile's larger rivals were not parties to the allegedly unlawful merger, nor are they alleged to have followed pricing decisions by T-Mobile, which has kept its prices low. Third, *Gypsum* was decided before the Supreme Court substantially refined modern pleading standards in *Twombly*, which, as discussed below, mandates more rigorous judicial scrutiny of an antitrust plaintiff's

11

proximate-causation allegations than was required under the notice-pleading standards applicable when *Gypsum* was decided. The Seventh Circuit has not had occasion to consider whether *Gypsum* has continuing force under *Twombly*'s more stringent pleading standards or to clarify whether *Gypsum*'s analysis of allegations in a cartel case has applicability in the distinct setting of a merger case. Certification here would afford the Seventh Circuit the chance to address both issues.

**3.** Plaintiffs' attenuated causation allegations do not satisfy the modern pleading standards articulated by the Supreme Court in *Twombly*. *See also Iqbal*, 556 U.S. at 678. *Twombly* held that antitrust plaintiffs must allege "something beyond the mere possibility" of a conspiracy in restraint of trade to state a claim under Section 1 of the Sherman Act. 550 U.S. at 557–58. Their allegations must be "plausible" and include "enough factual matter (taken as true) to suggest that an agreement was made" and "to raise a right to relief above the speculative level." *Id.* at 555–56. Plaintiffs did not meet that plausibility standard here: They allege they paid higher prices for wireless service "[a]s a result" of T-Mobile's merger, Compl. ¶ 122, even though, years earlier, that merger was scrutinized and approved by state regulators, federal regulators, and a federal court, and even though in the two years after the merger AT&T and Verizon may have stopped offering price promotions and then increased their prices as a result of intervening economic factors and strategic business decisions having nothing to do with the merger. While it may be *possible* that the T-Mobile-Sprint merger led to a marketwide reduction in competition that, in turn, prompted AT&T and Verizon to decide to raise their prices, it is also possible that those pricing decisions are attributable to rising costs amid widespread inflation, capital expenditures required to build new 5G networks, COVID-related demand increases and supply-chain disruptions, or any number of other intervening factors that arose in the two years after the merger. *E.g.*, Compl. ¶ 108 & nn.169–70. And the Seventh Circuit might well conclude that Plaintiffs' allegations are implausible insofar as they

12

directly contradict the findings of the federal district court that found the merger unlikely to sub-stantially lessen competition, *New York*, 439 F. Supp. 3d at 245–46, and in light of the fact that no regulator has sought post-merger relief based on the regular reports of a court-appointed monitor.

Again, at a minimum, reasonable minds could disagree about whether Plaintiffs have pleaded enough to satisfy *Twombly*'s plausibility standard. Appellate review would enable the Seventh Circuit to resolve that issue authoritatively, which would provide particularly useful guid-ance in future litigation because many of the cases on which the parties and the Court have fo-cused—including *Gypsum*, *Garabet*, and *Loeb*—were decided in the days of notice pleading. Those cases may well have been dismissed on the pleadings under *Twombly*'s stringent pleading standards. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (al-legations that once would have satisfied notice-pleading standards may no longer be sufficient).

The importance of policing plausibility and the appropriateness of certification in this sprawling putative class action are underscored by the *in terrorem* quality of "the unusually high cost of discovery in antitrust cases." *Twombly*, 550 U.S. at 558–59; *see also id.* ("it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence") (cleaned up). Nor was *Twombly* the first time the Court had sounded the alarm about discovery costs in major class actions. In *Dura*, for example, the Court insisted on specific allegations of "economic loss and proximate cause" in securities cases to discourage the "abusive" filing of "largely groundless claim[s]." 544 U.S. at 347.

Permitting Plaintiffs' claims here to survive a motion to dismiss clears the path to onerous discovery directed not only at T-Mobile but also at AT&T and Verizon, the nonparties whose

actions and motivations are central to Plaintiffs' allegations, and other wireless providers like DISH. Section 1292(b) certification is essential to afford T-Mobile an opportunity to stave off those burdens on itself, nonparties, and the judiciary. *See, e.g.*, *Text Messaging*, 630 F.3d at 625–26 ("immers[ing] the parties in the discovery swamp" in "dubious" cases "create[s] irrevocable as well as unjustifiable harm to the defendant").

