**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTHONY DALE, BRETT JACKSON,
JOHNNA FOX, BENJAMIN
BORROWMAN, ANN LAMBERT,
ROBERT ANDERSON, and CHAD
HOHENBERY on behalf of themselves and
all others similarly situated,

        *Plaintiffs,*


        v.


DEUTSCHE TELEKOM AG, T-MOBILE
US, INC., and SOFTBANK GROUP CORP.,

        *Defendants.*

Case No. 1:22-cv-03189

Hon. Thomas M. Durkin

Hon. Jeffrey Cole

**PLAINTIFFS' OPPOSITION TO DEFENDANT T-MOBILE US, INC.'S MOTION TO
CERTIFY THE COURT'S NOVEMBER 2 ORDER
<u>FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT .............................................................................................. 2

    A.    The Ability of AT&T and Verizon Customers to Sue T-Mobile for Harms Resulting from Its Merger with Sprint Is Not a Contestable Legal Question. ................................................................................................ 2

        1.    The Question Is Not Contestable Because *Gypsum* Controls. ................... 3

        2.    *Gypsum* Is in Harmony with Supreme Court Jurisprudence. ..................... 4

        3.    Mergers that Reduce Competition and Increase Prices Break the Law. ................................................................................................... 5

    B.    Whether AT&T and Verizon Customers Have Antitrust Standing Is a Mixed Question of Fact and Law, Not a "Pure Question of Law." ....................... 9

    C.    Cloaking the Question as One of *Twombly*'s Application Does Not Make This Case Certifiable for Interlocutory Appeal. ................................................. 10

        1.    Application of *Twombly* Is Not a Contestable Question of Law. ............ 11

        2.    T-Mobile Improperly Seeks Resolution of Factual Questions at the Motion to Dismiss Stage. ......................................................................... 12

III.   CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ...................................................................1, 2, 4, 9

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ..............................................................................................5

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
116 F. Supp. 2d 1159 (C.D. Cal. 2000) ...........................................................4, 5

*Austin v. Blue Cross & Blue Shield of Ala.*,
903 F.2d 1385 (11th Cir. 1990) ........................................................................4, 5

*BCCI Holdings (Luxembourg), S.A. v. Khalil*,
214 F.3d 168 (D.C. Cir. 2000) .............................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... *passim*

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) ............................................................................................10

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 14-0751, 2015 WL 12028458 (S.D. Cal. Mar. 4, 2015) ...............................11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
878 F. Supp. 1078 (N.D. Ill. 1995) ......................................................................2

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ..............................................................8, 15

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ..............................................................................................6

*Calvin v. Sheriff of Will Cnty.*,
No. 03-3086, 2006 WL 1005141 (N.D. Ill. Apr. 14, 2006) ..............................2, 4

*In re Cardizem CD Antitrust Litig.*,
332 F.3d 896 (6th Cir. 2003) ..............................................................................10

*Castro v. Sanofi Pasteur, Inc.*,
134 F. Supp. 3d 820 (D.N.J. 2015) ......................................................................8

*Castro v. Sanofi Pasteur, Inc.*,
No. 11-7178, 2012 WL 12516572 (D.N.J. Aug. 6, 2012) ...................................8

*Citizen Publ'g Co. v. United States*,
394 U.S. 131 (1969) ...................................................................................7

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
313 F. Supp. 3d 931 (N.D. Ill. 2018) ..............................................8, 15

*Delux Pub. Charter, LLC v. Orange, Ca.*,
No. 20-2344, 2023 WL 2558784 (C.D. Cal. Jan. 11, 2023) ....................11

*Falcon v. City of Chi.*,
No. 17-5991, 2018 WL 3853988 (N.D. Ill. Aug. 13, 2018) ................1, 4

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016)........................................................................4

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
551 U.S. 877 (2007) ...................................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..............................................................................4, 5

*In re Lion Air Flight JT 610 Crash*,
No. 19-01552, 2023 WL 3653217 (N.D. Ill. May 25, 2023)...................12

*Loeb Indus., Inc. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) .....................................................................9

*Lukis v. Whitepages Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) .................................................11, 12

*Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*,
No. 07-1078, 2012 WL 10218913 (E.D. Pa. Mar. 29, 2012) ....................7

*Meijer, Inc. v. Abbott Labs.*,
544 F. Supp. 2d 995 (N.D. Cal. 2008) ......................................................7

*Meredith Corp. v. SESAC LLC*,
1 F. Supp. 3d 180 (S.D.N.Y. 2014) ...........................................................7

*Merican, Inc. v. Caterpillar Tractor Co.*,
713 F.2d 958 (3d Cir. 1983)......................................................................10

*In re Microsoft Corp. Antitrust Litig.*,
No. 05-1087, No. MDL 1332, 2005 WL 2063954 (D. Md. Aug. 19, 2005) .........................10

