UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE TELEKOM AG, et al.,<br><br>Defendants. | No. 22 C 3189<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

The Court denied T-Mobile's motion to dismiss on November 2, 2023. T-Mobile now asks the Court to certify that order for interlocutory appeal. For the following reasons, T-Mobile's motion [120] is granted.

## Background

In April 2018, T-Mobile and Sprint announced their plans to merge. Two years later, after close scrutiny by the Federal Communications Commission, the U.S. Department of Justice Antitrust Division, 14 State Attorneys General, two federal judges, and others, the merger closed. And two years after that, Plaintiffs brought this putative class action on behalf of themselves and other AT&T and Verizon customers alleging that the merger reduced competition and caused them to pay billions more for wireless services than they would have had to pay otherwise. With

1

this action, Plaintiffs seek to unwind the merger, create a new fourth competitor in the market, and recover damages for overcharges they allegedly paid.

T-Mobile filed a motion to dismiss for lack of antitrust standing and on other grounds, which the Court denied. *See* R. 114 ("Order"). T-Mobile now moves to certify the issue of antitrust standing for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Chamber of Commerce of the United States of America and the CTIA – The Wireless Association filed amicus briefs. *See* R. 135, 141.[1]

## Discussion

T-Mobile seeks to challenge on interlocutory appeal this Court's holding that Plaintiffs adequately alleged standing under the antitrust laws. Specifically, Defendant seeks to certify the question of whether Plaintiffs, who are customers of AT&T and Verizon, plausibly alleged antitrust standing to challenge the merger of T-Mobile and Sprint.

A district court follows "four statutory criteria" in determining whether a section 1292(b) petition should be granted: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the

---

[1] Plaintiffs challenge the impartiality of the *amici*. But "the fiction that an *amicus* acts as a neutral information broker, and not an advocate, is long gone," and "even a friend of the court interested in a particular outcome can contribute in clear and distinct ways[.]" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020). Here, the Chamber of Commerce and the CTIA "[p]rovid[e] practical perspectives on the consequences of potential outcomes," *id.*, namely the discovery expense to non-parties and the pressure to settle antitrust litigation. The Court granted the motions for leave to file the amicus briefs on that basis, but ultimately, neither brief sways the Court one way or the other on the contested issues. Moreover, to the extent CTIA offers facts about the wireless market that go beyond the facts alleged in the complaint, the Court declines to consider them.

litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

Plaintiffs do not contest that the question is controlling, in that "interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quoting 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure § 3930, at pp. 159–60 (1977)). Nor do Plaintiffs dispute that the question's resolution will speed up the litigation; if the Seventh Circuit reverses, "the entirety of the litigation in the district court is almost certain to end." *Boone v. Illinois Dep't of Corr.*, 71 F.4th 622, 625 (7th Cir. 2023). As such, the Court examines whether the question is a contestable question of law.

I. Question of Law

For the purposes of section 1292(b), a "question of law" means a "pure question of law," i.e., "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 677. Whether Plaintiffs have plausibly alleged antitrust standing is such a question.

A motion to dismiss tests the legal sufficiency of a complaint, *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), and it is well-settled that antitrust standing can be resolved on a motion to dismiss, *Associated Gen. Contractors v. Carpenters* ("*AGC*"), 459 U.S. 519, 545–46 (1983) (district court did not err in dismissing complaint for lack of antitrust standing); *McGarry & McGarry, LLC v.*

3

*Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1066 (7th Cir. 2019) (affirming dismissal for lack of antitrust standing).

It is true that, generally, "routine applications of well-settled legal standards to facts alleged in a complaint are [not] appropriate for interlocutory appeal." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). But here, whether Plaintiffs have plausibly alleged antitrust standing "requires the interpretation, not merely the application, of a legal standard." *Id.* at 625; *see also Boone*, 71 F.4th at 625. Specifically, it requires an interpretation of the "directness" *AGC* factor in the context of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, *Twombly* "is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit." *Text Messaging*, 630 F.3d at 625. As in *Text Messaging*, that concern counsels in favor of an interlocutory appeal here. *Id.*

Plaintiffs urge that antitrust standing is not a "pure" question of law, but a mixed question of fact and law. The Court did not make any factual findings in denying T-Mobile's motion to dismiss. Instead, the Court ruled, as a matter of law, that Plaintiffs had antitrust standing based on the factual allegations in the complaint. The Court's remark that discovery might reveal that the higher prices paid by Plaintiffs following the merger were wholly independent of the merger "merely acknowledges the different standards that apply to a Rule 12(b)(6) motion to dismiss and a Rule 56(a) motion for summary judgment." *Hanson v. LeVan*, 967 F.3d

584, 591 (7th Cir. 2020). Accordingly, the question presented is a question of law for the purposes of section 1292(b).

