**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEUTSCHE TELEKOM AG, T-MOBILE US, INC., and SOFTBANK GROUP CORP.,<br><br>*Defendants.* | Case No. 1:22-cv-03189<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey Cole |

**ORDER RE PROTOCOL FOR THE PRODUCTION OF
<u>ELECTRONICALLY STORED INFORMATION (ESI)</u>**

The parties hereby provide the Court with the following joint proposed order re protocol governing the production of electronically stored information ("ESI") in the above-captioned matter. This Order shall be applied in conjunction with, and construed with reference to, other orders of the Court concerning discovery, including the Agreed Confidentiality Order (Dkt. 98) and Rule 502(d) Order to be entered in this matter.

1.  **<u>Production Format</u>**. For all discovery requests in which electronically stored information ("ESI") is reasonably available and responsive to a request, the responding party shall produce such information in single-page, black and white, Group IV Tagged Image File Format ("TIFF") of at least 300 dpi with an agreed-upon accompanying load file (e.g., Concordance *.opt and *.dat) and an accompanying multi-page extracted text file (*.txt). TIFF

1

files shall be named with a unique production Bates number followed by the appropriate file extension, .tif. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The parties will produce unredacted Excel and other spreadsheet (*.xls, .csv, and other similar) documents and media files in native format with an accompanying extracted text file. If the parties agree that aforementioned electronic formats are inappropriate or inconvenient for a particular file type, then documents of such file type(s) will be produced in native format with an accompanying extracted text file. For each document produced in native format, a Bates-numbered placeholder TIFF document with the text "Document Produced in Native Format" or similar text shall be included with the production and the native file shall be named with the Bates number for the corresponding placeholder. In addition, productions shall comply with the following:

a. Word documents shall be produced reflecting track changes, comments, and any other hidden content, if any;

b. PowerPoint documents and other presentations shall be produced reflecting speaker notes, hidden slides, and any other hidden content, if any;

c. Excel files shall be produced with all hidden rows, columns, and other information visible;

d. Each document shall be produced in a text-searchable format, to the extent commercially feasible;

e. Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may

        request that the document be produced in color (whether electronic or hard copy);

    f.    The parties will produce hard copy documents as scanned images in TIFF format with OCR-extracted text;

    g.    To the extent hard copy documents are collected from an agreed custodian, the scanned images produced shall designate the custodian's name in the metadata field "De-Duplicate (all custodian)"; to the extent hard copy documents are collected from a non-custodial source, the scanned images produced shall designate "T-Mobile" (or other producing party, as appropriate) in the metadata field "De-Duplicate (all custodian)";

    h.    The parties agree that if any part of a document is responsive, the entire document and its family members (i.e., parent email or attachments) shall be produced, except that (1) any document may be withheld in its entirety under a claim of privilege and/or work product and (2) any portion of a document may be redacted on the basis of privilege, work product, or other applicable protection as outlined in section 13 ("Redactions") of this protocol.  The receiving party reserves the right to challenge the withholding and/or redaction of documents.  The parties shall meet and confer in good faith to resolve any disputes regarding the withholding and/or redaction of documents.  Any intractable disagreements in this regard shall be resolved by the Court.

2.    **Re-productions**.  Notwithstanding any provisions to the contrary, Documents that the producing party reproduces in whole or in part from the production files of a historical

litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the historical matter. To the extent that a producing party produced documents prior to the entry of this Order, the producing party shall not be required to reprocess or otherwise alter its previous production to meet the terms of this Order unless the requesting party demonstrates good cause for such reprocessing or alteration.

3. **System Files**. System and program files, including those as defined by the NIST library (http://www.nsrl.nist.gov/), commonly used by e-discovery vendors to exclude system and program files from document review and production, need not be processed, reviewed, or produced. Additional files may be added to the list of excluded files by agreement of the parties.

4. **De-duplication**. To the extent that exact duplicate stand-alone documents (based on MD5 hash values at the document level or by message ID and other standard vendor methodology for email) reside within a party's ESI data set, each party shall use best efforts to produce a single copy of a responsive document or record. Where any such documents have attachments, hash values must be identical for both the document plus attachment at the family level (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Attachment to parents may not be suppressed if a duplicate stand-alone version of the attachment exists. Stand-alone versions of documents may not be suppressed if a duplicate version is attached to a parent. A "De-Duplicate (all custodian)" field containing the identity of each custodian whose data was de-duplicated shall be provided as a metadata field in the production data file.

