IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | No. 22 C 3189 |
| ) | |
| v. ) | Magistrate Judge Jeffrey Cole |
| ) | |
| T-MOBILE US, INC, et al., ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

The discovery dispute filings in this case are ongoing, and, unfortunately, it would appear that many more are in the offing as we are told that subpoenas are about to be issued to some two dozen non-parties. [Dkt. #292, at 2]. At this point, production by all of those non-parties is stalled – or will likely be stalled – by the failure, thus far, of the parties and non-parties to have reached an agreement for modification of the Confidentiality Order plaintiffs and defendants agreed to two years ago in March 2023. [Dkt. #98]. Given that obstacle, the plaintiffs (Dale, Fox, Borrowman, Lambert, Anderson, and Hohenbery), defendant T-Mobile, and Non-Parties AT&T Mobility LLC ("AT&T"), Charter Communications Operating, LLC ("Charter"), Comcast Cable Communications, LLC ("Comcast"), Consumer Cellular, Inc. ("Consumer Cellular"), Cox Communications, Inc. ("Cox"), DISH Network Corporation ("DISH"), Google North America, Inc. ("Google"), Nsighttel Wireless, LLC ("Nsight"), U.S. Mobile, Inc. ("U.S. Mobile"), and Verizon Communications Inc. ("Verizon") met and conferred and nearly reached agreement for amending the Confidentiality Order on all but

two topics, perhaps the most significant one being restrictions against T-Mobile's in-house counsel reviewing highly confidential information from the non-parties. While the parties, non-parties, and their numerous attorneys no doubt worked diligently to arrive at a consensus, the point they reached regarding this most important topic strikes one as a starting point for negotiations, rather than an end point where they have all drawn lines in the sand.

As such, some observations about each party's position are in order. We begin with T-Mobile's. The first problem becomes apparent early on in T-Mobile's response to the non-parties' proposal. T-Mobile is looking at this as the ordinary circumstance where discovery is coming from an opponent. It is not. Discovery is being subpoenaed from non-parties who thus have vastly different expectations regarding the confidentiality of their information. "While parties to a lawsuit must accept the invasive nature of discovery, non-parties are just that, not parties to the lawsuit, and they generally do not have anywhere near the same skin in the game." *HTG Capital Partners, LLC v. Doe(s)*, No. 15-C-2129, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015). *See also Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017)("It is one thing to subject parties to the trials and tribulations of discovery—rightly regarded as 'the bane of modern litigation,' . . . but a non-party doesn't usually have a horse in the race."). In short, ". . . a non-party is entitled to greater protection in the discovery process than parties in the litigation." *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *4 (N.D. Ill. Aug. 17, 2015).

Moreover, there were always going to be problems with a Confidentiality Agreement that parties to a litigation came up with without any input from those non-parties from whom extensive discovery is to be sought. So asserting that Judge Durkin approved that Confidentiality Agreement

2

"well-aware of the nonparty discovery that Plaintiffs' claims would entail" [Dkt. #293, at 14], does not settle the matter and is a bit disingenuous. Indeed, it is incorrect, as the terms the parties agreed to specifically state that the Confidentiality Agreement *only applies* to "to any *named* Party to this action (including all of its officers, directors, employees, retained experts, and outside counsel and their support staff), and to Non-Parties who agree to be bound by this Order." [Dkt. #98, at 16](Emphasis supplied). Not surprisingly, the non-parties, who had no say at all in the formation of the Confidentiality Agreement did not agree to be bound by it. Indeed, the principal case T-Mobile relies on ought to have given it substantial pause before going down the road it has chosen. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550 (7th Cir. 2018) was about a *party* who had negotiated and *agreed* to a Confidentiality Order but later sought a modification. Obviously, the burden of showing "good cause" in such a case ought to be quite formidable. But that is not for a non-party as in this case. Simply put, it cannot be seriously argued that there is not "good cause" for some modification to a Confidentiality Order to protect information from non-parties that had no part in the negotiation of that Order.

T-Mobile also might wish to review the other factors that the court in *Heraeus Kulzer* indicated should be considered when a modification is sought. The first is the nature of the Protective Order. That factor leans in favor of modification because the non-parties did not agree to it. *Cf. Heraeus Kulzer*, 881 F.3d at 567 ("With respect to the first factor—the nature of the protective order—the district court explained that Heraeus's burden was even higher because Heraeus agreed to the protective orders at issue."); *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978) ("[W]here a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order.").

The second factor, the foreseeability that modification would become necessary also leans in the non-parties' favor. As already stated, the terms of the Confidentiality Order, itself, left open the very real possibility that non-parties – competitors with one of the parties – would disagree with it. Similarly, and again because of the foreseeability of that, the third factor – the parties' reliance on the Order – is really neither here nor there. Certainly, the parties have relied on the Order but just as certainly, they knew this day would come and the non-parties they planned on subpoenaing would understandably balk.

