## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERRY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | No. 22-cv-3189<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Albert Berry III |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| T-MOBILE US, INC., *et al.*, | ) ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed more fully below, the Court will allow Defendant's proposed amendments to the Agreed Confidentiality Order [98], except Defendant may only designate two in-house counsel to receive Highly Confidential Information; the Court rejects the non-parties' proposed amendments. The parties are ordered to file a joint motion to amend the confidentiality order that conforms to this Order within seven days (by July 24, 2025), making sure to follow Judge Berry's case procedures for Confidentiality Orders. Furthermore, consistent with the Court's order of July 11, 2025, (Dkt. 326), the Parties are ordered to submit a Joint Scheduling Order within seven days (by July 24, 2025) of this Order.

## BACKGROUND

Plaintiffs are customers of AT&T Mobility LLC ("AT&T") and Verizon Communications, Inc. ("Verizon") who have sued T-Mobile US, Inc. ("T-Mobile") alleging that T-Mobile's 2020 merger with Sprint lowered competition in the wireless services market, which in turn allowed

1

AT&T and Verizon to raise prices and harm their subscribers. (Dkt. 1 at ¶¶ 1, 12-18, 129.) As expected, given the nature of the allegations, third-party subpoena practice has been extensive in this case; the pricing for non-parties AT&T and Verizon are front and center in the complaint, and the activities of other competitors in the wireless services market may also be relevant to the claims and defenses in this case. Perhaps, needless to say, these direct competitors of T-Mobile have legitimate concerns about producing sensitive and proprietary documents to T-Mobile in this matter. As a result, the parties and non-parties AT&T, Verizon, Charter Communications Operating, LLC, Comcast Cable Communications, LLC, Consumer Cellular, Inc., Cox Communications, Inc., DISH Network Corporation ("DISH"), Google North America, Inc., Nsighttel Wireless, LLC, and U.S. Mobile, Inc. attempted to negotiate amendments to the Agreed Confidentiality Order (Dkt. 98)[1] to assuage the non-parties' concerns. Though it appears a lot of effort was put into the negotiations, those attempts were unsuccessful, and on April 17, 2025, the parties filed a joint submission outlining the areas of impasse. (Dkt. 293.) The remaining issue concerns how and when materials marked as Highly Confidential can be shared with T-Mobile's in-house counsel.[2] (*Id.* at 3-22.) Judge Cole denied the motion, told the parties to meet and confer more, and ordered them to file a joint status report on their efforts. (Dkt 303 at 6.) Unfortunately, those continued efforts accomplished nothing, and the parties remain entrenched in their original positions.[3] (Dkt. 311.)

---

[1] The Agreed Confidentiality Order was between the Plaintiffs and Defendants ands did not bind any non-parties to the lawsuit.

[2] The second issue raised by non-party DISH concerned a Firewall provision in the Final Amended Judgment in *United States v. Deutsche Telekom AG*, No. 1:19-cv-2232-TJK, Dkt. 139 (D.D.C. Oct. 23, 2023). (Dkt. 293 at 23.) Judge Cole wrote DISH "ha[d] not shown that it is applicable or appropriate here" and that "the lawyers here can do better than has thus far been accomplished." (Dkt. 303 at 5.) The Court considers this issue resolved by Judge Cole's prior Order.

[3] Although Judge Cole technically denied the motion, the Court will not require the parties to refile the motion and bases its ruling on the Joint Submission Regarding Contested Amendments to the Agreed Confidentiality Order. (Dkt. 293.)

## DISCUSSION

The non-parties' proposal is a three-step process. First, T-Mobile's outside counsel would make a written request to a producing party identifying "the particular Highly Confidential Information and up to two in-house attorneys to have access to that information who have responsibilities for the litigation of this action and do not currently, and for a period of nine months following the last occasion on which Highly Confidential Information is disclosed to such in-house litigation counsel shall not, participate in or advise on Competitive Decision-Making." (Dkt. 293 at 3.) Second, T-Mobile and the producing party would hold a meet and confer. (*Id.*) Finally, if the parties could not agree, T-Mobile could file a motion with the Court seeking access for the designated in-house counsel to the specified Highly Confidential Information. (*Id.*)

The Court agrees with Judge Cole's previous assessment of the non-parties' proposed amendments, when he wrote:

> The solution the non-parties have come up with, it has to be said, seems unworkable or, at least, incredibly unwieldy. Requiring T-Mobile to litigate each particular request that a non-party – and remember, there are about two dozen of them – has a problem with will no doubt result in extreme burdens for both T-Mobile and unduly and needlessly strain judicial resources, with severe consequences to the limited judicial time available to any single litigant "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 386 (7th Cir. 1996)(Easterbrook, J.). And if that were not enough, it assumes that a court, with only a vague familiarity with the issues and players can undertake some sort of meaningful *in camera* review of documents each time there is a dispute, and accurately – not to mention consistently – determine whether T-Mobile's in-house counsel "really" needs to see the particular documents.

(Dkt. 303 at 4-5.)

