IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE US, INC.,<br><br>Defendant. | Case No. 1:22-cv-03189<br><br>Hon. Thomas H. Durkin<br><br>Hon. Albert Berry III |

**JOINT STATUS REPORT REGARDING T-MOBILE'S MOTION TO COMPEL DISH**

Defendant T-Mobile US, Inc. ("T-Mobile"), and non-party DISH Network Corporation ("DISH"), by and through their undersigned counsel, submit this joint status report on their post-briefing conferral concerning T-Mobile's Motion to Compel DISH to Produce Discovery Responsive to its Subpoena ("Motion"), as ordered by Magistrate Judge Cole (Ret.). *See* Dkt. 277.

On March 21, 2025, T-Mobile filed the Motion, seeking an order compelling DISH to produce (1) structured data concerning DISH's subsidiary brands Gen Mobile and Ting Mobile; (2) certain documents T-Mobile believes are discrete go get documents; and (3) custodial discovery in response to nine document requests. Dkt. 254; Dkt. 255. On April 11, 2025, DISH filed its Opposition to the Motion and on April 21, 2025, T-Mobile filed its reply. Dkt. 283; Dkt. 295. After the briefing was completed, in accordance with the Court's order, T-Mobile and DISH

met and conferred five times[1] and exchanged multiple correspondences in an attempt to reach a "negotiated outcome." As detailed below, T-Mobile and DISH have reached agreement on some disputes and thereby reduced the number of issues requiring this Court's resolution. Specifically, T-Mobile and DISH have reached agreement on disputes concerning T-Mobile's Requests relating to: structured data for DISH's Gen Mobile and Ting Mobile retail mobile wireless brands (Request Nos. 17, 19, 26, 27); costs, profits, and losses relating to DISH's retail mobile wireless business (Request Nos. 25, 30, 31, and 32); DISH's historical retail mobile wireless phone plans (Request No. 23); and Customer Lifetime Value for DISH's retail mobile wireless customers (Request No. 33). However, T-Mobile and DISH remain at impasse on other disputes. Since further conferral on the outstanding disputes is unlikely to be productive, T-Mobile and DISH respectfully submit the remaining disputes for the Court's adjudication.[2]

---

[1] T-Mobile and DISH met and conferred via videoconference on April 30, May 16, June 6, June 13, and June 25, 2025.

[2] DISH has been consistent in pre-Motion conferral with T-Mobile, in its Opposition (Dkt. 283 at 25-28) and in the ordered post-Motion conferral that its willingness to produce certain structured data and documents to resolve its disputes with T-Mobile remains contingent upon appropriate modification of the Agreed Confidentiality Order to reflect an "outside counsel only" designation. As set forth in T-Mobile and Mobile Non-Parties' Joint Submission Regarding Contested Amendments to the Agreed Confidentiality Order ("Confidentiality Order Joint Submission"), T-Mobile agrees to modify the existing confidentiality order to include a provision stating that T-Mobile's in-house counsel will not access non-parties' Highly Confidential Structured Data (as those terms are defined in the Agreed Confidentiality Order and the proposed amendments). Dkt. 293 at 16; Dkt. 293-1 at 12. As for other categories of documents, T-Mobile and Mobile Non-Parties (including DISH) disagree on the extent to which T-Mobile's in-house counsel should be permitted to access Highly Confidential materials produced by non-parties. Dkt. 293 at 3-23. By agreeing to accept the documents DISH offered to produce to resolve the disputes in the Motion, T-Mobile is not agreeing that the confidentiality order should be amended to include an "outside counsel only" designation or that such designation is appropriate as applied to the specific documents that DISH offered to produce. T-Mobile and DISH agree that the appropriate amendments to the confidentiality order is an issue for the Court to decide. Further, T-Mobile's agreement that the documents DISH offered to produce will satisfy their disputes is subject to T-Mobile's right to seek further relief from the Court in the event DISH does not produce the agreed-upon documents or the documents DISH produces are different from what DISH represented it would produce. In addition to T-Mobile's and DISH's agreement on the disputed issues in the Motion, DISH agrees to produce the documents it previously agreed to produce in its Responses and Objections to T-Mobile's November 18, 2024, subpoena and subsequent meet and confers and related correspondence. T-Mobile reserves its right to seek further relief if DISH's document production is deficient.

### I. Gen Mobile and Ting Mobile Structured Data

T-Mobile and DISH have reached agreement on Gen Mobile and Ting Mobile structured data that DISH would produce in response to T-Mobile's Request Nos. 17, 19, 26, and 27. Further, DISH previously agreed to produce structured data concerning its Boost Mobile subscribers (including subscribers who formerly subscribed to Boost Infinite and Republic Wireless brands, which have since been combined into the Boost Mobile brand, to the extent such data exists on DISH's Digital Operator Platform). As such, there is no issue for the Court to resolve concerning Request Nos. 17, 19, 26, and 27, subject to conditions and reservations of rights set forth in footnote 2 above. T-Mobile requests that DISH produce the structured data it agreed to produce within 30 days of the Court's order on the Confidentiality Order Joint Submission. DISH states that it will produce the structured data it agreed to produce within a reasonable time of the Court's order on the Confidentiality Order Joint Submission.

