UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERRY, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>T-MOBILE US, INC., *et al.*,<br><br>　　　　　Defendants. | No. 22-cv-3189<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Albert Berry III |

**ORDER**

For the reasons discussed more fully below, Plaintiffs' Motion to Compel AT&T to Produce Discovery Responsive to Plaintiffs' Subpoena [257] is granted in part and denied in part. The Court rules as follows: 1) Plaintiffs' custodial discovery requests are relevant and proportional to the needs of the case, with the exception of pre-merger documents, which are not relevant to the instant suit; 2) Plaintiffs are entitled to structured data from January 1, 2018 to present; and 3) Plaintiffs are not entitled to structured data beyond what AT&T maintains in the usual course of business.

**BACKGROUND**

Plaintiffs are customers of AT&T Mobility LLC ("AT&T") and Verizon Communications, Inc. ("Verizon") who have sued T-Mobile US, Inc. ("T-Mobile") alleging that T-Mobile's 2020 merger with Sprint lowered competition in the wireless services market, which in turn allowed AT&T and Verizon to raise prices and harm Plaintiffs. (Dkt. 1 at ¶¶ 1, 129.) Plaintiffs served third-

1

party AT&T with a subpoena in the instant suit on October 19, 2022, seeking documents related to the 2020 merger, the wireless retail market, and AT&T's wireless business. (Dkt. 257 at 5.) After years of negotiations, Plaintiffs filed the instant motion on March 21, 2025, arguing that AT&T should be compelled to conduct custodial searches to produce documents that fall into the following categories: 1) AT&T's evaluation of the merger; 2) AT&T's assessments of competition in the retail wireless market after the merger; 3) AT&T's pricing of mobile wireless services; 4) customer perception of AT&T; 5) information about spectrum auctions/purchases/acquisitions; 6) internal assessment of 5G; 7) results from any internal speed test run; 8) the costs of providing wireless service; 8) documents produced in other investigations or litigation related to AT&T's prior unsuccessful attempts to merge with Sprint and T-Mobile itself; and 9) communications with DISH or Verizon about the merger. (*Id.* at 8-14.) Plaintiffs have identified 15 proposed custodians for these searches, but AT&T has not agreed to any custodians or search terms related to the subpoena. (*Id.* at 6, 11.) Finally, Plaintiffs seek structured data from 2015 to present that includes all the fields Plaintiffs requested in the subpoena. (*Id.* at 15-16.) The Court discusses the issues raised in Plaintiffs' motion below.

## DISCUSSION

### I. Custodial Discovery Requests

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires the Court to quash or modify a subpoena that subjects a person to an undue burden. "Although a non-party subpoena is controlled by Rule 45, the discovery sought must still be within the broad scope of Rule 26." *Roman v. City of Chicago*, No. 20 C 1717, 2023 WL 121765, at *5 (N.D. Ill. Jan. 6, 2023). In other words, "[t]he scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, No. 17-CV-

2

01287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (internal quotations omitted). Rule 26(b)(1) defines the scope of permissible discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." With that as the foundation, the Court now considers whether the discovery sought by Plaintiffs in their subpoena to AT&T is relevant and proportional to the needs of the case.

### A. Relevance

Generally speaking, AT&T appears to concede that the documents Plaintiffs seek are relevant, offering no argument to the contrary in its brief in opposition, with the exception of two categories: 1) documents for conduct before the merger, and 2) external communications with Verizon and DISH about the merger.

The Court agrees with AT&T that documents from the pre-merger period are not relevant to the instant suit and need not be produced. As my wise predecessor, Judge Cole, astutely noted in an earlier opinion in this case, "[i]t is imperative not to forget that this case is about what happened *after* the merger – as the plaintiffs, themselves, have emphasized in the past." (Dkt. 206 at 10 (emphasis in original).) Plaintiffs' complaint alleges that AT&T and Verizon were able to raise prices because the merger between T-Mobile and Sprint lowered competition in the wireless market. Therefore, the relevant question is how AT&T's actions were affected by the merger and what actions it took related to pricing after the merger. Notwithstanding AT&T and Plaintiffs' previous agreement, the Court does not believe that AT&T's documents that pre-date the merger