**4.** The perverse incentives created by Plaintiffs' unprecedented theory of antitrust standing provide an additional basis for substantial disagreement as to whether Plaintiffs' claims should be permitted to survive a motion to dismiss. Competitors cannot challenge a merger simply because of "a threat of losses from increased competition." *Cargill*, 479 U.S. at 116. Here, AT&T and Verizon could not have directly challenged the merger of the much smaller T-Mobile, which the court overseeing the lawsuit brought by state attorneys general described as a procompetitive development that would result in a combined entity ready "to take on its new market peers and rivals in head-on competition." *New York*, 439 F. Supp. 3d at 245. But Plaintiffs' theory would permit market leaders to do indirectly what they cannot do directly—to give their *customers* antitrust standing to challenge a merger that allegedly "result[ed]" in those same companies' price increases. Compl. ¶ 122. On Plaintiffs' theory, a merger that creates a formidable competitor would incentivize its rivals to foment litigation by raising prices, knowing their customers would be able to sue the merged company to seek a treble-damages windfall based on those price increases—even if, as in this case, the defendant maintained or reduced its own prices. These disruptive economic consequences make the Court's ruling one "of practical importance going well beyond run-of-the-mill concerns of [the] parties before" the Court—and thus one justifying interlocutory review. *Zakrzewska v. The New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009); *accord, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 636 (D.N.J. 2014) ("the

nationwide significance of the issues in this action" supported Section 1292(b) review).

In short, this is not the average case or even the average antitrust case. It is a case challenging a multi-billion-dollar merger—years after it was approved by federal regulators and a district judge and officially closed—based on novel arguments that conflict with two distinct bodies of case law, one addressing the outer limits of antitrust standing, the other what a plaintiff must plead for his claims to be plausible. This is exactly the kind of case where reasonable judges could disagree and where interlocutory review is warranted.

## C. An Immediate Appeal Could Materially Advance The Litigation.

Finally, an interlocutory appeal is warranted because a reversal by the Seventh Circuit would end this case. Courts have often dismissed antitrust suits like this one because the connection between the defendant's conduct and the plaintiff's alleged injury was too attenuated. *E.g.*, *Schwab*, 22 F.4th at 117, 125; *Am. Express*, 19 F.4th at 139–43. If the Seventh Circuit agrees with T-Mobile, then the result would be the same here: dismissal and the end of this litigation.

The possibility of an end to litigation is an especially important consideration in sprawling and complex cases like this one. Although interlocutory review should be available "only in exceptional cases," Section 1292(b) was *designed* for "antitrust and similar protracted cases." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). An immediate appeal here could eliminate the burdens of discovery and trial on the parties and the judiciary alike—burdens that promise to be especially heavy in a case purportedly worth billions of dollars, brought on behalf of millions of Verizon and AT&T wireless subscribers, and that seeks to unwind one of the largest mergers in recent memory years after its completion.

## III.    CONCLUSION

The Court should grant T-Mobile's motion to certify under 28 U.S.C. § 1292(b).

DATED:  November 28, 2023                  Respectfully submitted,

                                    /s/ *Theodore J. Boutrous Jr.*

Clifford C. Histed
ARDC No. 6226815
Michael E. Martinez
ARDC No. 6275452
K&L GATES LLP
70 West Madison Street
Suite 3300
Chicago, IL  60602-4207
Phone: 312-807-4448
clifford.histed@klgates.com
michael.martinez@klgates

Josh Krevitt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Phone: 213-351-4000
JKrevitt@gibsondunn.com

Theodore J. Boutrous Jr. (*pro hac vice*)
Daniel G. Swanson (*pro hac vice*)
Rodney J. Stone (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Phone: 213-229-7000
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
RStone@gibsondunn.com

Rachel S. Brass (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Phone: 415-393-8200
RBrass@gibsondunn.com

*Counsel for Defendant T-Mobile US, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2023, I electronically filed a copy of the foregoing

through the Court's CM/ECF system, which will send notifications of the filing to all counsel of

record.

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.