*Mid-W. Paper Prods. Co. v. Cont'l Grp., Inc.*,
   596 F.2d 573 (3d Cir. 1979) ............................................................................4

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ............................................................................8

*Motorola Mobility LLC v. AU Optronics Corp.*,
   775 F.3d 816 (7th Cir. 2015) ..........................................................................10

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) ............................................................8

*New York v. Deutsche Telekom AG*,
   439 F. Supp. 3d 179 (S.D.N.Y. 2020) ............................................................6

*Novell, Inc. v. Microsoft Corp.*,
   505 F.3d 302 (4th Cir. 2007) ..........................................................................10

*OSF Healthcare Sys. v. Banno*,
   No. 08-1096, 2009 WL 1259048 (C.D. Ill. May 6, 2009) ..............................9

*Ryan v. CFTC*,
   125 F.3d 1062 (7th Cir. 1997) ...................................................................12, 15

*Schuylkill Health Sys. v. Cardinal Health 200, LLC*,
   No. 12-7065, 2014 WL 3746817 (E.D. Pa. July 30, 2014) ............................7

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
   22 F.4th 103 (2d Cir. 2021) ..........................................................................4, 5

*Matter of Skupniewitz*,
   73 F.3d 702 (7th Cir. 1996) ..........................................................................3, 5

*Smith v. Finkley*,
   10 F.4th 725 (7th Cir. 2021) ............................................................................9

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2013) ............................................................................2

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
   902 F.3d 735 (7th Cir. 2018) ............................................................................5

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ...........................................................8, 13, 14, 15

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ..........................................................................11

*U.S. Gypsum Co. v. Ind. Gas Co.*,
    350 F.3d 623 (7th Cir. 2003) ........................................................................... *passim*

*United States v. H&R Block, Inc.*,
    833 F. Supp. 2d 36 (D.D.C. 2011) ...................................................................7

*United States v. Verizon Commc'ns, Inc.*,
    959 F. Supp. 2d 55 (D.D.C. 2013) ...................................................................7

**Statutes**

28 U.S.C. § 1292(b) ........................................................................... *passim*

**Other Authorities**

*U.S. Chamber Board of Directors*, U.S. Chamber of Commerce
https://www.uschamber.com/about/governance/board-of-directors
    (last visited Dec. 14, 2023) ...........................................................................11

## I.     <u>INTRODUCTION</u>

T-Mobile has not established the required elements for certification under Section 1292(b). T-Mobile must identify a "controlling" *and* "contestable" "question of law," the answering of which will accelerate this litigation's resolution. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).   Here, T-Mobile's motion founders on the shoals of its own contradictions.  It first argues that *as a matter of law* AT&T and Verizon customers can *never* have standing because they did not suffer harm at the "first step" in the causal chain and therefore suffered "indirect" injury.  Dkt. 121 at 6–12.  But this Court rightly observed that this question is not "contestable" in the Seventh Circuit, where it runs headlong into *Gypsum*.  So to meet the "contestable" requirement, T-Mobile pivots to arguing that "reasonable minds could disagree about whether the higher prices Verizon and AT&T customers supposedly paid were directly caused by the merger of T-Mobile and Sprint."  *Id.* at 6.  But, as this Court already noted, this question depends on the *facts*.  So T-Mobile pivots again to argue that the case turns on the well-settled principles of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  But T-Mobile fails to identify anything unclear, wrong, or even questionable about how this Court applied pleading standards with which this Court is thoroughly familiar.  Instead, it speculates that *Gypsum* might be inconsistent with "modern pleading standards"—a point it has never before raised and for which it now offers no analysis.  *Id.* at 12–14.  Combining two non-contestable legal questions with a contested question of fact does not amount to a contestable question of law.  Quite the reverse.

Nor can T-Mobile seek refuge in its out-of-circuit case law.  "The fact that other circuits have issued rulings contrary to the Seventh Circuit's holding in [*Gypsum*] does not make this issue contestable."  *Falcon v. City of Chi.*, No. 17-5991, 2018 WL 3853988, at *2 (N.D. Ill. Aug. 13, 2018).  All of T-Mobile's out-of-circuit authorities are irrelevant on this motion, which serves only to delay resolution of this litigation before an Illinois jury.  This is a paramount concern in this

antitrust case with ongoing effects on consumers, and threatened delay counsels against granting the motion. And a potentially years-long delay in the Seventh Circuit would only make the structural injunctive relief Plaintiffs seek more difficult for the Court and parties to address.