    II.    Contestable Question

A question is "contestable" when substantial grounds for a difference of opinion exist. *Ahrenholz*, 219 F.3d at 675. Put differently, "[a] question of law is contestable if there are substantial, conflicting decisions regarding the claimed controlling issue of law or the question is not settled by controlling authority, and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Yost v. Carroll*, No. 20 C 5393, 2022 WL 180153, at *4 (N.D. Ill. Jan. 20, 2022) (citations omitted).

Although the Court believes the Order is rightly decided, there are substantial grounds for a difference of opinion on whether Plaintiffs have plausibly alleged antitrust standing, i.e., a direct link between their harm (higher prices) and the market restraint (the merger), where Plaintiffs are not customers of the merging entities and AT&T and Verizon set their prices. The Court's ruling was based on its interpretation of relevant authority. Section 4 of the Clayton Act limits the class of plaintiffs who can bring actions under that statute to those "whose injuries were proximately caused by a defendant's antitrust violations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citing *AGC*, 459 U.S. at 532–33). The "general tendency" is "not to stretch proximate causation beyond the first step." *Id.* at 140. On the Court's read, the complaint set forth a plausible theory that AT&T and Verizon customers were injured at the "first step" as direct consumers in the

5

market where the merger allegedly restrained competition and raised prices. *See generally* Order at 24–32.

According to T-Mobile, the Order misapplies the "first step" principle. In its view, because AT&T and Verizon set their own prices, Plaintiffs' injuries are several steps removed from the T-Mobile-Sprint merger. The higher prices suffered by Plaintiffs are not "surely attributable" to the merger, but instead "purely derivative" of AT&T and Verizon's pricing decisions. *Lexmark*, 572 U.S. at 133, 140. T-Mobile relates this case to *AGC*, where the Supreme Court explained that a union was not a proper plaintiff because its injuries were an "indirect result" of the harm suffered by select union contractors whose business was diverted to non-union contractors. 459 U.S. at 533. Additionally, T-Mobile contends intervening economic factors and business decisions are "obvious alternative explanations" that undermine the plausibility of the direct causal link alleged by Plaintiffs. R. 147 at 9 (quoting *Twombly*, 555 U.S. at 567). This Court found the derivative injuries at issue in *AGC* and other cases distinguishable from the injuries in this case, and explained that the alternative explanations offered by T-Mobile were not so obvious that they undermined the plausibility of the merger directly causing the elevated prices. Order at 27–29, 36–38. The Court believes its interpretation of the relevant standards is the most reasonable, but there is plenty of room for debate.

In fact, both the Second and Eleventh Circuits have taken a different approach at the pleading stage. In *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 136–38 (2d Cir. 2021), merchants who did not accept American Express

6

("Amex") credit cards alleged that "anti-steering" rules in Amex's contracts with Amex-accepting merchants, along with Amex's higher fees, caused other credit card companies increase their fees. The Second Circuit reasoned that the plaintiffs' fees were set by third parties, not Amex, and held that Amex "enabling" other credit card companies to raise the plaintiff's fees was not a sufficiently direct link to plausibly allege antitrust standing. *Id.* at 140–41. Similarly, in *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1392 (11th Cir. 1990), hospital patients sued an insurer for extracting price concessions from hospitals, which then charged higher prices to other insurers and their policy-holders. The Eleventh Circuit affirmed the dismissal for lack of antitrust standing because the claimed injuries were too remote from the misconduct and dependent on the pricing decisions of third parties. *Id.* at 1392–93. The fact that both the Second and Eleventh Circuits held that similarly-situated plaintiffs could not plausibly allege the requisite direct link shows that reasonable minds could differ on this issue.

Plaintiffs insist that *Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003) controls this question. But *Gypsum*'s holding is a narrow one: "[i]n a cartel case, an allegation that a fringe firm customer was injured through the elevation in price in the market where the cartel cut output is sufficient to satisfy antitrust standing." Order at 25. As the Court explained, this is not a cartel case, and AT&T and Verizon are not fringe firms. *Id.* That *Gypsum* did not foreclose the possibility that a plaintiff who does not transact directly with a merging entity has antitrust standing does not mean that *Gypsum* expressly authorizes Plaintiffs' claims here. Additionally, *Gypsum*

7

was decided years before the clarification of the pleading standard in *Twombly*. The Seventh Circuit has never had occasion to consider whether *Gypsum*'s brief statement that "the potential to establish injury through elevation of price in the affected market satisfies any distinct 'antitrust standing' requirement," 350 F.3d at 628, has continuing force under the modern pleading standard or when applied outside the cartel context. Thus, while *Gypsum* counsels in favor of finding that Plaintiffs have plausibly alleged antitrust standing, it does not preclude reasonable debate.

Because there are substantial grounds for a difference of opinion, and the Seventh Circuit may very well join the Second and Eleventh Circuits and side with T-Mobile, the question posed is contestable for the purpose of section 1292(b).

## Conclusion

For the foregoing reasons, the Court grants T-Mobile's motion and certifies for interlocutory appeal the question of whether Plaintiffs have plausibly alleged antitrust standing.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 27, 2024