5. **Production of Email Threads**. Non-inclusive emails (*i.e.*, any email whose text and attachments are fully contained within another email in the document population) may be excluded from review, production, and/or logging so long as the producing party's thread

4

identification software is capable of identifying non-inclusive emails in an automated fashion and so long as the inclusive (*i.e.*, any email that contains unique content that is not included in any other email in the document population) email or emails in the document population is either produced (with or without redactions) or included on a privilege log, to the extent the entire chain is withheld on the basis of privilege. When producing inclusive emails, the producing party agrees to provide lesser-included, non-privileged, non-Foreign Law Protected, non-Personal Data metadata consisting of From, To, CC, BCC information in a concatenated, separate metadata field titled "Lesser_Included_Sender-Recipient". For the avoidance of doubt, responsive "non-inclusive" emails that will be produced independently of any "threaded" email chain include not only chains with different "endpoints," but also other non-inclusive content such as, for example, attachments that are not included in later iterations on the chain, unsent drafts with unique content, or emails containing alterations to earlier emails not captured in a later inclusive email of the same thread. The receiving party can request in good faith reasonable and specific lesser included emails in order to exclude impertinent or extraneous materials from the examination of a witness and the producing party shall not refuse a good faith request for such production.

6. **Email Domains**. The producing party may exclude from review and production uniquely identifiable categories of Documents that are not likely to be responsive, such as emails from domains typically associated with junk email. Prior to excluding any such documents, the producing party shall provide a list of proposed email domains and other criteria used to remove documents from review and production. The parties shall meet and confer in good faith to reach agreement on categories of documents to exclude under this paragraph and any intractable disagreements in this regard shall be resolved by the Court. For the avoidance of doubt, this

exclusion will not apply where an email originates from an email domain proposed to be excluded from review, but the original in time email is forwarded to, forwarded by, or altered in any way by an agreed-upon or Court-ordered document custodian.

7. **Parent-Child Relationships**.  This relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved.  "Attachments" (also known as "Children") and their "Parent" documents are a "Family" of documents.  Children should be located directly after their Parent in the production set and should be sequentially Bates numbered.  The child-document should be consecutively produced immediately after the parent-document unless justifiably withheld under the provisions of 1(h) herein.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

8. **Native Files**.  A party that receives a document produced in a non-native format may make a reasonable request to receive the document in its native format, including where the production in TIFF format renders the document illegible or where the lack of color causes the document to lack complete context.  The parties shall meet and confer in good faith to resolve any requests for native production and any intractable disagreements in this regard shall be resolved by the Court.

9. **Delivery**.  The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via encrypted flash drive or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the

information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. All physical media must be write protected and encrypted before it is produced.

10. **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc. The compressed file should be named so as to indicate the producing party, the date of the production, and the sequence of the production (e.g., "SoftBankProduction20230419-001").

11. **Metadata**. The parties need not produce all metadata associated with ESI, unless the requesting party can show a need for metadata. However, the following metadata fields for each document shall be produced, if available:

> Begdoc, Enddoc (or Begin Bates, End Bates) Begattach, Endattach, Email From, Email To, Email Cc, Email Bcc, Date and Time Sent/Received, Email Subject, Title, File Name, Document Type, File Extension, Page Count, MD5 Hash, Confidential (protective agreement designation), Redacted (Yes/No), Date Last Modified, Date Created, Author, and De-duplicate (all custodian).

A party may reasonably request, upon good cause shown, the production of additional metadata on an individual basis by identifying each document for which additional metadata is needed, specifying what kinds of additional metadata the party requires, and the reason why such metadata is needed. The parties agree to meet and confer in good faith if any disputes arise and any intractable disagreements in this regard shall be resolved by the Court.

12. **Bates numbering**. All images shall be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; and (3) be sequential within a given document.

13. **Redactions**. A producing party may redact from any document (1) any information that is protected from disclosure by attorney-client privilege, the work-product doctrine, protection accorded to trial preparation materials, joint defense/common interest privilege, and any other reasonably applicable privilege and (2) any information that qualifies under subparagraphs (a) or (b) of this paragraph.[1] All documents that are redacted shall be identified as such in a "Redacted" metadata field.

    a. **Personal Data and Foreign Law Protected Material Redactions**. A producing party may redact Personal Data and Foreign Law Protected Material to the extent that the information falls within one of the following categories: (1) bank or credit card account number(s), personal passwords, medical or health information of an individual, social security numbers, personal information of minor children, national or state identification numbers, passport information or other information of a personal or sensitive nature; or (2) personal information protected by any applicable statutes, including the GDPR, the BDSG, the APPI, or other foreign laws. Such redactions should be labeled as "Redacted – Personal Data" on the document.

    b. **Limited Redactions of Non-Responsive and Irrelevant Highly Confidential Business Information**. A producing party may perform limited redactions of non-responsive Highly Confidential business information if it meets the following criteria:[2]

---

[1] Capitalized terms in this Order shall be defined in accordance with the Agreed Confidentiality Order entered in this case. *See* Dkt. 98.