So, T-Mobile needs to take another look at its position and perhaps do a little self-scouting. The non-parties have some very real concerns about in-house counsel for a competitor pouring over their documents. As they stated, it is no small matter for in-house counsel to compartmentalize information learned in discovery, *Fleming Sales Co. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985)(Shadur, J.)(compartmentalization of information learned "would force a [person] to perform a prefrontal lobotomy on himself or herself."); *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 946 (N.D. Ill. 2017)("The inescapable reality is that once an in-house counsel acquires highly confidential information, that individual cannot rid herself of that knowledge: she cannot perform a prefrontal lobotomy on herself, as courts in various contexts have recognized."). T-Mobile has at its disposal a large team of talented outside counsel from across the country who are no doubt well-experienced in anti-trust litigation.

Be that as it may, the non-parties have to realize that placing restraints on T-Mobile that their opponent need not deal with is an issue. The solution the non-parties have come up with, it has to be said, seems unworkable or, at least, incredibly unwieldy. Requiring T-Mobile to litigate each particular request that a non-party – and remember, there are about two dozen of them – has a

problem with will no doubt result in extreme burdens for both T-Mobile and unduly and needlessly strain judicial resources, with severe consequences to the limited judicial time available to any single litigant "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 386 (7th Cir. 1996)(Easterbrook, J.). And if that were not enough, it assumes that a court, with only a vague familiarity with the issues and players can undertake some sort of meaningful *in camera* review of documents each time there is a dispute, and accurately – not to mention consistently – determine whether T-Mobile's in-house counsel "really" needs to see the particular documents. Lawyers for the non-parties should take a critical look at that procedure. As for the Firewall provision DISH Network briefly adverts to from another litigation, they have not shown that it is applicable or appropriate here. Overall, the lawyers here can do better than has thus far been accomplished.

So, everyone should take a critical look at their current positions and make another attempt to come up with something workable. I understand that the parties and non-parties may well end up where they are now; but I urge counsel to think "creatively" with an eye toward what is truly and not merely academically meaningful. And, although the parties and non-parties have not mentioned it, given the numbers game, with attorneys and parties far out-numbering court staff, they need to consider the employment of a Special Master for their many, inevitable third-party discovery disputes, especially if they arrive at anything vaguely resembling the non-parties' proposal. Courts have appointed Special Masters in discovery disputes far less contentious, and involving far fewer parties and far fewer documents. *See, e.g., Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 880 (7th Cir. 2005)(400 documents); *Schmucker v. Johnson Controls, Inc.*, 2017 WL 6043328, at *1 (N.D. Ind. 2017)(358 documents); *Finnegan v. Myers*, 2014

WL 12789809, at *8 (N.D. Ind. 2014)(600 documents); *In re FedEx Ground Package Sys., Inc.*, 2007 WL 79312, at *8 (N.D. Ind. 2007); *Avery Dennison Corp. v. UCB Films PLC*, 1998 WL 703647, at *1 (N.D. Ill. 1998)(800 documents).

I have used a Special Master in several cases with outstanding results. Given the national scope of this case, with counsel being from several states, they no doubt are aware that in other jurisdictions, Special Masters are employed for review of far fewer documents than is generally the trigger here in the Northern District of Illinois. *See, e.g., IQVIA, Inc. v. Veeva Sys., Inc.*, 2020 WL 2039836, at *2 (D.N.J. 2020)(34 documents); *In re Lincoln Nat'l COI Litig.,* 2020 WL 1157172, at *1 (E.D. Pa. 2020)(21 documents); *Orexo AB v. Actavis Elizabeth LLC*, 2018 WL 5891690, at *1 (D. Del. 2018)(29 documents); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6137597, at *2 (C.D. Cal. 2018)(364 documents); *Engage Healthcare Commc'ns, LLC. v. Intellisphere, LLC.*, 2017 WL 10259774, at *1 (D.N.J. 2017)(58 documents). The parties and non-parties might want to get ahead of that possibility and put together some sort of mutually acceptable agreement rather than have something perhaps imposed on them down the road.

In conclusion, the parties should, with the forgoing considerations and weaknesses in their positions in mind, meet and confer over these issues, attempt to reach an agreement, and report back to the court in 30 days. For bookkeeping reasons more than anything else, and with the full realization that the parties and non-parties may be back asking for the same relief, the "Motion by Unknown AT&T Mobility LLC to amend/correct protective order" [Dkt. #293] is denied. As for the briefing format for eventual motions to compel discovery from non-parties that T-Mobile and the plaintiff have been incapable of agreeing to [Dkt. #292, at 4-6], the court agrees with the plaintiff that, as the parties have been able to resolve such a routine matter, and the court will have to impose

6

its preference, that preference is best left for the Magistrate Judge who will be inheriting this case.

          **ENTERED:** _____
                      **UNITED STATES MAGISTRATE JUDGE**

**DATE:** 4/24/25