While the Court understands that a similar framework was ratified in the underlying merger litigation in the Southern District of New York, (Dkt. 293 at 5-6), the Court agrees with T-Mobile

that there are crucial distinctions between the nature of that case and the instant suit. (Dkt. 293 at 18-19.) The nature of the merger litigation in the Southern District of New York was forward-looking and primarily examined the prospective competitive impact of the proposed merger on the wireless market landscape. Meanwhile, this case concerns the effect that the merger had on non-parties' pricing decisions following the merger, and non-parties' materials are not only relevant, but indeed central, to the claims in this suit. As such, in-house counsel has greater need to review Highly Confidential Information because, as T-Mobile points out, "T-Mobile cannot defend itself against claims about its competitors' independent pricing decisions in the wake of the Merger without information about its competitors' pricing, pricing decisions, and pricing inputs." (Dkt. 293 at 19.) And because the need for in-house counsel to review these sensitive materials is higher here, accepting non-parties' proposed amendments would almost certainly create enormous burdens on T-Mobile to identify and litigate each document it wanted to release to in-house counsel. Additionally, given the parties' and non-parties' inability to agree to date on relatively simple issues, the Court is all but certain that there would be a flood of motion practice that would quickly overwhelm the limited resources of the Court. In short, this case is sufficiently different from the underlying merger litigation that the Court does not believe adoption of the procedures from that case is warranted here, and the Court rejects non-parties' proposed amendments.

T-Mobile suggests that it designate no more than four in-house counsel who "have responsibilities for the litigation of this action and not currently, and for a period of nine (9) months following the last occasion on which Highly Confidential Information is disclosed to such in-house counsel, participate in or advice on Competitive Decision-Making at [T-Mobile]." (Dkt. 293-1 at 12-13.) The designated in-house counsel must also sign an In-House Counsel Agreement Concerning Confidentiality, agreeing to be bound to the confidentiality agreement and confirming

4

that failure to abide by its terms may lead to "civil and criminal penalties for contempt of Court." (Dkt. 293-1 at 33.)  Additionally, before disclosing Highly Confidential Information to in-house counsel, T-Mobile would alert the producing party about the in-house counsel it planned to designate as a recipient of Highly Confidential Information, and the producing party would have the opportunity to object and confer on a replacement.  (Dkt. 293-1 at 13.)  If the parties cannot resolve their disagreement, the matter would be brought before the Court.  (*Id.*)  The Court believes this is a more manageable solution.  By changing the potential battlefield from *what* is being produced to *whom* it may be disclosed to, T-Mobile's proposal limits the amount of likely motion practice and conserves the resources of the Court and the parties.

However, while the Court believes T-Mobile's proposed method of disclosure is more sensible, the Court is sympathetic to the non-parties' concerns about turning over such commercially sensitive information to a competitor.  As Judge Cole pointed out, "it is no small matter for in-house counsel to compartmentalize information learned during discovery."  (Dkt. 303 at 4 (collecting cases).)  Accepting the premise that in-house counsel for T-Mobile will need to review some Highly Confidential Information, the simplest way to mitigate the risk is to limit the number of people who are required to compartmentalize information learned in litigation.  T-Mobile suggests that it be allowed to designate four in-house counsel, whereas the non-parties suggested only two.  The Court will adopt the non-parties' suggestion and allow T-Mobile to designate no more than two in-house counsel who can receive Highly Confidential Information.  The Court understands the need for T-Mobile's in-house counsel to review some Highly Confidential Information to provide strategic litigation guidance to counsel, but the Court echoes Judge Cole's remarks that "T-Mobile has at its disposal a large team of talented outside counsel from across the country who are no doubt well-experienced in anti-trust litigation."  (Dkt. 303 at

4.)  The Court believes that conferring with two designated in-house attorneys will allow T-Mobile's outside counsel to adequately discuss litigation strategy while balancing non-parties' interest in limiting disclosure of Highly Confidential Information to a competitor.  Although the Court believes this is the intention of all involved, out of an abundance of caution the Court notes that T-Mobile will only be allowed to designate two in-house counsel to receive all Highly Confidential Information, regardless of the source.  T-Mobile may not designate, for example, two different in-house lawyers to review each individual producing party's Highly Confidential Information, such that its legal department forms a patchwork quilt of knowledge regarding all competitors' proprietary information.  It will assign two in-house lawyers to receive Highly Confidential Information from this case, and if it wants to substitute the designated counsel, T-Mobile must follow the procedures outlined in its proposed amendments.  (*See* Dkt. 293-1 at 13-14.)

**<u>CONCLUSION</u>**

With the small alterations discussed above regarding the number of allowable designated in-house counsel (two), the Court will accept the tracked changes in the proposed Amended Confidentiality Order attached to the original motion (Dkt. 293-1) that are in green (agreed) and red (proposed by T-Mobile), and will reject the changes in blue (proposed by non-parties) and purple (conditional proposals from T-Mobile that are no longer relevant). The parties are ordered to file a joint motion to amend the confidentiality order that conforms to this Order within seven days (by July 24, 2025), making sure to follow Judge Berry's case procedures for Confidentiality Orders. Furthermore, consistent with the Court's order of July 11, 2025, (Dkt. 326), the Parties are ordered to submit a Joint Scheduling Order within seven days (by July 24, 2025) of this Order.

DATED: July 17, 2025

Albert Berry III
United States Magistrate Judge