### II. "Go Get" Documents

T-Mobile and DISH have resolved and/or substantially narrowed their disputes concerning certain "go get" documents subject to the Motion. T-Mobile moved to compel DISH to produce four categories of "go get" documents sufficient to show (1) a breakdown of DISH's costs, profits, and losses associated with its retail mobile wireless business; (2) DISH's retail mobile wireless plans and their details; (3) DISH's customer lifetime value ("CLV") data; and (4) payments DISH made to AT&T Inc. ("AT&T") for network access. Dkt. 255 at 8-10; Dkt. 295 at 7.

First, T-Mobile and DISH have reached an agreement on documents DISH would produce concerning its costs, profits, and losses associated with its retail mobile wireless business in response to Request Nos. 25, 30, 31, and 32, subject to conditions and reservations of rights set forth in footnote 2 above. Additionally, DISH stated that it would redact information concerning

3

lines of business unrelated to its mobile wireless business. T-Mobile does not object to DISH's proposed redactions, subject to T-Mobile's right to challenge any redactions that appear to relate to DISH's retail mobile wireless business. Presently, there is no issue for the Court to resolve concerning Request Nos. 25, 30, 31, and 32.

Second, T-Mobile and DISH have reached an agreement on the documents DISH would produce concerning its retail mobile wireless phone plans in response to Request No. 23, subject to conditions and reservations of rights set forth in footnote 2 above. As such, there is no issue for the Court to resolve concerning this dispute at this time.

Third, DISH offered to produce certain quarterly reports that have been generated since Q1 2023, which contain a calculation similar to CLV. T-Mobile agrees that the quarterly reports DISH offered to produce resolve Request No. 33 for the time period from Q1 2023 through June 30, 2024. As for the time period from April 2020 until Q1 2023, DISH represented that it only computed the CLV metric for retail mobile wireless customers on an ad hoc basis as determined by business needs and that such information, if available, would be in the documents DISH offered to produce concerning its costs, profits, and losses. As for the period from April 2020 until Q1 2023, T-Mobile reserves the right to seek additional relief in the event DISH's costs, profits, and losses documents do not contain any CLV information and/or DISH's document production indicates that the information is available from other sources. Additionally, T-Mobile and DISH agreed that DISH may redact information concerning projects or lines of business unrelated to DISH's retail mobile wireless business, provided that T-Mobile may challenge any redactions that appear to relate to DISH's retail mobile wireless business. Presently, there is no issue for the Court to resolve concerning Request No. 33.

Lastly, DISH and T-Mobile are at impasse on T-Mobile's Request No. 6 seeking documents showing the amount DISH paid to AT&T for network access. T-Mobile's and DISH's respective positions are set forth below.

**A.     T-Mobile's Position**

As set forth in T-Mobile's brief in support of the Motion, the amounts DISH paid to AT&T for network access are relevant to several issues in this case. Dkt. 255 at 9-10. Nor would producing responsive documents be unduly burdensome, given that DISH receives monthly invoices from AT&T and should have records of payments it made. *Id.* In its Opposition, DISH did not respond to T-Mobile's relevance argument nor articulate any burden associated with producing responsive documents, Dkt. 283 at 19-21, thereby conceding that documents showing its payments to AT&T are relevant and not unduly burdensome. DISH also did not argue in connection with the motion to compel, or any meet and confer before it was filed, that the information could not be produced absent AT&T's consent.[3]

During the post-briefing conferral, DISH asked whether T-Mobile was seeking the same information from AT&T. T-Mobile confirmed that its subpoena to AT&T sought this information as well, but T-Mobile is not seeking duplicative production from both entities. DISH then requested a three-way meet and confer with AT&T, during which AT&T argued that the documents were not relevant. In a follow-up meet and confer, DISH confirmed that it has the monthly invoices it received from AT&T, but stated that it would not produce the materials absent AT&T's consent and appropriate modifications to the confidentiality order. T-Mobile submits

---

[3] The sole argument DISH made was that T-Mobile does not have a substantial need for the information because T-Mobile's experts can do sophisticated studies on DISH's SEC's filings. Dkt. 283 at 20. As T-Mobile responded in its reply, substantial need is established because the parties do not have access to the information and T-Mobile's experts cannot simply make up details concerning DISH's costs based on its SEC filings. Dkt. 295 at 5-7.