3

(including documents from previous investigations or litigation) are relevant.[1] Therefore, the Court modifies the subpoena to only include documents beginning on the date the Sprint/T-Mobile merger became official - April 1, 2020.[2]

The Court rejects AT&T's argument that its communications with Verizon and DISH are categorically irrelevant. Discussions between AT&T and Verizon or DISH related to the merger could be relevant by providing insight into these competitors' respective views of the wireless services landscape after the merger was completed, including, *inter alia*, DISH's ability to compete with other MNO carriers. (*See* Dkt. 257 at 15.) However, the Court is skeptical that these communications are likely to yield a rich vein of information for Plaintiffs to prove their case. It seems unlikely that these competitors would tip their hands to each other regarding such sensitive commercial information as pricing decisions. As such, on these documents, the Court strongly urges Plaintiffs to follow their own advice "by negotiating narrowly tailored search terms targeting relevant documents," to return a limited collection of only the most relevant documents. (Dkt. 257 at 15.) But the Court cannot find that such communications are not relevant to the allegations made in Plaintiffs' complaint.

**B. Undue Burden**

As the party seeking to quash or modify Plaintiffs' subpoena, AT&T "bears the burden of demonstrating that the subpoena . . . subjects the party to an undue burden." *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *2 (N.D. Ill. May 6,

---

[1] The Court does not reach whether pre-merger documents from other parties or entities might be relevant to this case. However, "AT&T has agreed to provide what remains from its previous productions in government investigations and litigation leading up the Merger to satisfy Plaintiffs' requests for pre-merger documents." (Dkt. 282 at 15-16). As AT&T has agreed to produce these materials and they appear to be easily accessible, AT&T must follow through with its agreement and produce this agreed discovery.

[2] Plaintiffs' Amended Subpoena to AT&T separates the relevant time periods for documents and data. (DKt. 257-2 at 13.) This portion of the Court's Order only applies to document production. As discussed below in this opinion, the relevant time period for structured data is January 1, 2018 to present.

2013). AT&T makes virtually no attempt to carry this burden in its response to the motion, addressing the issue in only one sentence that "[a]n inquiry by AT&T's in-house e-discovery team indicates that Plaintiffs' proposed custodians involves 8 terabytes of compressed data." (Dkt. 282 at 13.) It is unclear from AT&T's submissions what the costs would be to export, host, and review this data, whether deduplication could limit the burden of review, or how many hours it would take to review the ESI. The Court is completely in the dark and will not speculate about such costs and potential burdens. Without more, the Court cannot find that AT&T has adequately demonstrated undue burden.

Additionally, to the extent that the Court were to find that the eight terabytes cited by AT&T constituted an undue burden, that number would be stale. As discussed above, the Court has lowered the burden by narrowing the temporal scope of custodial discovery to only include post-merger materials. Plaintiffs' amended subpoena lists the relevant time period as January 1, 2010 to present for document production. (Dkt. 257-2 at 13.) Therefore, cutting off 10 years and 3 months of documents will significantly lessen the burden AT&T will face in performing custodial searches.

Out of an abundance of caution, the Court clarifies that it is not adopting Plaintiffs' search terms wholesale, or ordering that AT&T must accept them without objection. The Court is only ruling that AT&T must make custodial productions responsive to the subpoena. The Court also rejects AT&T's arguments that Plaintiffs' motion is premature and the Court should wait until AT&T has produced documents in a manner it believes appropriate before allowing Plaintiffs to file a motion. (Dkt. 282 at 14.) Although the Court understands that some of the delay has been outside the parties' control as this case was on appeal, the issues related to these subpoenas have been the subject of years of negotiation. Adding an additional step and more time to the process

will only serve to slow things down even further, and the Court believes that the most surefire way to ensure that Plaintiffs get the documents they are entitled to under Rule 45 is to engage in custodial searches and reviews. It is time for this matter to move on to the next stage.

Following this ruling, Plaintiffs and AT&T should work to begin the iterative process of honing search terms to strike an appropriate balance between ensuring that AT&T produces relevant documents while not unduly burdening AT&T with overly broad search terms that return irrelevant information or false hits. The Court notes that if the parties are unable to come to an agreement on search terms or begin presenting arguments to the Court on specific terms and hit counts, the Court will likely need to appoint a special master to handle disputes of such granular detail for the reasons previously discussed by Judge Cole. (*See* Dkt. 303 at 4-6.)