For these kinds of reasons, "[i]nterlocutory appeals are frowned on in the federal judicial system." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2013). Where a motion fails to satisfy even a single element of Section 1292(b), a certification for interlocutory appeal serves "merely to waste [the Circuit's] time and delay the litigation in the district court." *Ahrenholz*, 219 F.3d at 676. That is the case here: T-Mobile has failed to articulate a single contestable question of pure law from this Court's November 2 Order. Dkt. 114. Certification of an appeal therefore would be a waste of the Seventh Circuit's time that should be denied.

## II.     ARGUMENT

### A.     The Ability of AT&T and Verizon Customers to Sue T-Mobile for Harms Resulting from Its Merger with Sprint Is Not a Contestable Legal Question.

The idea behind Section 1292(b) "was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 677. For a question to be "contestable" under § 1292(b), it must be a "difficult central question of law which is not settled by controlling authority," and there must exist a "substantial likelihood" that the district court's ruling will be reversed. *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (quotations and citations omitted). The key inquiry is whether the circuit has addressed the question. *See, e.g., Calvin v. Sheriff of Will Cnty.*, No. 03-3086, 2006 WL 1005141, at *5 (N.D. Ill. Apr. 14, 2006) (holding an issue was a "contested issue of law" where "[n]o Seventh Circuit opinions have addressed the Illinois law or the factual scenario at issue here"). T-Mobile attempts to meet the Section 1292 standard by

resorting to its old and wrong chestnut that "only injuries suffered at the 'first step' in the causal chain create antitrust standing." Dkt. 121 at 6. This Court has already recognized that this antitrust standing argument "runs headlong" into Seventh Circuit precedent. Dkt. 114 at 24.

### 1.   The Question Is Not Contestable Because *Gypsum* Controls.

*U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003), is directly on point and settles the question of law. "*Gypsum* makes clear that the fact that Plaintiffs did not transact directly with the Merging Entities is not automatically a basis for dismissal. Rather, the focus remains on Plaintiffs' harm, the alleged wrongdoing by the Merging Entities, and the relationship between them." Dkt. 114 at 25. This Court already considered T-Mobile's argument that the relevant language from *Gypsum* should be ignored as *dicta*. *See* Dkt. 79 at 19; Dkt. 110 at 44:13–19. It rightly did not ignore it. And the Seventh Circuit's holding in *Gypsum* is "binding on another [Seventh Circuit] panel[s] unless overruled with the approval of the en banc court.". *Matter of Skupniewitz*, 73 F.3d 702, 705 (7th Cir. 1996).

T-Mobile also misreads *Gypsum*, claiming that it was a cartel case. To the contrary, the plaintiffs in *Gypsum* challenged under Sections 1 and 2 of the Sherman Act a *joint venture* (ProLiance Energy) formed by two utilities. *Gypsum*, 350 F.3d at 625. As this Court recognized, *Gypsum* analogized to the cartel scenario to illuminate why antitrust standing is also satisfied in the context of corporate combinations when "Plaintiffs did not transact directly with the Merging Entities." Dkt. 114 at 25. The focus in such cases, like in the cartel context, "remains on Plaintiffs' harm, the alleged wrongdoing by the Merging Entities, and the relationship between them." *Id.* (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983) [hereinafter *AGC*]).

T-Mobile's attempt to rely on out-of-circuit cases similarly fails. "The fact that other circuits have issued rulings contrary to the Seventh Circuit's holding in [*Gypsum*] does not make

- 3 -

this issue contestable." *Falcon*, 2018 WL 3853988, at *2. T-Mobile deliberately ignores that the cases it cites fall on the other side of the issue from the Seventh Circuit. *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 778–79 (2d Cir. 2016) ("The antitrust standing of umbrella purchasers under such circumstances [where the cartel controls only a portion of the market] has produced a split of authority among our sister circuits.") (contrasting *Gypsum* and *Mid-W. Paper Prods. Co. v. Cont'l Grp., Inc.*, 596 F.2d 573 (3d Cir. 1979)); *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 117 (2d Cir. 2021) (acknowledging the circuit split); *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159 (C.D. Cal. 2000) (suggesting the Ninth Circuit falls on the same side of the circuit split as the Second and Third Circuits); *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385 (11th Cir. 1990) (similar). But here, in the Seventh Circuit, it is settled law that Plaintiffs can satisfy the requisite causal link for antitrust standing even though they are not T-Mobile's customers, "and the opinions of other circuit courts do not make it contestable here." *Falcon*, 2018 WL 3853988, at *2.

### 2. *Gypsum* Is in Harmony with Supreme Court Jurisprudence.

T-Mobile also asks this Court to find a "contestable" question because, it claims, *Gypsum* contradicts various Supreme Court decisions on proximate causation. *See* Dkt. 121 at 6–9. But Section 1292(b) does not authorize interlocutory appeals to challenge binding circuit court precedent. *See*, *e.g.*, *Ahrenholz*, 219 F.3d at 677; *Calvin*, 2006 WL 1005141, at *5.