[2] If limited jurisdictional discovery is ordered by the court, and non-U.S. entities are required to produce documents that have a nexus with the U.S. market more generally, this provision shall not apply to those documents.

    i.    The redacted Highly Confidential business information has no nexus with the pleaded U.S. Retail Cell Service Market; and

    ii.    The redacted Highly Confidential business information is produced by a non-U.S. entity that is a party or third party to this litigation; and

    iii.    The redacted Highly Confidential business information redactions are narrowly applied and retain sufficient context (e.g., section header information, subject lines or other contextual information) so that the requesting party can discern the general subject matter of the redacted material; and

    iv.    The redacted information is not necessary to understanding, interpreting or otherwise contextualizing the relevant portion of the document or document family of which it is a part.

Any such redactions shall be labeled "Redacted – Highly Confidential Irrelevant Business Information." For the avoidance of doubt, a party or third party shall only be permitted to redact, and not withhold or slipsheet, non-responsive and irrelevant Highly Confidential business information. A requesting party may make reasonable and specific requests for further explanation or removal of specific redactions made for non-responsive and irrelevant Highly Confidential business information.

Any redacted material must be clearly labeled on the face of the document as having been redacted. Each redacted document shall be produced with an OCR .txt file to the extent the text file does not disclose the redacted information. The receiving party reserves the right to challenge the redaction of any information. The parties agree to meet and confer in good faith if any disputes arise and

any intractable disagreements in this regard shall be resolved by the Court.

14. **Privilege logs**. The parties agree to serve a privilege log providing information regarding all documents withheld under a claim of privilege and/or work product protection consistent with Rule 26. Documents protected by attorney-client privilege, the work-product doctrine, protection accorded to trial preparation materials, joint defense/common interest privilege and any other reasonably applicable privileged material that are created after the date of the filing of the original Complaint in the above-captioned matter need not be logged on a privilege log, provided that responsive communications with non-litigation counsel regarding business matters shall be logged. Redacted documents need not be logged as long as the reason for the redaction is noted on the face of the document in the redacted area and the redaction is noted in a metadata field. For redacted documents where the subject matter is not decipherable as a result of redactions, the receiving party may request additional information to understand the basis of the redaction. The parties shall meet and confer in good faith to resolve requests for additional information and any intractable disagreements in this regard shall be resolved by the Court.

15. **Non-Waiver**. Pursuant to Federal Rule of Evidence 502(d), the production of any material or information, whether inadvertent or otherwise, shall not be deemed to waive any privilege, work product or privacy protection in the Litigation or in any other federal or state proceeding. Nothing in this Paragraph is intended to or shall serve to limit a party's voluntary election to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. The parties stipulate that the Court shall enter a Rule 502(d) Order to govern procedures for clawback of disclosed material, which shall be interpreted to provide the maximum protection allowed by Rule 502(d).

16. **Databases**. To the extent necessary, the parties will meet and confer regarding production of relevant information from proprietary databases or enterprise databases. Before producing any agreed upon structured data, the producing party shall produce a data sample from the relevant database that includes the fields and sample values to be produced. If the parties cannot reach agreement on the production parameters for structured data, the parties reserve the right to escalate disputes to the Court for resolution. Except by agreement of the parties or by order of the Court upon showing of good cause, the producing party shall not be required to extract structured data from the same source multiple times.

17. **Document Collection, Search, and Production**. The parties shall cooperate to identify appropriate custodians and/or other sources to be searched, appropriate search terms or other search techniques to be employed, and appropriate time frame(s) to be searched and produced. To the extent possible, proposed custodians shall be identified by name, title(s) and corresponding date(s), connection to this litigation, and the type of the information under his/her control. For unstructured data, the producing party shall disclose the search parameters they intend to use (e.g., search term, TAR or combination thereof) and the custodial files, non-custodial files, and corresponding time periods proposed to be searched before finalizing the search protocol. If a producing party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the party shall disclose to a requesting party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures. If the parties cannot reach agreement on the search parameters, the parties reserve the right to escalate disputes to the Court for resolution. Except by agreement of the parties or by order of the Court upon showing of good cause, a producing party shall not be required to add or modify search parameters after completion of the above process. Nothing in this Order should be construed to (1) waive or

11

abrogate any aspect of any party's agreement memorialized in correspondence from Plaintiffs' counsel on October 20, 2022, (2) waive or abrogate any objections a party may have to Requests for Production, or (3) preclude any party from objecting to the identification of custodians, specific methodologies for collection, or search and review of potentially discoverable Documents on the ground that no such relevant information exists.[3]

18. **Meet-and-Confer Obligations**. The parties recognize that the production of electronic documents often involves unforeseen issues and difficulties and therefore agree to act in good faith to negotiate any modifications to these production guidelines that are reasonably necessary to avoid undue cost or burden. To the extent there is any dispute with respect to the provisions of this Order, or with the method(s) or manner(s) of the production of ESI, the parties shall meet and confer in attempt to resolve such dispute(s) prior to seeking judicial intervention.