5

that the monthly invoices showing the payments DISH made to AT&T, inclusive of any credits, refunds or adjustments, would satisfy Request No. 6. T-Mobile disputes that DISH can withhold these documents unless AT&T consents to the production, however. The documents are not privileged, and AT&T has not sought to intervene in T-Mobile's Motion or otherwise moved for a protective order. Accordingly, T-Mobile submits that AT&T's consent, or lack thereof, is not a basis to withhold relevant, non-burdensome documents. Further, concerns about the confidentiality of information are already fully briefed, and can be addressed through the designations ultimately adopted by the Court in resolving disputes surrounding the Confidentiality Order.

**B.     DISH's Position**

In the post-briefing conferral sessions, DISH reiterated its objections to this Request as set forth in its Responses and Objections to T-Mobile's subpoena and its Opposition to the Motion, including that such documents are not relevant to the claims and defenses in this case and that they reveal confidential information for which T-Mobile has not shown a substantial need. Dkt. 256-2; Dkt. 283 at 19-20. DISH has not conceded the relevance of these documents, nor the burden associated with producing them. T-Mobile's claims to the contrary here once again ignore that Rule 45 requires T-Mobile to ensure the burden posed on non-party DISH is not undue. Further, T-Mobile's mere lack of access to the cost information requested does not establish that T-Mobile has a substantial need for information beyond what is contained in DISH's public SEC filings.

Upon learning that T-Mobile had issued a similar request to AT&T for the same documents and was conferring separately with AT&T, DISH suggested to T-Mobile that it would lessen the burden on non-parties AT&T and DISH for the three entities to confer together about these requests rather than engage in parallel. The three entities conferred on June 13, 2025, and AT&T made clear that it also objected to producing the documents. Despite T-Mobile indicating in that

conferral that it would participate in further joint conferrals about these documents, T-Mobile refused to participate in any additional joint conferrals with AT&T and DISH.

Without waiving its objections, DISH confirmed in post-briefing conferral with just DISH and T-Mobile that DISH receives monthly invoices from AT&T for network access. DISH reiterated that production would require resolution of its objections to Request No. 6, as well as the other conditions set forth in footnote 2 above, and also AT&T's separate objections.[4] DISH submits that its own objections, as well as AT&T's lack of consent, provide more than sufficient basis to withhold these documents.[5] Since T-Mobile and DISH are at impasse, they respectfully request that the Court resolve this issue.

### III. Custodial Discovery

T-Mobile and DISH also remain at impasse on custodial discovery. T-Mobile and DISH set forth below their respective positions on this dispute.

#### A. T-Mobile's Position

As detailed in the Motion and related briefing, T-Mobile requested that DISH search for and produce documents responsive to T-Mobile's Requests Nos. 5, 10, 12, 13, 16, 18, 20, 21 and 24 from the files of eight proposed custodians using T-Mobile's proposed search terms. Dkt. 255 at 10-15; Dkt. 295 at 7-10. T-Mobile invited DISH to propose any modifications to the proposed

---

[4] DISH has made its own objections to production of this information clear to T-Mobile throughout. DISH did not include resolution of AT&T's objections to production of this information in its Responses and Objections, pre-Motion conferral, or Opposition because DISH only learned in the course of post-briefing conferral with T-Mobile that T-Mobile had requested the same information from AT&T, after which DISH learned from AT&T that it, too, objected to production.

[5] T-Mobile dismisses DISH's confidentiality-related objections and notes that "concerns about the confidentiality of information are already fully briefed." The basis of T-Mobile's request is Plaintiffs' claim that "DISH is wholly reliant on AT&T's and T-Mobile's networks and must pay a hefty fee to access their network." Dkt. 255 at 9. T-Mobile knows what DISH pays for access to T-Mobile's own network. Indeed, this knowledge is precisely why the Confidentiality Order must be amended to sufficiently protect DISH's highly confidential competitively sensitive information—like the amount DISH pays AT&T for network access—from disclosure to T-Mobile's employees.

custodians and/or search terms or to propose other means to locate responsive documents, such as through custodial interviews. Dkt. 255 at 11; Dkt. 295 at 9. DISH refused to produce the custodial discovery T-Mobile requested and rejected T-Mobile's invitation to propose modifications to custodians and search terms or suggest other means to locate and produce responsive documents. In its Opposition, DISH disclosed for the first time that T-Mobile's search terms would return about 230,000 documents after deduplication. Dkt. 295 at 9-10.