### C. Custodians

Having determined that the document requests in the subpoena seek relevant documents and will not be unduly burdensome, the Court turns to the issue of which custodians should be searched. Plaintiff suggested fifteen custodians. Defendants have not presented any argument as to why these custodians are unlikely to have relevant information or that collecting their ESI would be unduly burdensome beyond what is described immediately above. While the Court understands that the Sedona Principles generally note that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information," that does not mean that AT&T can unilaterally decide how ESI production will proceed. *See* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Prod.*, 19 Sedona Conf. J. 1, 118 (2018). On review of the Plaintiffs' descriptions of the proposed

6

custodians, the Court agrees with Plaintiffs that these individuals are all likely to have discovery that is relevant and responsive to the subpoena. Additionally, the Court does not feel that producing documents from fifteen custodians presents an undue burden to AT&T. By way of example, T-Mobile *agreed* to a list of at least 47 custodians in this suit to meet its discovery obligations. (Dkt. 206 at 1.) The Court understands that the discovery obligations of third parties should be less onerous than those of the named defendant, but a better than three-to-one ratio strikes the Court as reasonable here.

## II. Structured Data

There are two issues raised in the motion relating to structured data: 1) the temporal scope of such data; and 2) whether AT&T's structured data production must include fields that Plaintiffs requested but that AT&T does maintain in the usual course of business.[3] As for the temporal scope, Plaintiffs have requested data going back to 2015, whereas AT&T has offered to produce data beginning from January 1, 2018. (Dkt. 294 at 10.) Plaintiffs maintain that the structured data they seek "is essential for Plaintiffs' experts to be able to compare AT&T's prices and services before the Merger to its prices and services after the Merger." (Dkt. 257 at 16.) The Court agrees with AT&T and believes that data from 2018 is sufficient, as it will give the Plaintiffs over two full years of data before the merger. Therefore, the motion is denied to the extent it seeks structured data from 2015 to present; AT&T must produce the structured data it keeps in the usual course of business for 2018 to the present.

---

[3] These fields are: 1) original and current contract price, features and plan characteristics (e.g., contract type, data allowance, high speed data access, terms of 5G access, entertainment access); 2) whether the subscriber is on a prepaid or postpaid plan; monthly overage quantities for each subscriber's data, SMS, MMS and voice usage; 3) monthly breakdowns of the subscriber's recurring charges versus overage charges; 4) Allowances for data, SMS, MMS and voice usage, including but not limited to data caps or throttling thresholds; 5) an indicator for whether the subscriber terminated the contract in the present month; and 6) subscribers' census block group identifiers (or, in the alternative, their addresses) (Dkt. 257 at 16.)

As for the missing fields, Rule 34(b)(2)(E)(i) states that documents maintained as electronically stored information must be produced "as they are kept in the usual course of business." AT&T has clearly stated that they do not keep the subscriber data Plaintiffs seek in the ordinary course of business, and the Court will not order AT&T to produce it. (Dkt. 282 at 19.) The Court rejects Plaintiffs' argument that AT&T must produce this data if it exists somewhere "but would require some cost or effort to produce." (Dkt. 294 at 11.) The rules do not require that AT&T hunt down the data in whatever locations may exist, compile it into a spreadsheet, synthesize the data so it is consumable, and produce it to Plaintiffs. The Plaintiffs have requested subscriber-level plan data in machine-readable format with 17 different fields. (Dkt. 257-2 at 19-20.) AT&T has spreadsheets with subscriber data it keeps in the usual course of business and is willing to produce it to Plaintiffs from 2018 forward; these spreadsheets contain some of the fields Plaintiffs request, but not others. That is the ESI AT&T keeps in the usual course of business and this is the ESI that the rules require it to produce. The motion is denied to extent it seeks to have AT&T include fields for data it does not keep in the ordinary course of business.

**CONCLUSION**

As discussed above, Plaintiffs' Motion to Compel AT&T to Produce Discovery Responsive to Plaintiffs' Subpoena [257] is granted in part and denied in part.

DATED: October 3, 2025

_____
Albert Berry III
United States Magistrate Judge