Regardless, the Supreme Court decisions themselves refute T-Mobile's proposition that plaintiffs such as those here are so indirect as to never have antitrust standing. In fact, *AGC* and *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), hold the opposite: an indirect injury means damage suffered by one market actor then "passed on" to the plaintiff, which did not happen here. This Court already explained how Plaintiffs' injury differs from the indirect injury discussed in *Lexmark*: "Plaintiffs allege that the merger curbed

competition in the retail wireless market, which caused market-wide prices to be higher than they would have been otherwise. And they allege that as consumers in that market, Plaintiffs themselves were injured by paying those elevated prices." Dkt. 114 at 29. Far from seeking damages based on price increases first suffered (and then passed on) by some other entity, Plaintiffs were the first in the chain of distribution to suffer the alleged anticompetitive effects, and so Plaintiffs "plausibly allege[d] that their injuries flowed directly from the merger." *Id.* at 25. And, moreover, *Lexmark* itself held that the indirectly-injured plaintiffs in that case had standing, further refuting T-Mobile's proposed absolute rule.

Finally, T-Mobile's suggestion that *Gypsum* is no longer good law following *Twombly* lacks any legal basis. *Twombly*'s holding regarding pleading sufficiency is a procedural one. In other words, it did not alter the substantive elements of any causes of action, antitrust or otherwise. *Twombly* cannot have modified the standard for "antitrust standing," which is just "the requirements [of] bring[ing] a case under the particular statutes involved." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018). Moreover, none of the cases that T-Mobile relies on to argue that Plaintiffs here lack antitrust standing based their decisions on an altered post-*Twombly* pleading landscape. *See Schwab*, 22 F.4th 103 (no mention, let alone reasoned discussion of *Twombly*'s impact on proximate causation); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) (same); *Antoine L. Garabet*, 116 F. Supp. 2d 1159 (same); *Austin*, 903 F.2d 1385 (same). *Twombly* simply has no bearing on *Gypsum*'s holding—which binds this Court and panels of the Seventh Circuit, *Matter of Skupniewitz*, 73 F.3d at 705—or the ability of Plaintiffs to allege antitrust standing or proximate causation.

### 3. Mergers That Reduce Competition and Increase Prices Break the Law.

T-Mobile attempts to manufacture a contestable legal issue by claiming that "[n]o court

has ever ruled that plaintiffs may challenge a defendant's merger as anticompetitive based on alleged injuries attributable to the decisions of the defendant's *competitors* to increase their own prices after the merger." Dkt. 121 at 1 (emphasis in original). This is simply wrong. In the case of this very merger, the New York court recognized that it could be challenged based on a theory of coordinated effects: the expert economist for the Plaintiff States testified that the "coordinated effects of the Proposed Merger would result in annual consumer harm of $8.7 billion . . . [as a] result [of] New T-Mobile, AT&T and Verizon 'pulling their punches' or competing less strenuously." *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 234 (S.D.N.Y. 2020).

This effect of market consolidation has been long recognized by the Department of Justice Merger Guidelines. As the DOJ explained in the context of the containerboard industry, the coordinated effects of market consolidation cause harmful consumer price effects.

> Due to its additional containerboard volume obtained as a result of the merger, International Paper would benefit more from a price increase after the proposed merger. Thus, if a large rival attempted to raise the market price by reducing output, International Paper would likely accommodate its rival's actions by reducing or not increasing its own output. The rival would thus be likely to increase the market price by reducing output after International Paper and Temple-Inland complete the proposed merger.

Competitive Impact Statement at 7-8, *United States v. Int'l Paper Co.*, No. 12-cv-227(D.D.C. Feb. 10, 2012)) (Exhibit A). Likewise, the Supreme Court in *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, recognized that oligopolistic price coordination occurs when "firms in a concentrated market might in effect share monopoly power, setting their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions." 509 U.S. 209, 227 (1993). While interdependent pricing may not be inherently unlawful, a merger that creates or enhances the conditions for it most certainly is. For instance, in *United States v. H&R Block, Inc.*, the court enjoined a merger because there would "not [be] the *same incentive*" post-merger to "develop

robust free and low-cost offerings *that can compete with*" rivals. 833 F. Supp. 2d 36, 85 (D.D.C. 2011) (emphases added).