19. **Third-Party Productions**. A party that issues a non-party subpoena shall timely notify other parties when it receives non-party productions, and shall provide copies of such productions in the format in which they were received from the third-party.

20. **Subsequently Joined Parties**. Parties joined to this Action after the entry of this joint proposed order shall presumptively be subject to its terms, however, subsequently joined parties may seek modification of this joint proposed order either through further written agreement of all parties, or upon a showing of good cause, by application to the Court on notice to the other parties.

---

[3] Plaintiffs reserve the right to object to the utilization of both TAR and search terms together to cull any of the same custodial and non-custodial sources. Defendants reserve the right to seek the utilization of both TAR and search terms together to cull any of the same custodial and non-custodial sources.

| | |
|---|---|
| /s/ *Gary I Smith, Jr.* | /s/ *Josh Krevitt* |

Joel Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
ARDC No. 830399
**LAW OFFICES OF KENNETH N. FLAXMAN P.C.**
200 S Michigan Ave., Suite 201
Chicago, IL 60604
Phone: (312) 427-3200
jaf@kenlaw.com
knf@kenlaw.com

Brendan P. Glackin (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Nicholas Lee (*pro hac vice*)
Sarah Zandi (*pro hac vice*)
Jules A. Ross (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
bglackin@lchb.com
lchan@lchb.com
nlee@lchb.com
szandi@lchb.com
jross@lchb.com

Eric L. Cramer (*pro hac vice*)
Najah A. Jacobs (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (415) 215-0962
Phone: (215) 715-3256
ecramer@bm.net
njacobs@bm.net

Robert Litan (*pro hac vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006
Phone: (202) 559-9745
rlitan@bm.net

Clifford C. Histed
ARDC No. 6226815
Michael E. Martinez
ARDC No. 6275452
**K&L GATES LLP**
70 West Madison Street
Suite 3300
Chicago, IL 60602-4207
Phone: 312-807-4448
clifford.histed@klgates.com
michael.martinez@klgates

Josh Krevitt (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193 USA
Phone: 212-351-4000
Jkrevitt@gibsondunn.com

Theodore J. Boutrous, Jr. (*pro hac vice*)
Daniel G. Swanson (*pro hac vice*)
Rodney J. Stone (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Phone: 213-229-7000
Tboutrous@gibsondunn.com
Dswanson@gibsondunn.com
RStone@gibsondunn.com

Rachel S. Brass (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Phone: 415-393-8200
RBrass@gibsondunn.com

*Counsel for Defendant T-Mobile US, Inc.*

Dated: October 16, 2023

| | |
|---|---|
| Joshua P. Davis (*pro hac vice* forthcoming)<br>**BERGER MONTAGUE PC**<br>59A Montford Avenue<br>Mill Valley, CA 94941<br>Phone: (415) 215-0962<br>jdavis@bm.net | /s/ *Rachel S. Morse*<br><br>Rachel S. Morse<br>**MASSEY & GAIL LLP**<br>50 East Washington Street, Suite 400<br>Chicago, IL 60602<br>Tel: (312) 283-1590<br>rmorse@masseygail.com |
| Gary I. Smith Jr. (*pro hac vice*)<br>**HAUSFELD LLP**<br>600 Montgomery Street, Suite 3200<br>San Francisco, CA 94111<br>Phone: (267) 702-2318<br>gsmith@hausfeld.com | Robert D. Wick<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-6000<br>rwick@cov.com |
| Hill Brakefield (*pro hac vice*)<br>**HAUSFELD LLP**<br>888 16th St NW, Suite 300<br>Washington, DC 20006<br>Phone: (202) 953-8190<br>hbrakefield@hausfeld.com | Michael B. Miller (*pro hac vice*)<br>**MORRISON & FOERSTER LLP**<br>250 West 55th Street<br>New York, NY 10119<br>Tel: (212) 468-8000<br>MBMiller@mofo.com |
| *Counsel for Plaintiffs and the Proposed Class* | *Counsel for Defendant SoftBank Group Corp.* |
| Dated: October 16, 2023 | Dated: October 16, 2023 |

**APPROVED AND SO ORDERED.**

Dated: April 3, 2024

_____
Judge Thomas M. Durkin
United States District Judge