During the post-briefing meet and confer, T-Mobile requested, and DISH provided, the hit reports for T-Mobile's proposed search terms. T-Mobile identified two search queries that appeared to be generating the largest number of hits and proposed modifications to those queries, as well as minor revisions to other terms to clean up typos and syntax errors. T-Mobile requested that DISH test the updated search terms, but DISH refused to do so, claiming that the revised search terms were overbroad and would not substantially reduce its burden. DISH confirmed that it did not review any sample documents to determine whether the search terms are appropriate nor did it conduct any tests to verify whether T-Mobile's proposed revisions would in fact reduce its burden. T-Mobile also invited DISH to specify search terms that it believed were inappropriate and propose modifications thereto or suggest alternative means to identify responsive documents, but DISH again refused. Because DISH refused to even test T-Mobile's proposed modifications, T-Mobile submits that further negotiations on the search terms and custodians will not be productive. Accordingly, T-Mobile respectfully requests that DISH be ordered to search for and produce non-privileged, responsive documents using T-Mobile's proposed custodian list and modified search terms, which are attached hereto as Attachment A. T-Mobile understands that DISH does not object to the date range T-Mobile proposed.

### B. DISH's Position

As set forth in its Opposition, T-Mobile requested unduly burdensome custodial discovery from non-party DISH without showing a substantial need for such discovery. Dkt. 283 at 11-17. In pre-Motion conferral, T-Mobile took the position that non-party DISH bears the same discovery obligations as a party. As a non-party, DISH countered that it was T-Mobile's obligation to minimize the discovery burden imposed on DISH and declined T-Mobile's invitation to undertake the burden of revising T-Mobile's proposed custodian list and/or search terms or conducting custodial interviews. DISH also disputed T-Mobile's insistence that non-party DISH was obligated to undertake the burden of testing T-Mobile's search terms. DISH's Opposition substantiated the undue burden T-Mobile sought to impose, which included testing T-Mobile's nine search term strings to generate cost estimates for hosting, processing, and review of documents hitting on T-Mobile's overly broad search terms. Dkt. 283 at 17; Dkt. 286-1 Ex. A.

After providing the hit report requested by T-Mobile in post-briefing conferral, DISH pointed out the overbreadth of the concepts in T-Mobile's search terms and identified specific factors in the syntaxes of T-Mobile's search terms that may have increased the hit counts. DISH requested that T-Mobile reduce the burden on DISH by revising its search terms to more narrowly target information that could be obtained *only* from custodial email (as opposed to the structured data and discrete documents that DISH agreed to produce pending resolution of the confidentiality order). T-Mobile refused to do so. Instead, T-Mobile left four of its nine search term strings unchanged and made incremental syntax revisions to the other five search term strings. T-Mobile also *added* terms to four of the other five search term strings. T-Mobile then requested that DISH generate another hit report for its revised search terms.

Upon review of the revisions proposed by T-Mobile, DISH determined that the revised search terms still substantially burdened DISH and declined to undertake the burden of generating

9

another hit report, given that the search terms remained overbroad and unlikely to return substantially different results. In response, T-Mobile suggested again that non-party DISH was obligated to assume the burden of revising T-Mobile's search terms and/or conducting custodial interviews. As a non-party objecting to any custodial discovery, DISH declined to undertake these burdens. DISH advised T-Mobile that it remained willing to consider testing any search terms that T-Mobile wished to revise to more narrowly target custodial information that could not be obtained through other means. T-Mobile declined to further revise its proposed search terms.

DISH agrees that further negotiations on search terms and custodians will not be productive. Accordingly, DISH respectfully requests that the Court deny T-Mobile's Motion insofar as it requests custodial discovery for the reasons outlined in its Opposition. If the Court orders DISH to search for and produce non-privileged responsive documents using T-Mobile's proposed custodian list and search terms, DISH respectfully requests that the Court protect non-party DISH from significant expense resulting from compliance.

**JOINTLY SUBMITTED BY**

July 17, 2025

<div style="display: flex;">
<div>

*/s/ Monica McCarroll*
Monica McCarroll (*pro hac vice*)
Kevin A. Reiss
**REDGRAVE LLP**
4800 Westfields Blvd.
Suite 250
Chantilly, VA 20151
P. 703.592.1155
mmccarroll@redgravellp.com
kreiss@redgravellp.com

Rana Dawson
**REDGRAVE LLP**
230 West Monroe Street
Suite 210
Chicago, IL 60606
P. 312.800.1968
rdawson@redgravellp.com

*Counsel for Non-Party DISH Network Corporation*

</div>
<div>

*/s/ Rachel Brass*
Rachel S. Brass (*pro hac vice*)
Caeli A. Higney (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
RBrass@gibsondunn.com
CHigney@gibsondunn.com

Minae Yu (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Myu@gibsondunn.com

Clifford C. Histed
ARDC No. 6226815
Michael E. Martinez
ARDC No. 6275452
**K&L GATES LLP**
70 West Madison Street, Suite 3300
Suite 3300
Chicago, IL 60602-4207
Telephone: (312) 807-4448
clifford.histed@klgates.com
michael.martinez@klgates.com

*Counsel for Defendant T-Mobile US, Inc.*

</div>
</div>