In this regard the law simply follows basic principles of economics, a science that concerns itself with the effect of market conditions on the incentives of market actors. And courts have recognized for half a century that agreements or conduct that reduce rivals' incentives to compete can violate the antitrust laws. In *Citizen Publishing Co. v. United States*, the Supreme Court found anticompetitive "[p]ooling of profits pursuant to an inflexible ratio" as that conduct "at least reduces *incentives to compete* for circulation and advertising revenues and runs afoul of the Sherman Act." 394 U.S. 131, 135 (1969) (emphasis added). In *United States v. Verizon Communications, Inc.*, the court enjoined bundled contracts in the telecommunications industry because such contracts would lessen Verizon's "*incentive to compete*" with its rivals. 959 F. Supp. 2d 55, 57, 59, 61 (D.D.C. 2013) (emphasis added). And in *Leegin Creative Leather Products v. PSKS, Inc.*, the Supreme Court recognized that "[a] manufacturer with market power, by comparison, might use resale price maintenance to give retailers *an incentive not to sell the products of smaller rivals or new entrants*." 551 U.S. 877, 894 (2007) (emphasis added).[1]

And where a defendant's conduct alters the competitive incentives of its rivals in a way

---

[1] *See also, e.g.*, *Schuylkill Health Sys. v. Cardinal Health 200, LLC,* No. 12-7065, 2014 WL 3746817, at \*4 (E.D. Pa. July 30, 2014) (upholding tying and bundling claims; observing that the conduct caused rivals to have "*less of an incentive to compete* because Defendants have blocked a significant portion of the market") (emphasis added); *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 193 (S.D.N.Y. 2014) (upholding exclusive dealing claims that "eliminate[d] *any imaginable incentive*" for rivals to compete) (emphasis added); *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, No. 07-1078, 2012 WL 10218913, at \*7 (E.D. Pa. Mar. 29, 2012) (viable claim where most favored nations provisions "*remove[d] incentives for potential Fleet Card rivals* . . . to challenge [defendant's] dominance in the Fleet Card market") (emphasis added); *Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 1005 (N.D. Cal. 2008) (upholding monopolization claim where conduct "provid[ed] little *incentive for competitors* to develop products *to compete*," allowing defendant to later "rais[e] prices") (emphasis added).

that causes the rivals' sales to occur at artificially inflated prices, the defendant can properly be held liable for damages attributable to their sales. *E.g.*, *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 264–65 (3d Cir. 2016) (rejecting argument that "a customer of a non-defendant cannot have antitrust standing" because "all market customers should have antitrust standing to sue those engaged in the allegedly anticompetitive conduct"); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 212–13 (S.D.N.Y. 2018) (defendant liable for generic sales made by non-defendant rivals because the non-defendant customers' "injuries are the direct result of the asserted antitrust violation" which "restricted and manipulated generic competition"); *Castro v. Sanofi Pasteur, Inc.*, No. 11-7178, 2012 WL 12516572, at *4 (D.N.J. Aug. 6, 2012) (defendant liable for inflated sales of its own and its rival's products where defendant's "conduct removed price cutting as an effective competitive response for [its rival, such that the rival's] price was higher than it otherwise would have been as well"); *Castro v. Sanofi Pasteur, Inc.*, 134 F. Supp. 3d 820, 849–50 (D.N.J. 2015) (certifying class seeking overcharge damages for sales of defendant's as well as defendant's rival's products based on incentive modification theory).

It does not matter if, as T-Mobile argues, "reasonable minds could disagree" about whether the price increases were caused by the merger as alleged by Plaintiffs or by some other factors. Dkt. 121 at 8. Such arguments are not an appropriate basis for dismissal at the pleadings stage. *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 796 n.8 (N.D. Ill. 2017) ("arguments that test the truth of Plaintiffs' allegations" are "for summary judgment"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (a court is not "to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences"); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 958 (N.D. Ill. 2018) (factbound "arguments are . . . ill-timed for th[e pleading] stage of the case").

**B.**     **Whether AT&T and Verizon Customers Have Antitrust Standing Is a Mixed Question of Fact and Law, Not a "Pure Question of Law."**

As this Court held and as the rest of T-Mobile's brief implicitly acknowledges, the causation requirement for antitrust standing is a mixed question of law and fact, rather than a pure question of law that might merit an interlocutory appeal. As the Seventh Circuit explained in *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002), "*AGC* requires a court to examine through a case-by-case analysis the link between a plaintiff's harm and a defendant's wrongdoing." *See also OSF Healthcare Sys. v. Banno*, No. 08-1096, 2009 WL 1259048, at *2 (C.D. Ill. May 6, 2009) (proximate causation requirement of a statute modeled on Section 4 of the Clayton Act is not "a 'pure' question of law, but instead is a mixed question of law and fact"); *BCCI Holdings (Luxembourg), S.A. v. Khalil*, 214 F.3d 168, 172 (D.C. Cir. 2000) ("[F]indings on proximate causation involve mixed questions of law and fact subject to limited review."). This Court implicitly recognized this principle when it explained how "[i]t may be that discovery reveals that the prices paid by AT&T and Verizon customers following the merger were wholly independent of and unaffected by the merger. But that is a question of fact." Dkt. 114 at 31. Unlike some Circuits, the Seventh Circuit does not treat mixed questions of fact and law as questions of law for purposes of interlocutory appeal. *See Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021) (Seventh Circuit Courts of Appeals' "jurisdiction on interlocutory appeal extends to pure questions of law, not mixed questions of law and fact."). Thus, as a mixed question of fact and law, T-Mobile cannot satisfy the standard for interlocutory appeal, that the question T-Mobile wishes to certify (here, antitrust standing) is a "pure question of law." *Ahrenholz*, 219 F.3d at 677.

And none of the cases T-Mobile cites for certifying questions of antitrust standing for interlocutory appeal did so based on fact questions regarding causation. Dkt. 121 at 4. For

instance, the district court in *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015), addressed a different issue from causation: how the Foreign Trade Antitrust Improvements Act applied to overseas purchases by a defendants' foreign affiliates. *Motorola Mobility LLC v. AU Optronics Corp.*, No. 09-6610, Dkt. 187 (N.D. Ill. Feb. 13, 2014) (Exhibit B). The district court in *Merican, Inc. v. Caterpillar Tractor Co.* likewise did not certify an interlocutory appeal based on the question of "antitrust standing" but rather on the application of "the then-recent opinion of *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982)." 713 F.2d 958, 962 (3d Cir. 1983). Similarly, *In re Cardizem CD Antitrust Litigation* certified a legal question, the proper interpretation of the Sixth Circuit's "necessary predicate" test. *See* 332 F.3d 896, 911–12 (6th Cir. 2003). And neither the district court ruling certifying the appeal nor the Fourth Circuit panel hearing the appeal in *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307–08 (4th Cir. 2007), discussed "antitrust standing" generally, or its causation requirement specifically, as being a pure question of law. *In re Microsoft Corp. Antitrust Litig.*, No. 05-1087, No. MDL 1332, 2005 WL 2063954 (D. Md. Aug. 19, 2005).

Whether Plaintiffs here have antitrust standing to challenge the merger of T-Mobile and Sprint—which is really a question about causation—involves questions of fact. This renders the question inappropriate for an interlocutory appeal under of Section 1292(b).

### C.    Cloaking the Question as One of *Twombly*'s Application Does Not Make This Case Certifiable for Interlocutory Appeal.

T-Mobile tries to dodge *Gypsum* by recrafting the question as one of whether Plaintiffs' theory of causation satisfies "modern pleading standards." Dkt. 121 at 4–5, 12. This question cannot satisfy the requirements of Section 1292(b) any more than the abstract question of antitrust standing or the specific question of causation. It is not a contestable question of law. Instead, it is merely an improper attempt to have factual questions resolved in T-Mobile's favor at the motion

to dismiss stage. And in any event, it is an issue T-Mobile did not previously raise and this Court did not get to consider in the first instance; interlocutory review of a "ghost" opinion is not proper.

### 1. Application of *Twombly* Is Not a Contestable Question of Law.

T-Mobile mistakenly asserts that the question of *Twombly*'s plausibility standard satisfies the "controlling question of law" requirement in Section 1292(b). *See* Dkt. 121 at 5. Its reliance on *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 626 (7th Cir. 2010), to support that proposition "is misplaced because that Seventh Circuit decision was issued back in 2010, when *Twombly* was a 'recent decision, and its scope unsettled.'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-0751, 2015 WL 12028458, at *3 (S.D. Cal. Mar. 4, 2015); *see also Delux Pub. Charter, LLC v. Orange, Ca.*, No. 20-2344, 2023 WL 2558784, at *2 (C.D. Cal. Jan. 11, 2023) ("And JSX's reliance on *In re Text Messaging Antitrust Litigation* is not as persuasive as JSX suggests. . . . At that time the Supreme Court had just recently announced its decision in *Twombly*, and the court grappled with its application."). "The scope and application of *Twombly*'s plausibility standard is now settled[.]" *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 845 (N.D. Ill. 2020). Moreover, antitrust standing and causation are substantive elements of a claim, and *Twombly* did nothing to alter the substantive elements of any claims, antitrust or otherwise. As such, reframing the question of Plaintiffs' antitrust standing as one of *Twombly*'s application also fails to meet the exacting standard of Section 1292(b)'s requirements.

The Chamber of Commerce's *amicus curiae* brief does not support T-Mobile's contentions that *Twombly* presents a contestable question of law for the same reasons that T-Mobile's motion fails to establish that contention. Moreover, it is hardly an impartial "friend of the court." T-Mobile's Business Group President occupies a seat on the Chamber's Board of Directors,[2]

---

[2] *U.S. Chamber Board of Directors*, U.S. Chamber of Commerce
https://www.uschamber.com/about/governance/board-of-directors (last visited Dec. 14, 2023).

meaning the *amicus* brief is more accurately a "friend of a party" brief, specifically T-Mobile. *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997). "The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse." *Id.* That abuse is particularly acute here where T-Mobile has competent counsel, the Chamber of Commerce has not identified any specific cases that would be affected by the Court's decision in this case, and the Chamber lacks unique expertise in the field of pleading standards. *See id.* The Chamber's submission thus compares unfavorably to the *amici* brief submitted by uninterested law professors with expertise in admiralty law that this Court credited toward establishing a contestable question of law in *In re Lion Air Flight JT 610 Crash*, No. 19-01552, 2023 WL 3653217, at *4–5 (N.D. Ill. May 25, 2023) (Durkin, J.). Furthermore, no third-party brief—whether submitted by a friend of the court or a friend of a litigant—can create a contestable question of law out of a settled question. *Twombly*'s impact on pleading standards has long been settled. *Lukis*, 542 F. Supp. 3d at 845.

## 2. T-Mobile Improperly Seeks Resolution of Factual Questions at the Motion to Dismiss Stage.

T-Mobile's *Twombly* argument also fails to identify any factual deficiency in Plaintiffs' pleadings. Instead, it spills much ink trying to offer alternative facts or explanations than those pleaded by plaintiffs. T-Mobile, for instance, claims that "[w]hile it may be possible that the T-Mobile-Sprint merger led to a marketwide reduction in competition that, in turn, prompted AT&T and Verizon to decide to raise their prices, it is also possible that those pricing decisions are attributable to rising costs amid widespread inflation, capital expenditures required to build new 5G networks, COVID-related demand increases and supply-chain disruptions, or any number of other intervening factors that arose in the two years after the merger." Dkt. 121 at 12–13. But,

again, the question under *Twombly* is not to decide which side's allegations are more probable. *See Swanson*, 614 F.3d at 404. This Court has already recognized that, "[f]or that reason, the mere possibility that other factors affected AT&T and Verizon's pricing decisions does not negate the plausibility that the merger caused those two companies to stop lowering their prices, stop offering new promotions, and start raising their prices." Dkt. 114 at 27–28.

T-Mobile, moreover, advances so-called perverse incentives that strain credulity. At the end of its brief, T-Mobile claims that recognizing the Clayton Act standing of Verizon and AT&T customers will incentivize rivals of a merged company to raise prices *for the sole purpose of generating lawsuits against the merger*. How ironic. T-Mobile argues on the one hand that it is *implausible* that companies would raise prices due to market consolidation, but then contends those same companies would raise prices, and risk losing market share and billions in revenue, on the hope that their customers might sue T-Mobile. To put it mildly, T-Mobile espouses a different understanding of plausibility than the federal courts.

T-Mobile's argument also, along the way, concedes the fact that the arbitration clauses and class action waivers in its consumer contracts leave T-Mobile's own subscribers out in the cold when it comes to enforcing the antitrust laws. Furthermore, T-Mobile did not, as it seems to claim, stand by while its rivals raised prices. Plaintiffs have alleged, and at the motion to dismiss stage this Court properly took as true, that "T-Mobile took advantage of 'loopholes' to increase taxes, fees, and surcharges; pass through increases in the cost of third-party benefits; modify or cancel third-party benefits; and increase the cost of device and headset offerings and protection plans." Dkt. 114 at 35. T-Mobile's contrary (and fact-bound) representations outside the pleadings do not meet Section 1292(b)'s requirements of raising purely legal and contestable question. In sum, T-Mobile proposes to invite the Seventh Circuit to ignore the black letter legal requirement to draw

all inferences in favor of Plaintiffs. *Swanson*, 614 F.3d at 404.

T-Mobile would also ask the Seventh Circuit to disagree with this Court's assessment of the plausibility of Plaintiffs' claims simply because "no regulator has sought post-merger relief based on the regular reports of a court-appointed monitor," Dkt. 121 at 13, but in doing so, T-Mobile would again request that the Seventh Circuit draw inference in *its* favor. To do so, moreover, the Seventh Circuit would have to overlook rulings by California regulators that T-Mobile made "false, misleading, or omitted statements" in testimony about its plans for Sprint's legacy CDMA network following the merger and that imposed a $5 million fine on T-Mobile. Decision Finding that T-Mobile USA, Inc. Should Be Sanctioned by the Commission for Violating Rule 1.1 of the Commission's Rules of Practice and Procedure, Nos. 18-07-011, 18-07-012, at 13–17 (Cal. Pub. Util. Comm'n Apr. 25, 2022) (Exhibit C).

But, again, *Twombly* only requires that Plaintiffs make plausible allegations; those allegations need not be more plausible than Defendants' alternative explanations. *Swanson*, 614 F.3d at 404 (a court is not "to stack up inferences side by side"). This Court noted that Plaintiffs submitted an "extraordinarily detailed complaint," Dkt. 110 at 37:7–12, that explained "*how* the merger reduced competition in the retail mobile wireless market and as a result, market participants AT&T and Verizon charged higher prices than they would have otherwise." Dkt. 114 at 25–26.

Specifically, it alleged facts about (1) the condition of the market before the merger, (2) T-Mobile's and Sprint's roles as "mavericks" in the pre-merger environment, (3) the aggressive competition existing pre-merger, including the financial viability of Sprint to continue as a competitor, (4) the decreased incentives to compete that would result after T-Mobile merged with Sprint, (5) the high barriers to entry in the market, (6) DISH's failure to emerge as a legitimate fourth competitor, (7) that Verizon and AT&T began slowing their competitive efforts following

the merger, decreasing innovation and stagnating and then increasing prices following the merger, and (8) a stark upward departure from the trend of decreasing quality-adjusted pricing that occurred just a few months after the merger. *See id.* These well-pleaded facts plausibly support Plaintiffs' claim that "at the 'first step,' the merger consolidated and reduced competition in the entire market, which drove the remaining firms, including AT&T and Verizon, to stop lowering their prices, stop offering new promotions, and then subsequently increase their prices. That is sufficient to plead a causal link at this stage." Dkt. 114 at 32.

The *amicus curiae* brief of the CTIA – the Wireless Industry Association ("CTIA"), Dkt. 141, likewise fails to move the needle in favor of interlocutory appeal. CTIA counts among its members T-Mobile (along with non-party subpoena recipients AT&T, Dish, and Verizon), and, as with the Chamber's brief, is more accurately a "friend of a party." *Ryan*, 125 F.3d at 1063. CTIA's brief chiefly disputes the truth of Plaintiffs' factual allegations and complains about the potential cost of discovery to CTIA members T-Mobile, AT&T, Dish, and Verizon. Dkt. 141 at 2–8. Neither point has any bearing on whether Plaintiffs have stated a claim for relief; indeed, CTIA's contrary factual allegations cannot be credited at this stage. *Broiler Chicken*, 290 F. Supp. 3d at 796 n.8 ("arguments that test the truth of Plaintiffs' allegations" are "for summary judgment"); *Swanson*, 614 F.3d at 404; *Dealer Mgmt.*, 313 F. Supp. 3d at 958. Moreover, CTIA's disputed and fact-bound arguments actually undermine T-Mobile's irrelevant assertion that this interlocutory appeal presents a pure question of law, while its complaints about discovery burdens speak nothing to T-Mobile's burden to demonstrate (1) a pure question of law that is (2) contestable.

## III.   <u>CONCLUSION</u>

For the reasons explained above, certification for interlocutory appeal should be denied.

Dated: December 14, 2023        _/s/ Gary I. Smith, Jr._

<div style="margin-left:40%">

Gary I. Smith Jr. (*pro hac vice*)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (267) 702-2318
gsmith@hausfeld.com

Hill Brakefield (*pro hac vice* forthcoming)
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, D.C. 20006
Phone: (202) 540-7200
hbrakefield@hausfeld.com

Brendan P. Glackin (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Nicholas W. Lee (*pro hac vice*)
Sarah D. Zandi (*pro hac vice*)
Jules A. Ross (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
bglackin@lchb.com
lchan@lchb.com
nlee@lchb.com
szandi@lchb.com
jross@lchb.com

Eric L. Cramer (*pro hac vice*)
Jeremy Gradwohl (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (415) 215-0962
Phone: (215) 715-3256
ecramer@bm.net
jgradwohl@bm.net

</div>

Robert Litan (*pro hac vice*)
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006
Phone: (202) 559-9745
rlitan@bm.net

Joshua P. Davis (*pro hac vice* forthcoming)
BERGER MONTAGUE PC
59A Montford Avenue
Mill Valley, CA 94941
Phone: (415) 215-0962
jdavis@bm.net

*Interim Co-Lead Class Counsel for Plaintiffs
and the Proposed Class*

Kenneth N. Flaxman
ARDC No. 830399
Joel Flaxman
ARDC No. 6292818
LAW OFFICES OF KENNETH N.
FLAXMAN P.C.
200 S Michigan Ave., Suite 201
Chicago, IL 60604
Phone: (312) 427-3200
jaf@kenlaw.com
knf@kenlaw.com

*Interim Liaison Counsel for Plaintiffs and the
Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of

the Court using CM/ECF system, which will then send electronic copies to the registered

participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 14, 2023                                       _/s/ Gary I. Smith, Jr._
                                                              Gary I. Smith, Jr.